William Turley, Esq. (122408)
David Mara, Esq. (230498)
Jill Vecchi, Esq. (299333)
Matthew Crawford, Esq. (310230)
**THE TURLEY & MARA LAW FIRM, APLC**
7428 Trade Street
San Diego, California 92121
Telephone: (619) 234-2833
Facsimile: (619) 234-4048

Attorneys for Plaintiff RICHARD TERRY
on behalf of himself and all others similarly
situated and on behalf of the general public.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD TERRY, on behalf of himself and all others similarly situated, and on behalf of the general public,<br><br>                Plaintiff,<br><br>v.<br><br>HOOVESTOL, INC.; and DOES 1-100,<br><br>                Defendants. | Case No. 3:16-cv-05183-JST<br><br>[*Assigned to the Honorable Jon S. Tigar*]<br><br>**PLAINTIFF RICHARD TERRY'S MOTION FOR CLASS CERTIFICATION**<br><br>**Date: March 29, 2018**<br>**Time: 2:00 p.m.**<br>**Judge: Jon S. Tigar**<br>**Dept.: 9**<br><br>Action Filed:      July 20, 2016<br>Action Removed:  September 8, 2016<br>Trial Date:        Not set |

## TABLE OF CONTENTS

I.    INTRODUCTION............................................................................................. 1

II.   PROPOSED CLASSES AND SUBCLASSES ........................................... 2

III.  FACTS SUPPORTING CERTIFICATION ............................................ 3

    a.  Hoovestol Has a Uniform Policy that Drivers are Responsible for Their Truck, Their Trailer, and Their Load at All Times ................................................ 3

    b.  Hoovestol Has a Uniform Meal Period Policy That Does Not Provide for Second Meal Periods Before the End of the Tenth Hour Worked ............................ 5

    c.  Hoovestol Has a Uniform Policy That Drivers Cannot Leave the Sleeper Berth During a Layover .................................................................................... 6

IV.   PLAINTIFF'S CLAIMS ARE APPROPRIATE FOR CERTIFICATION ................ 6

    a.  The Class of California Drivers is Numerous.................................................. 7

    b.  The Class of California Drivers is Ascertainable............................................ 8

    c.  Commonality – The Resolution of All of the Class Claims Will be Resolved in a Single Stroke Determination ........................................................................ 9

        i.   Unpaid Straight Time Wages Subclass .................................................... 9

            1.  Employees Must Be Paid for All Time that the Employer "Directs, Commands or Restrains" Employees ................................................................. 10

            2.  Claims for Plaintiff's Unpaid Straight Time Wages Subclass will be Resolved Through Common Facts to All Class Members ......................................... 12

                a.  Hoovestol Requires Drivers to be Responsible for the Truck, Trailer, and Load at all Times ................................................................. 12

                b.  Hoovestol Prohibits Drivers from Leaving the Sleeper Berth and Requires Drivers to be Responsible for the Truck, Trailer, and Load During Layover Time ........................................................................ 13

        ii.  Non-Duty-Free Meal Break Subclass....................................................... 13

        iii. Facially Unlawful Meal Break Subclass .................................................. 15

         iv.  Non-Duty-Free Rest Break Subclass........................................................ 16

v.   **Wage Statement Subclass** .................................................................... 16

   1.   **Common Questions Predominate as to Plaintiff's Claim that Defendant Failed to Include the Information Required by § 226(a)** ............... 17

   2.   **Common Questions Predominate as to Plaintiff's Claim that Defendant's Wage Statements Failed to Include Premium Wages** ........................... 18

vi.   **Waiting Time Penalties Subclass** ....................................................... 18

d.   **Plaintiff's Claims are Typical of All Class Claims** ................................... 19

e.   **Plaintiff is Adequate Under Rule 23(a)(4) and Counsel Should Be Appointed as Class Counsel Under Rule 23(g)(1)(A)** ................................................... 19

f.   **Individualized Issues Will Not Predominate** ............................................ 20

  i.   **Through Hoovestol's Own Policies, Class-Wide Common Questions Will Generate Class-Wide Common, Predominant Answers** ......................... 20

   1.   **Common Questions Predominate for the Unpaid Straight Time Wages Subclass** ............................................................................... 21

   2.   **Common Questions Predominate for the Meal and Rest Period Subclasses** .... 22

  ii.   **A Class Action is Superior to Other Methods of Litigation** ................... 23

g.   **The Case is Manageable as a Class Action, as Damages Will Be Proven Through Defendant's Own Time Records** .................................................. 23

V.   **NOTICE TO THE CLASS SHOUD BE ORDERED** ................................. 24

VI.   **CONCLUSION** ................................................................................ 25

# TABLE OF AUTHORITIES

## CASES

*Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) ................................... 9, 22

*Alcantar v. Hobart Serv. et al*, 800 F.3d 1047, 1052 (9th Cir. 2015) ............................................ 9

*Amchen Prods. V. Windsor*, 521 U.S. 591 (1997) ....................................................................... 20

*Armenta v. Osmose, Inc.* 135 Cal. App. 4th 314 (2005) .............................................................. 18

*Augustus v. ABM Security Serv., Inc.*, 2 Cal.5th 257 (2016) ........................................... 10, 14, 16

*Ayala v. U.S. Xpress Enters., Inc.*, Case No. EDCV 16-137-GW(KKx), 2017 U.S. Dist. LEXIS
    125247 (C.D. Cal. July 27, 2017) ...................................................................... 11, 21

*Bernstein v. Virgin Am., Inc.*, Case. No. 15-cv-02277-JST, 2016 U.S. Dist. LEXIS 154326 (N.D.
    Cal. Nov. 7, 2016) ............................................................................................... 8, 9, 20

*Bono Enterprises, Inc. v. Bradshaw*, 32 Cal. App. 4th 968 (1995) ....................................... 10, 14

*Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004 (2012) ........................... 14, 15, 20

*City of San Jose v. Superior Court*, 12 Cal.3d 447 (1974) ......................................................... 24

*Coleman v. Jenny Craig, Inc.*, Case No. 11cv1301-MMA (DHB), 2013 U.S. Dist. LEXIS 176294
    (S.D. Cal. Nov. 27, 2013) .......................................................................................... 6

*DeBremaecker v. Short*, 433 F.2d 733 (5th Cir. 1970) ................................................................. 8

*Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625 (S.D. Cal. 2010) ............................................. 20

*Elis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) .................................................... 6

*Faulkinbury v. Boyd & Associates*, 216 Cal. App. 4th 220 (2013) ............................................ 22

*Gen. Tel. Co. of the Nw. v. Equal Emp't Opportunity Comm'n*, 446 U.S. 318 (1980) ................. 7

*Ghory v. Al-Lahham*, 209 Cal.App.3d 1487 (1989) ................................................................... 18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................................................... 8, 19

*Hanni v. Am. Airlines, Inc.*, Case No. C 08-00732, 2010 U.S. Dist. LEXIS 3410 (N.D. Cal. Jan.
    15, 2010) .................................................................................................................. 8

*Henry v. Home Depot U.S.A., Inc.*, Case No. 14-cv-04858-JST, 2016 U.S. Dist. LEXIS 58815
    (N.D. Cal. May 3, 2016) ............................................................................................ 7

*Howard v. CVS Caremark Corp.*, 2014 U.S. Dist. LEXIS 172406 (C.D. Cal. 2014) ................... 8

*Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) ..................................... 7

*Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) ................................................ 9

*Kamar v Radio Shack Corp.*, 254 F.R.D. 387 (C.D. Cal. 2008).................................................. 20

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013) .............................................. 23

*Lubin v. The Wackenhut Corp.*, 5 Cal. App. 5th 926 (2016) ............................................... 17, 18

*Mendiola v. CPS Security Solutions, Inc.*, 60 Cal. 4th 833 (2015) ....................................... 10, 11

*Morillion v. Royal Packing Co.*, 22 Cal.4th 575 (2000) ........................................................ 10, 11

*Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 489 (E.D. Cal. 2006)....................... 20

*Ruiz v. XPO Last Mile, Inc.*, Case No. 05-cv-2125-JLS (KSC), 2016 U.S. Dist. LEXIS 152095
........................................................................................................................................... 6, 22

*United Steel, Paper & Forestry, Rubber, Mfg. Energy v. ConocoPhillips Co.*, 593 F.3d 802 (9th
Cir. 2010) ..................................................................................................................................... 19

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ................................................. 22

*Vietnam Veterans of Am. V. C.I.A.*, 288 F.R.D. 192 (N.D. Cal. 2012) ......................................... 8

*Wiegele v. FedEx Ground Package Sys.*, Case No. 06-cv-1330-JLS, 2008 U.S. Dist. LEXIS
10246 (S.D. Cal. 2008) .............................................................................................................. 20

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ......................................... 22

**STATUTES**

California Labor Code § 203 ............................................................................................................ 18

California Labor Code § 226 ..................................................................................................... 16, 17

California Labor Code § 226.7 ......................................................................................................... 13

Federal Rule of Civil Procedure 23 ....................................................................................... *passim*

**OTHER AUTHORITIES**

Newberg on Class Actions § 3:3 (5th ed.) ...................................................................................... 8

Wage Order 9-2001............................................................................................................................ 10

## I.    INTRODUCTION

Does California law allow a company to make its employees the responsible custodians of its assets and its customer's assets without paying them? Has a company relinquished control over its employees during meal and rest periods when, during meal and rest periods, the company tells its employees they are responsible for anything that happens to the company's property and its customer's property?

Through uniform policies that Defendant HOOVESTOL, INC. (hereinafter "Hoovestol" or "Defendant") subjects all its employee truck drivers to, this case will answer these questions. Hoovestol, a private company that hauls mail for the United States Postal Service, warns all its driver employees that they are responsible for the truck, trailer, and mail at all times of the day. This is not a qualified command. Drivers are not told they have no responsibility for the truck, trailer, or mail during meal and rest periods. Like a product liability case that asks the jury whether the product in question violates applicable safety standards, this case will ask the fact finder whether, under this uniformly applicable command, Hoovestol has failed to relinquish control of its employees during meal and rest periods as required under California law. This case will further ask whether this command and directive placed drivers under the compensable control of Hoovestol during unpaid meal periods.

The questions presented in this case will generate answers that do not require inquiry into the subjective experiences of the individual class member employees. Rather, this case puts Hoovestol's uniform mandates on trial and asks whether they violate applicable standards governing meal and rest periods and compensable time under California law. As such, the resolution of Plaintiff RICHARD TERRY's (hereinafter "Plaintiff") claims are analytically suited to class certification, where a decision on liability for one class member will be the same for all class members

At this stage, the ultimate resolution of these questions is immaterial. That is, how the factfinder resolves these questions is something that does not affect whether the matter should be certified as a class action. The fact that the matter can be resolved through questions common to all without necessary resort to each individual class member coming forward to testify is the key at this stage. As class treatment is the most efficient and effective means to resolve these questions

presented, it is respectfully requested the Court grant this motion and issue an order certifying the class and subclasses defined herein.

## II.   PROPOSED CLASSES AND SUBCLASSES

Plaintiff seeks to certify the following class and subclasses:

**Class:** All present and former non-exempt drivers of Hoovestol who were paid on an hourly basis and who worked at a Hoovestol location in California at any time from July 20, 2012 to the date the Court issues an order certifying the Class.

**Unpaid Straight Time Wages During Meal Periods Subclass:** All current and former non-exempt hourly drivers who worked for Hoovestol in California at any time from July 20, 2012, to the date the Court issues an order certifying the Class who were not paid during meal periods.

**Unpaid Straight Time Wages During Sleeper Berth Time Subclass**: All current and former non-exempt hourly drivers who worked for Hoovestol in California at any time from July 20, 2012, to the date the Court issues an order certifying the Class who were not paid during the time they were logged into the sleeper berth on their Department of Transportation Logs.

**Non-Duty-Free Rest Break Subclass:** All current and former non-exempt hourly drivers who worked for Hoovestol in California at any time from July 20, 2012, to the date the Court issues an order certifying the Class who worked one or more work period in excess of three and a half (3½) consecutive hours.

**Non-Duty-Free Meal Break Subclass:** All current and former non-exempt hourly drivers who worked for Hoovestol in California at any time from July 20, 2012, to the date the Court issues an order certifying the Class who worked one or more work period in excess of five (5) consecutive hours.

**Facially Unlawful Meal Break Subclass:** All current and former non-exempt hourly drivers who worked for Hoovestol in California at any time from July 20, 2012, to the date the Court issues an order certifying the Class who worked one or more work period in excess of ten (10) consecutive hours.

**Wage Statement Subclass:** All current and former non-exempt hourly drivers who worked for Hoovestol in California at any time from July 20, 2015, to the date the Court issues an order certifying the Class and who received a wage statement.

**Waiting Time Penalties Subclass:** All current and former non-exempt hourly drivers who worked for Hoovestol in California at any time from July 20, 2013, to the date the Court issues an order certifying the Class whose employment with Hoovestol has ended.

### III.    FACTS SUPPORTING CERTIFICATION

Hoovestol is a mail contract carrier, meaning that it hauls bulk mail for the United States Postal Service.[1] In doing so, Hoovestol operates two (2) locations in California, one in Montebello and one in Los Angeles.[2] To carry out its business, Hoovestol employs drivers and has employed approximately three hundred and fifty (350) drivers in California during the class period.[3]

### a.    **Hoovestol Has a Uniform Policy that Drivers are Responsible for Their Truck, Their Trailer, and Their Load at All Times**

Hoovestol has a uniform policy that applies to all drivers which states that drivers are responsible for the Hoovestol truck and trailer they are driving, and the load in the trailer, at all times. Hoovestol's Trailer Safety Policy states: "**DOT and Hoovestol policy clearly states that the driver is responsible for the truck, the trailer and the load at all times.**"[4] Hoovestol's Federal Rule of Civil Procedure 30(b)(6) witness, Ms. Lynda Kuhn,[5] testified that this policy has been in place since July 20, 2012, whether in practice or as a written policy.[6]

Hoovestol makes drivers responsible for their truck, trailer, and load – the mail – at all times because when it delivers the mail it steps into the shoes of the United States Postal Service. As a mail contract carrier, Hoovestol must ensure that the mail is secured, contained, maintained, picked up, and delivered intact. Ms. Kuhn testified:

> Q.    And have you ever heard of the term the sanctity of the mail?
> A.    Yes.
> Q.    And what does that term "the sanctity of the mail" mean?
> A.    Well, basically – I mean, **we as a mail contract carrier we want to make sure the mail is secured and contained and maintained and picked up and delivered intact.**
> Q.    Just like you are the postal service, like an extension of the postal service, correct?
> A.    To a degree, yes.
> Q.    And so Hoovestol gets paid based on the fact that it delivers the mail not being damaged or vandalized or stolen, correct?
> [Objection]

---

[1] Deposition of Lynda Kuhn ("Kuhn Depo.") which is attached as Exhibit A to the Declaration of William Turley, Esq. ("Turley Decl.") at 30:24 thru 31:20.
[2] *Id.* at 28:17 thru 29:16.
[3] Defendant's Response to Plaintiff's Special Interrogatories, Set One, Response to Interrogatory No. 4 attached as Exhibit C Turley Decl.; *see also* Kuhn Depo. at 33:3-5; 33:18-20; 35:18-20.
[4] Exhibit 13 attached to the Turley Decl., Bates DEF 00285 (emphasis added).
[5] Ms. Lynda Kuhn is Hoovestol's Senior Director of Safety. (Kuhn Depo. at 6:19-22).
[6] Kuhn Depo. at 69:5-14.

THE WITNESS: We get paid for delivering the mail, correct. Yes.

MR. MARA: Q. **Correct, and delivering the mail intact, not damaged and secure, correct, just like the post office would?**

A. **Yes.**

Q. **So that's why it's important to make sure that the mail is secured on the trucks, correct?**

A. **Yes.**[7]

Hoovestol's requirement that drivers are responsible for their truck, trailer, and load is not surprising given that its contracts with the United States Postal Service provide that Hoovestol must protect the mail. These contracts include a section titled "Protection of the Mail" which provides: "**The supplier shall protect the mail from loss, depredation, or damage. . . .**"[8] Pursuant to the United States Postal Service's Terms and Conditions, it is Hoovestol's responsibility to "**protect and safeguard the mail from loss, theft, or damage while it is in [its] custody or control and prevent unauthorized persons from having access to the mail.**"[9]

In addition, the United States Postal Service's Terms and Conditions provide:

b. In all cases, **the supplier shall be strictly liable to the Postal Service for the Postal Service's actual damages if mail is subject to loss, rifling, damage, wrong delivery, depredation, and other mistreatment while in the custody and control of the supplier or its subcontractors.**

. . .

c. **The supplier shall faithfully account for and deliver to the Postal Service all:**

1. **Mail,**
2. **Moneys, and**
3. **Other property of any kind belonging to or entrusted to the care of the Postal Service, that come into its possession during the term of this contract.**[10]

Further, "[t]he supplier's failure properly to account, deliver and pay over moneys, mail and other property pursuant to this contract" constitutes default *which may lead to termination of a contract*

---

[7] Kuhn Depo. at 55:3 thru 56:6 (emphasis added).
[8] Exhibit H attached to the Turley Decl., United States Postal Service Contract Route Service Order Contract No. 900Y2 (Term 6/30/2014 to 7/1/2014), page B-7; Exhibit I attached to the Turley Decl., United States Postal Service Contract Route Service Order Contract No. 802Y5 (Term 4/1/2016 to 3/31/2018), page B-8; Exhibit J attached to the Turley Decl., United States Postal Service Contract Route Service Order Contract No. 802Y7 (Term 4/1/2016 to 3/31/2018), page B-7 (emphasis added).
[9] Exhibit K attached to the Turley Decl., Highway Contract Route (HCR) Transportation Routes Only Terms and Conditions, Issue 12, pages 17 (emphasis added).
[10] Exhibit K, Highway Contract Route (HCR) Transportation Routes Only Terms and Conditions, Issue 12, pages 15-16 (emphasis added).

1  with the United States Postal Service.[11]

2     As Hoovestol solely transports the mail, keeping its contracts with the United States Postal

3  Service is critical to its business. It is not surprising, then, that Hoovestol makes its drivers

4  responsible for the truck, trailer, and mail at all times during their shift. This is the only way

5  Hoovestol can ensure it does not lose its contracts with the United States Postal Service.

6     At his deposition, Plaintiff confirmed that he could not leave his truck and the mail

7  unattended during his shift.[12] He was told not to leave his truck or the mail unattended by both the

8  United States Postal Service and Hoovestol.[13]

9     **b.  Hoovestol Has a Uniform Meal Period Policy That Does Not Provide for Second Meal Periods Before the End of the Tenth Hour Worked**

10    Hoovestol's meal period policy does not provide for a second meal period within the first

11  ten (10) hours of work. Hoovestol's policy states:

12

13    **2nd Meal Period:** If you work more than 10 hours, Hoovestol will provide you with a second, unpaid meal period of at least 30 minutes.[14]

14  Ms. Kuhn testified that although this policy was implemented in writing on February 10, 2017,

15  this policy has been in place throughout the class period.[15] By its express language, this meal

16  period policy does not tell drivers they are entitled to take the second meal period before the end

17  of the tenth hour worked. Rather, it tells drivers they only get it if they work over ten (10) hours

18  in a day.[16]

19  / / /

20  / / /

21  / / /

22

23  [11] *Id.* at 16.

24  [12] Deposition of Richard Terry ("Terry Depo.") which is attached as Exhibit B to the Turley Decl. at 40:1 thru 41:25; 50:14 thru 51:6; 89:20 thru 91:20; 126:21 thru 128:10; 130:25 thru 132:22; *see

25  also* Declaration of Domingo Aguirre ("Aguirre Decl.") at ¶ 8; Declaration of Thomas Hardwick ("Hardwick Decl.") at ¶ 8; Declaration of Dennis Prado ("Prado Decl.") at ¶ 7; Declaration of

26  Manuel Suniga ("Sungia Decl.") at ¶ 7; Declaration of Raymond Trotter ("Trotter Decl.") at ¶ 8; Declaration of Paul Wilds ("Wilds Decl.") at ¶ 7. These declarations are attached as Exhibit E to

27  the Turley Decl.

28  [13] *Id.*
[14] Exhibit 13, California Meal and Rest Period Policy Update, Bates DF 00293.
[15] Kuhn Depo. at 71:2-18; 80:25 thru 81:1.
[16] *See* Exhibit 13, California Meal and Rest Period Policy Update, Bates DF 00293.

### c. **Hoovestol Has a Uniform Policy That Drivers Cannot Leave the Sleeper Berth During a Layover**

The United States Department of Transportation limits the amount of driving hours in a day to eleven (11) and the total amount of working hours in a day to fourteen (14).[17] Some long-distance routes require Hoovestol drivers to have to layover, i.e., stop driving and working altogether.[18] When that happens, drivers have to log into their Department of Transportation Logs that they are in the sleeper berth.[19] When the drivers are on a layover and logged into the sleeper berth in their logs, they cannot leave the sleeper berth compartment of their trucks.[20] With very rare exceptions, drivers are not paid for the time they are required to spend in the sleeper berth.[21]

## IV. **PLAINTIFF'S CLAIMS ARE APPROPRIATE FOR CERTIFICATION**

Class certification is governed by Federal Rule of Civil Procedure 23. Under Rule 23, the party seeking certification bears the burden of showing that each of the four (4) requirements of Rule 23(a) and at least one (1) of the requirements under Rule 23(b) are met. In addition, "the party seeking class certification must provide a workable class definition by showing that the members of the class are identifiable." *Ruiz v. XPO Last Mile, Inc.*, Case No. 05-cv-2125-JLS (KSC), 2016 U.S. Dist. LEXIS 152095 *13-*14 (S.D. Cal. Feb. 1, 2016). Under Rule 23(a), a plaintiff must first show that the class satisfies ascertainability, numerosity, commonality, typicality, and adequacy. *Elis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-980 (9th Cir. 2011); *see also Coleman v. Jenny Craig, Inc.*, Case No. 11-cv-1301-MMA (DHB), 2013 U.S. Dist. LEXIS 176294 *12 (S.D. Cal. Nov. 27, 2013). As will be shown below, Plaintiff's class and subclasses satisfy each of these requirements. If these elements are shown, the Court then determines whether the class action is maintainable under Rule 23(b). A plaintiff only needs to demonstrate that one of the three described scenarios is satisfied. *Ruiz*, 2016 U.S. Dist. LEXIS at *14. Here, Plaintiff will show that certification of his proposed classes is proper pursuant to Rule 23(b)(3). Plaintiff will show that questions of law or fact common to class members predominate over any questions that affect only individual class members and that a class action mechanism is superior to other available

---

[17] Declaration of Richard Terry ("Terry Decl.") which is attached to the Turley Decl. at Exhibit D at ¶ 14.
[18] *Id.*
[19] *Id.*
[20] Kuhn Depo. at 40:23 thru 41:1; *see also* Terry Depo. 146:21 thru 147:11.
[21] *Id.* at 40:11-22.

1    means for fair and efficient adjudication of Plaintiff's controversy.

2                    a.   **The Class of California Drivers is Numerous**

3           The numerosity requirement is met when the class is "so numerous that joinder of all

4    members is impracticable." *Elis*, 657 F.3d at 980. "The numerosity requirement requires

5    examination of the specific facts of each case and imposes no absolute requirements." *Gen. Tel.*

6    *Co. of the Nw. v. Equal Emp't Opportunity Comm'n*, 446 U.S. 318, 330 (1980). Joinder has been

7    found impractical in cases which involve as few as forty (40) class members. *See Henry v. Home*

8    *Depot U.S.A., Inc.*, Case No. 14-cv-04858-JST, 2016 U.S. Dist. LEXIS 58815 at *10 (N.D. Cal.

9    May 3, 2016) (Numerosity is generally satisfied if a class is comprised of 40 or more members);

10   *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 482 (2d Cir. 1995); *Ikonen v. Hartz*

11   *Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) ("As a general rule, classes of 20 are too

12   small, class of 20-40 may or may not be big enough depending on the circumstances of each case,

13   and classes of 40 or more are numerous enough.").

14          Plaintiff's special interrogatory number four sought the number of putative class members

15   employed by Hoovestol during the class period.[22] In response to this interrogatory, Hoovestol

16   responded that three hundred and fifty-two (352) putative class members worked for Hoovestol

17   from July 20, 2012 to November 16, 2017.[23] [24] Hoovestol states in its notice of removal that

18   "[p]utative class members generally work **at least** 8 hours in a day with a 30-minute meal break."[25]

19   Therefore, these individuals would have worked over three and a half (3½) and five (5) hours in a

20   shift, and likely over ten (10) hours in a shift at least once, and would be part of the meal and rest

21   period subclasses. Further, as of November 16, 2017, one hundred and sixty-seven (167) of these

22   individuals are formerly employed drivers of Hoovestol.[26] These individuals would be in the

23

24   [22] Exhibit C which is attached to the Turley Decl., Defendant's Response to Plaintiff's Special
     Interrogatories, Set One, Response to Interrogatory No. 4.

25   [23] November 16, 2017 is the date Hoovestol responded to Plaintiff's first set of interrogatories.

26   [24] *Id.*; *see also* Kuhn Depo. at 33:3-5; 33:18-20; 35:18-20 (Approximately 300 drivers are currently
     employed in California); Notice of Defendant of Removal of Civil Action to United States District

27   Court, Dkt. # 1, at 3:18-21 ("The number of class members is approximately 310.").

28   [25] Notice of Defendant of Removal of Civil Action to United States District Court, Dkt. # 1, at fn.2
     (emphasis added).

     [26] Exhibit C, Defendant's Response to Plaintiff's Special Interrogatories, Set One, Response to
     Interrogatory No. 3.

1    Waiting Time Penalties Subclass. In addition, there were two hundred and fifty-one (251) class

2    members who received wage statements in the year preceding the filing of Plaintiff's complaint.[27]

3    These individuals make up the Wage Statement Subclass. For these reasons, joinder is impossible

4    and the Court should find that numerosity is satisfied as to Plaintiff's class and each of Plaintiff's

5    subclasses.

6                    **b.  The Class of California Drivers is Ascertainable**

7              "[C]ourts have recognized that 'in order to maintain a class action, the class sought to be

8    represented must be adequately defined and clearly ascertainable.'" *Vietnam Veterans of Am. v.*

9    *C.I.A.*, 288 F.R.D. 192, 211 (N.D. Cal. 2012) (*quoting DeBremaecker v. Short*, 433 F.2d 733, 734

10   (5th Cir. 1970)). If it is administratively feasible for a court to ascertain whether an individual is a

11   member of a class, the class definition is sufficient. *Bernstein v. Virgin Am., Inc.*, Case. No. 15-

12   cv-02277-JST, 2016 U.S. Dist. LEXIS 154326 at *34 (N.D. Cal. Nov. 7, 2016). "Administrative

13   feasibility means that identifying class members is a manageable process that does not require

14   much, if any, individual factual inquiry." *Id.* at *34-*35 (*quoting* Newberg on Class Actions § 3:3

15   (5th ed.)). Ascertainability is met if the class is adequately defined so that it "identifies a group of

16   unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of

17   that group to identify himself or herself as having a right to recover based on the description."

18   *Hanni v. Am. Airlines, Inc.*, Case No. C 08-00732, 2010 U.S. Dist. LEXIS 3410 at *9 (N.D. Cal.

19   Jan. 15, 2010); *see also Howard v. CVS Caremark Corp.*, Case No. CV 13-04748 SJO (PJWx),

20   2014 U.S. Dist. LEXIS 172406 at *9 (C.D. Cal. 2014).

21             Plaintiff seeks to certify the classes as defined in Section II, above. The proposed class and

22   subclasses have been drawn to objectively and plainly state who is proposed in membership, such

23   that notice can be delivered and an opportunity to opt out can be provided. It should also be noted

24   that Hoovestol was able to identify class members in order to produce a class list to Plaintiff during

25   discovery. Hoovestol was also able to identify the individuals who are a part of Plaintiff's class

26   and subclasses when it filed its notice of removal. Accordingly, the class and subclasses are

27   ascertainable.

28

---

[27] Notice of Defendant of Removal of Civil Action to United States District Court, Dkt. # 1, at 9:4-6.

### c. **Commonality – The Resolution of All of the Class Claims Will be Resolved in a Single Stroke Determination**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). For commonality to be satisfied, "[a]ll questions of law and fact need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Class-wide claims must hinge upon a common contention of such a nature that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S.Ct. at 2551; *see also Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013); *Alcantar v. Hobart Serv. et al*, 800 F.3d 1047, 1052 (9th Cir. 2015). Common questions must generate common answers that are "apt to drive the resolution" of class claims. *Abdullah*, 731 F.3d at 957. Whether a common question is apt to drive class-wide claims "depends on the nature of the underlying legal claims that class members have raised." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014). "Whether any of these common questions are ultimately resolved in favor of either side is immaterial at this class certification stage." *Id.* at 116, fn.5. The sole issue at this juncture is whether the answers to common questions will drive the resolution of the class' claims. *Alcantar*, 800 F.3d at 1053.

It should be noted that where an employer's "uniform policies lie at the heart of the plaintiffs' claims, the dominant legal questions – namely, whether each of the challenged employment policies violate California law – can be resolved for all class members in a single adjudication through common proof." *Bernstein*, 2016 U.S. Dist. LEXIS 154326 at *41.

#### i. *Unpaid Straight Time Wages Subclass*

Plaintiff seeks to certify a subclass of current and former non-exempt hourly drivers who worked for Hoovestol in California at any time from July 20, 2012, to the date the Court issues an order certifying the Class who were not paid straight time wages for all hours worked. This subclass involves two different theories that allege Hoovestol's unlawful policies and practices fail to pay drivers for all time worked. First, this subclass asks whether Hoovestol's policy that drivers are always responsible for the truck, trailer, and load transforms time spent on unpaid meal periods into on-duty compensable time. Second, this subclass asks whether Hoovestol's policies that

1   drivers must remain in the sleeper berth on layovers and remain responsible for the truck, trailer,

2   and load transform the time drivers are on layovers into on-duty compensable time. All of these

3   questions can be resolved on a class wide basis showing why this subclass is eminently suited for

4   class treatment. If any of these questions can be answered by the factfinder in the affirmative,

5   Plaintiff will prevail on his unpaid straight time wages claim.

6       It should be noted, however, that these are two alternative and independent theories of

7   liability. Therefore, if the Court finds that common questions predominate as to only *one* of these

8   theories, Plaintiff's Unpaid Straight Time Wages Subclass should be certified.

9       ### 1.  Employees Must Be Paid for All Time that the Employer "Directs, Commands or Restrains" Employees

10   Employees must be paid for all "hours worked," as that phrase is defined in the Wage Order

11   and interpreted by California courts. Hours worked is defined in Wage Order 9-2001[28] as "the time

12   during which an employee is subject to the control of an employer, and includes all the time the

13   employee is suffered or permitted to work, whether or not required to do so." Wage Order 9-2001,

14   Subd. 2(K); *see also Mendiola v. CPS Security Solutions, Inc.*, 60 Cal. 4th 833 (2015). Under this

15   standard, "it is only necessary that the worker be subject to the control of the employer in order to

16   be entitled to compensation." *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 584 (2000).

17       The *Morillion* Court reasoned that an employee is under the employer's control and entitled

18   to compensation when the employer "'directs, commands or restrains' an employee." *Morillion*,

19   22 Cal. 4th at 583 (*quoting Bono Enterprises, Inc. v. Bradshaw*, 32 Cal. App. 4th 968, 975 (1995)).

20   The California Supreme Court in the case *Mendiola v. CPS Security Solutions, Inc.* ("*Mendiola*"),

21   announced that employees can be said to be under the control of the employer when they are

22   directed to protect company property from damage, despite the fact that threats to the property

23   under the employees' charge face little to no actual safety threats that require the employee to

24   launch into protective action. The *Mendiola* Court reasoned:

25       Of course an employer, if he chooses, may hire a man to do nothing, or to do nothing
26       but wait for something to happen. Refraining from other activity often is a factor of
        instant readiness to serve, and idleness plays a part in all employments in a stand-
27       by capacity. Readiness to serve may be hired, quite as much as service itself, and
        time spent lying in wait for threats to the safety of the employer's property may be

28

---

[28] This is the Wage Order that governs the driver class members in this case.

treated by the parties as a benefit to the employer. *Mendiola*, 60 Cal.4th at 840.

In an explication of employer control, the California Supreme Court held, in *Augustus v. ABM Security Services, Inc.* ("*Augustus*"), that employees are under employer control when the employer directs them to keep their phones on and be ready to respond during breaks. *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257 (2016). The Court further clarified that employees who must keep phones with them during allegedly off-duty breaks are under employer control even if the phone never rings during those periods and the employee is never called back to full duty. *Id.* at 271-272 (Expressly refusing to adopt an unclear rule that control only exists in on-call situations when the employer actually calls the employee.). Consistent with *Morillion* and *Mendiola*, the *Augustus* Court illustrates that it is the command and directive to which employees are subjected that dictates whether employees are under the compensable control of the employer. This analysis is unaltered by facts showing that, while under the employer's control, employees could engage in limited, non-working activities, such as eating or reading. *Morillion,* 22 Cal.4th at 587.

In the case *Ayala v. U.S. Xpress Enterprises, Inc.* ("*Ayala*"), the plaintiff contended that the defendants "require class members to perform certain tasks *all of the time*, including when they are on meal and rest breaks or during sleeper berth time. . . . As a result, several common issues emerge that make resolution of the core of Plaintiff's claims amenable to class-wide proof." *Ayala v. U.S. Xpress Enters., Inc.*, Case No. EDCV 16-137-GW(KKx), 2017 U.S. Dist. LEXIS 125247 at *27-*28 (C.D. Cal. July 27, 2017) (emphasis in original). The *Ayala* court found that, "[b]ecause all sleeper berth time claims, and meal and rest break claims turn on a single issue—whether Defendants exert 'control' over class members pursuant to *Augustus* by requiring them to secure their loads and respond to Drivertech messages – the Court would find that all of these claims are subject to common proof. Defendants may challenge, and ultimately prevail on this critical issue, but cannot do so at the certification stage." *Id.* at *32.

As will be shown below, Plaintiff's claims for unpaid straight time wages turn on a single issue and are subject to common proof.

/ / /

/ / /

/ / /

**2. Claims for Plaintiff's Unpaid Straight Time Wages Subclass will be Resolved Through Common Facts to All Class Members**

    a. <u>Hoovestol Requires Drivers to be Responsible for the Truck, Trailer, and Load at all Times</u>

Drivers are under Hoovestol's control throughout their workday, including the time they spend on unpaid meal periods, because Hoovestol requires drivers to be responsible for the truck, the trailer, and the load at all times. This is because Hoovestol's contracts with the United States Postal Service provide that Hoovestol must protect the mail from loss, depredation, or damage. These contracts also state that it is Hoovestol's responsibility to protect and safeguard the mail from loss, theft, or damage while it is in its custody or control and prevent unauthorized persons from having access to the mail. If anything does happen to the mail, Hoovestol will be strictly liable to the United States Postal Service for the United States Postal Service's actual damages. In addition, if any mail is not accounted for, this constitutes default of Hoovestol's contracts with the United States Postal Service which may lead to termination of the contracts.

Based on these policies, Plaintiff claims he and the subclass of drivers should be paid during thirty-minute unpaid meal periods because they remain subject to this directive and command that Hoovestol will hold them personally and professional responsible for any damage or theft that occurs to the trucks, trailers, and mail. Liability for all subclass members here will turn on how the factfinder resolves the following question: Are the subclass members under a compensable command or directive of Hoovestol during unpaid meal periods when Hoovestol directs and commands that they are responsible for the truck, trailer, and load? Put differently, does California law require employees, like the Hoovestol drivers in this subclass, to be paid for all time that they remain the responsible custodian of the company's assets and/or its customer's assets? This question is perfectly suited to class treatment, as it will result in a common answer that will drive the class-wide liability. If the answer to this question is "yes," Plaintiff wins and all time spent during unpaid meal periods is compensable. If the answer to this question is "no," Hoovestol wins. As liability is based on a common question that will generate a common answer apt to drive the resolution of class claims, Plaintiff has satisfied his burden under Rule 23(a)'s commonality requirement.

### b. Hoovestol Prohibits Drivers from Leaving the Sleeper Berth and Requires Drivers to be Responsible for the Truck, Trailer, and Load During Layover Time

The Department of Transportation limits the amount of driving hours in a day to eleven (11) and the total amount of working hours in a day to fourteen (14). Some long-distance routes require Hoovestol drivers to have to layover, i.e., stop driving and working altogether. When that happens, drivers have to log into their Department of Transportation Logs that they are in the sleeper berth. When the drivers are thus on a layover and logged into the sleeper berth in their logs, they cannot leave the roughly six by six-foot cell that comprises the sleeper berth cabin of their trucks. During this time period, with very rare exception, drivers are not paid for the time they are required to spend in the sleeper berth.

Based on Hoovestol's policies Plaintiff claims he and the Sleeper Berth Unpaid Straight Time Wages Subclass were subject to Hoovestol's compensable control during layover time and are owed compensation for these hours. The questions upon which liability for the entire subclass will turn is simple. Liability will hang on how the factfinder resolves any one of the following questions:

(1) Are Hoovestol's hourly drivers under its compensable control for purposes of California's definition of hours worked when Defendant mandates that drivers cannot leave the sleeper berth during layovers?

(2) Are Hoovestol's hourly drivers under its compensable control for purposes of California's definition of hours worked when Defendant mandates that drivers are responsible for their truck, trailer, and load while on a layover?

Just like the other common questions, posed above, these questions are suited to class treatment and will result in a common answer that will drive the class-wide liability determination. If the answer to any question – if only one – is "yes," Plaintiff wins. If the answer to *every* question is "no," Hoovestol wins. Accordingly, Plaintiff has satisfied his burden under Rule 23(a)'s commonality requirement.

#### ii. *Non-Duty-Free Meal Break Subclass*

Plaintiff seeks to certify a subclass of all current and former non-exempt hourly drivers who worked for Hoovestol in California at any time from July 20, 2012, to the date the Court issues an order certifying the Class who worked one or more work period in excess of five consecutive hours. Under California Labor Code § 226.7(a), "[n]o employer shall require any

1   employee to work during any meal or rest period mandated by an applicable order of the Industrial

2   Welfare Commission." Cal. Lab. Code § 226.7(a). California Labor Code § 226.7(b) states "[i]f

3   an employer fails to provide an employee a meal period or rest period in accordance with an

4   applicable order of the Industrial Welfare Commission, the employer shall pay the employee one

5   additional hour of pay at the employee's regular rate of compensation for each work day that the

6   meal or rest period is not provided." Cal. Lab. Code § 226.7(b).

7       In the case *Brinker Restaurant Corp. v. Superior Court* ("*Brinker*"), the Court found:

8
        An employer's duty with respect to meal breaks under both section 512, subdivision
9       (a) and Wage Order No. 5 is an obligation to provide a meal period to its employees.
        The employer satisfies this obligation if it relieves its employees of all duty,
10      relinquishes control over their activities and permits them a reasonable opportunity
        to take an uninterrupted 30-minute break, and does not impede or discourage them
11      from doing so." *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1040
        (2012).[29]
12

13  Employees are not said to have received a duty-free meal period "[w]hen an employer directs,

14  commands or restrains an employee from leaving the work place during his or her lunch hour and

15  thus prevents the employee from using the time effectively for his or her own purposes." *Bono*

16  *Enterprises, Inc. v. Bradshaw*, 32 Cal.App.4th 968, 975 (1995); *see also Augustus v. ABM Security*

17  *Serv., Inc.*, 2 Cal.5th 257, 265 (2016) (The California Supreme Court has "explained that during

18  meal periods, employers must 'relieve the employee of all duty and relinquish any employer

19  control over the employee and how he or she spends the time.'").

20      Plaintiff argues that when drivers are provided with meal breaks, these breaks are not duty-

21  free. As discussed above, Hoovestol has uniform policies which require drivers to be responsible

22  for the truck, the trailer, and the load at all times. Under this policy, Plaintiff claims drivers have

23  not been relieved of all duty and cannot use the time effectively for their own purposes, which

24  violates the standards enunciated in *Brinker*.

25      Resolution does not depend on penetrating the individual experiences of drivers, because

26  all drivers are subject to these uniform policies that Plaintiff claims unlawfully render them under

27  Hoovestol's control during meal periods. Instead, liability as to all subclass members will turn on

28

---

[29] The portions of Wage Order No. 5 which are relevant here are identical to the provisions in Wage Order No. 9, which covers the transportation industry.

how the fact finder resolves the following common question: Whether Hoovestol has relinquished control over drivers during meal breaks when, under Hoovestol's uniform policies, drivers are required to be responsible for the truck, the trailer and the load at all times, including while on meal breaks? Put differently, liability for all members of this subclass will be resolved by how the factfinder resolves the following question: Can an employer, like Hoovestol, be said to have relinquished control over its employees during meal periods when it makes them personally and professional responsible for any damage or theft that happens to the employer's or its customer's assets? If the fact finder resolves the above question in Plaintiff's favor, Hoovestol will be liable for not providing duty-free meal periods to the Duty-Free Meal Period Subclass. Alternatively, if the fact finder resolves this question in favor of Hoovestol, Hoovestol will prevail. Thus, "[t]he theory of liability – that [Hoovestol] has a uniform policy, and that that policy, measured against the wage order requirements, allegedly violates the law – is by its nature a common question eminently suited for class treatment." *Brinker*, 53 Cal.4th at 1033. Therefore, Plaintiff's Non-Duty-Free Meal Break Subclass should be certified.

### iii.   Facially Unlawful Meal Break Subclass

Plaintiff seeks to certify a subclass of all current and former non-exempt hourly drivers who worked for Hoovestol in California at any time from July 20, 2012, to the date the Court issues an order certifying the Class who worked one or more work period in excess of ten consecutive hours. Under California law, an employer must provide a second meal period that takes place **before** the end of the tenth hour of work. *See Brinker*, 53 Cal.4th at 1041 ("…section 512 requires a first meal period no later than the end of an employee's fifth hour of work, ***and a second meal period no later than the end of an employee's 10th hour of work.***") (emphasis added).

Hoovestol's second meal period policy – which Hoovestol's 30(b)(6) witness testified applied to all drivers throughout the class period – does not provide for a second meal period "no later than the end of the employee's 10th hour of work." Rather, Hoovestol's second meal period policy does not provide a second meal period until after the time the law requires it to have been provided. That is, under the express language of Hoovestol's meal period policy, drivers are not entitled to the second meal period until after ten (10) hours of work. Thus, liability for this subclass

1  of drivers will be determined exclusively through how the factfinder weighs in on the following

2  question: Has Hoovestol provided a second meal period before the end of the tenth hour worked

3  as required under California law, when, under its policy applicable to all drivers throughout the

4  class period, it tells drivers they do not get a second meal period until after they have worked over

5  ten hours?  The resolution of this question will determine liability as to the entire subclass. Thus,

6  the Facially Unlawful Meal Period Subclass should be certified.

7                                      ***iv.  Non-Duty-Free Rest Break Subclass***

8          Plaintiff seeks to certify a subclass of all current and former non-exempt hourly drivers

9  who worked for Hoovestol in California at any time from July 20, 2012, to the date the Court

10  issues an order certifying the Class who worked one or more work period in excess of three and a

11  half hours. If an employer does not provide a duty-free rest period, i.e., one that is free of employer

12  control, a Labor Code § 226.7 premium is triggered. *Augustus,* 2 Cal.5th at 269-270. As just

13  discussed with regard to duty-free meal breaks, Plaintiff alleges that, for the same reasons,

14  Hoovestol does not provide duty-free rest periods. That is, Plaintiff's liability is based on

15  Defendant's uniformly applicable policy that drivers are always responsible for the truck, trailer,

16  and load at all times of their day.

17          Based on this uniform policy, liability will be determined for all subclass members through

18  how the factfinder resolves the following common question: Whether Hoovestol has relinquished

19  control over drivers during rest breaks when, under Hoovestol's uniform policies, drivers are

20  required to be responsible for the truck, the trailer and the load at all times, including while on rest

21  breaks? Put differently, liability for all members of this subclass will be resolved by how the

22  factfinder resolves the following question: Can an employer, like Hoovestol, be said to have

23  relinquished control over its employees during rest periods when it makes them personally and

24  professional responsible for any damage or theft that happens to the employer's or its customer's

25  assets? This common question is eminently suited for class treatment. The Court should therefore

26  grant Plaintiff's motion for class certification and certify the Non-Duty-Free Rest Break Subclass.

27                                        ***v.  Wage Statement Subclass***

28          Plaintiff seeks to certify a subclass of current and former non-exempt hourly drivers who

worked for Hoovestol in California at any time from July 20, 2015, to the date the Court issues an

1    order certifying the Class and who received a wage statement that did not comply with California

2    Labor Code § 226. California Labor Code § 226(a), provides:

3           An employer . . . shall furnish to his or her employee . . . an accurate itemized
4           statement in writing showing (1) gross wages earned, (2) total hours worked by the
             employee, . . . (5) net wages earned, (6) the inclusive dates of the period for which
5           the employee is paid, (7) the name of the employee and only the last four digits of
             his or her social security number or an employee identification number other than
6           a social security number, (8) the name and address of the legal entity that is the
             employer . . ., and (9) all applicable hourly rates in effect during the pay period and
7           the corresponding number of hours worked at each hourly rate by the employee . .
8           ." Cal. Lab. Code § 226(a).

9    Pursuant to § 226(e)(1), an employee who suffers injury "as a result of a knowing and intentional

10   failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual

11   damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred

12   dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an

13   aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and

14   reasonable attorney's fees." Cal. Lab. Code § 226(e)(1).

15          An employee is deemed to suffer injury for purposes of § 226(e)(2)(B) "if the employer

16   fails to provide accurate and complete information as required by any one or more of items (1) to

17   (9)" and "the employee cannot promptly and easily determine from the wage statement alone" the

18   "amount of gross wages or net wages paid to the employee during the pay period or any of the

19   other information required to be provided on the itemized wage statement pursuant to items (2) to

20   (4), inclusive, (6), and (9) of division (a)." Cal. Lab. Code § 226(e)(2)(B)(i). An employee is

21   further deemed to suffer an injury if the employer fails to provide accurate and complete

22   information as required by any one or more of items (1) to (9) and the employee cannot promptly

23   and easily determine the name and address of the employer. Cal. Lab. Code § 226(e)(2)(B)(ii).

24   Under Plaintiff's Wage Statement Subclass, Plaintiff asserts that Defendant failed to: (1) include

25   the categories required by § 226(a); and (2) to include premium wages on wage statements.

26          **1.  Common Questions Predominate as to Plaintiff's Claim that
                  Defendant Failed to Include the Information Required by §
27                226(a)**

28          Plaintiff alleges that Hoovestol's wage statements do not contain all the information

required by § 226(a). Specifically, they do not contain the total hours worked. The question of

whether a defendant's wage statements contain the required information is a common question. *See Lubin v. The Wackenhut Corp.* (2016) 5 Cal. App. 5th 926, 959 ("First, the question whether Wackenhut's wage statements contained the required elements under Labor Code section 226, subdivision (a) is a common question[.]"). Further, "*Labor Code section 226, subdivision (e)(2)(B)(i)* clarifies that injury arises from defects in the wage statement, rather than from a showing that an individual experienced harm as a result of the defect." (*Id.*). Accordingly, under the guidance provided in the case *Lubin v. The Wackenhut Corporation* ("*Wackenhut*"), Plaintiff's Wage Statement Subclass is amenable to class treatment as the following common question will determine liability as to all class members: Do Hoovestol's wage statements contain the information required under California Labor Code § 226(a)?

### 2. Common Questions Predominate as to Plaintiff's Claim that Defendant's Wage Statements Failed to Include Premium Wages

In addition, Plaintiff asserts that because his meal and rest period subclasses are suitable for class treatment, Hoovestol's wage statements are inaccurate because they fail to contain premium wages earned for missed meal and rest breaks. The court in *Wackenhut* held that "because plaintiffs' meal and rest period claims are suitable for class treatment, their theory that wage statements failed to include premium wages earned for missed meal and rest periods also is suitable for class treatment." *Lubin v. The Wackenhut Corp.*, 5 Cal. App. 5th at 960. Similarly, as Plaintiff's meal and rest period subclasses are suitable for class treatment, the Court should find here that Plaintiff's Wage Statement Subclass is also suitable for class treatment.

### vi. Waiting Time Penalties Subclass

Plaintiff seeks to certify a subclass of all current and former non-exempt hourly drivers who worked for Hoovestol in California at any time from July 20, 2013, to the date the Court issues an order certifying the Class whose employment with Defendant has ended. These drivers are derivative of the failure to pay all straight time wages subclass and are thus owed waiting time penalties under California Labor Code § 203. An employer is liable for waiting time penalties if the "employer willfully fails to pay… any [owed] wages of an employee who is discharged or quits." Cal. Lab. Code § 203. The term "willful" in § 203 "means that the employer intentionally failed or refused to perform an act which was required to be done." *Ghory v. Al-Lahham*, 209

1   Cal.App.3d 1487, 1492 (1989). There is no need to show an evil intent or deliberate purpose to

2   defraud the employee. *Armenta v. Osmose, Inc*. 135 Cal. App. 4th 314, 325 (2005) (rev. denied).

3          The underlying wages Plaintiff claims are owed to this subclass of former drivers are the

4   same unpaid straight time wages that are the subject of the Unpaid Straight Time Wages Subclass.

5   Thus, the only additional issue to be resolved for the subclass will be whether Hoovestol's failure

6   to pay all wages was "willful" within the meaning of the statute. If the factfinder finds Hoovestol

7   liable for failing to compensate for off-the-clock work as discussed above, the subclass of former

8   drivers' claims for § 203 penalties will be proven in the single-stroke, post-certification

9   determination of whether Hoovestol willfully failed or refused to pay the subclass of former

10  drivers' wages owed for off-the-clock work at termination.

11          **d.   Plaintiff's Claims are Typical of All Class Claims**

12          Rule 23(a) requires that "the claims or defense of the representative parties are typical of

13  the claims or defenses of the class." Claims are typical if they are "reasonably co-extensive with

14  those of absent class members," even if they are not "substantially identical." *Hanlon v. Chrysler*

15  *Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Three factors go into the determination of typicality:

16  (1) whether the other members have the same or similar injuries, (2) whether the action is based

17  on conduct which is not unique to the named plaintiff, and (3) whether other class members have

18  been injured by the same course of conduct. *Id.* Here, Plaintiff's claims are typical of the claims

19  of the rest of the class and subclasses. Like the other putative class members, Plaintiff was

20  employed by Hoovestol and worked as a nonexempt, hourly driver. Plaintiff was subject to the

21  same uniform policies alleged of above. Accordingly, Plaintiff's claims are typical all classes.

22          **e.   Plaintiff is Adequate Under Rule 23(a)(4) and Counsel Should Be Appointed
          as Class Counsel Under Rule 23(g)(1)(A)**

23          Adequacy requires that the proposed class representatives (1) do not have conflicts of

24  interest with other class members and (2) are represented by qualified counsel. *Hanlon*, 150 F.3d

25  at 1020. There is no evidence of any conflict or antagonism between the class representative, his

26  counsel, or the putative class. Plaintiff has demonstrated that he is willing and able to vigorously

27  prosecute this litigation. The proposed class representative has a thorough understanding of this

28  suit, interests in line with those of the class, and no conflicts with other class members. (Terry Dec.
    at ¶¶ 6, 8). Further, counsel for Plaintiff have significant experience in the prosecution of wage

1  and hour class actions and in employment litigation in general. (Turley Dec. at ¶¶ 4-25). Plaintiff's

2  counsel has vigorously prosecuted this adversarial case and will continue to do so. Thus, Plaintiff

3  and his counsel are adequate representatives of the class. Accordingly, William Turley, David

4  Mara, Jill Vecchi, and Matthew Crawford from The Turley and Mara Law Firm, APLC, request

5  to be appointed class counsel pursuant to Fed. R. Civ. P. Rule 23(g).

6  ### f.   Individualized Issues Will Not Predominate

7          For a class to be certified under Rule 23(b)(3), common questions of law or fact must

8  "predominate" over any individualized questions and a class action must be "superior to other

9  available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3). "In

10  determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs

11  have stated a cause of action or will prevail on the merits, but rather whether the requirements of

12  Rule 23 are met." *United Steel, Paper & Forestry, Rubber, Mfg. Energy v. ConocoPhillips Co.*

13  ("*United Steel*"), 593 F.3d 802, 808 (9th Cir. 2010). The *United Steel* court emphasized it was

14  *plaintiff's legal theory*, and its amenability to class treatment, that must be considered, not potential

15  conflicts nor speculation about post-certification litigation. *Id.* at 809. The *United Steel* court noted

16  "a district court retains the flexibility to address problems with a certified class as they arise,

17  including the ability to decertify. 'Even after a certification order is entered, the judge remains free

18  to modify it in the light of subsequent developments in the litigation.'" *Id.* (citations omitted).

19          "Class certification is usually appropriate where liability turns on an employer's uniform

20  policy that is uniformly implemented, since in that situation predominance is easily established."

21  *Bernstein*, 2016 U.S. Dist. LEXIS at *39 (*quoting Kamar v Radio Shack Corp.*, 254 F.R.D. 387,

22  399 (C.D. Cal. 2008)). "For that reason, '[c]laims alleging that a uniform policy consistently

23  applied to a group of employees is in violation of the wage and hour laws are of the sort routinely

24  and properly, found suitable for class treatment.'" *Bernstein*, 2016 U.S. Dist. LEXIS 154326 at

25  *39 (*quoting Brinker Rest. Corp.*, 53 Cal. 4th at 1033).

26  ### i.   Through Hoovestol's Own Policies, Class-Wide Common Questions Will Generate Class-Wide Common, Predominant Answers

27          The predominance inquiry under Rule 23(b)(3) "tests whether proposed classes are

28  sufficiently cohesive to warrant adjudication by representation." *Dilts v. Penske Logistics, LLC*,

267 F.R.D. 625, 634 (S.D. Cal 2010) (*quoting Amchen Prods. V. Windsor*, 521 U.S. 591 (1997)

1    "Because no precise test can determine whether common issues predominate, the Court must

2    pragmatically assess the entire action and the issues involved." *Wiegele v. FedEx Ground Package*

3    *Sys.*, Case No. 06-cv-1330-JLS, 2008 U.S. Dist. LEXIS 10246 *20 (S.D. Cal. Feb. 12, 2008)

4    (*quoting Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 489 (E.D. Cal. 2006). Focusing

5    on Plaintiff's legal theories of recovery for each of the classes proves that common issues

6    predominate. All of the theories challenge the lawfulness of policies that are common to all class

7    members. As the above common questions attest, liability for all class members will turn on how

8    the factfinder answers the discrete and clear questions posed above.

9           **1.   Common Questions Predominate for the Unpaid Straight Time Wages Subclass**

10          Liability under the Unpaid Straight Time Wages Subclass will be determined exclusively

11   through whether Hoovestol's uniform policies transform meal period and layover time into

12   compensable hours worked as that phrase is interpreted under California law. Entirely irrelevant

13   to the analysis is the individualized experience of the drivers, because each driver is subject to the

14   policies outlined above.

15          In a recent Central District decision, *Ayala v. U.S. Xpress Enters.*, the district court certified

16   a class of drivers where the plaintiffs submitted evidence the defendants had a policy of requiring

17   them to be ready to respond to employer's messages at all times including during meal and rest

18   periods which failed to relieve them of duties during the meal and rest periods in violation of

19   California law. *Ayala*, 2017 U.S. Dist. LEXIS 125247 at *28-30. The court agreed that this was a

20   predominating question where "liability will turn on whether … responding to alerts messages

21   rises to the level of employee control that would turn any break periods provided into

22   impermissible on call breaks." *Id.* at *29. Importantly, in response to the defendants' argument

23   that predominance was lacking because some drivers dispute whether they were required to

24   respond to messages, the Court stated:

25            The Court disagrees…While the details of the individual drivers' experiences may

26            inform this inquiry, whether or not individual class members actually performed these tasks is secondary to whether Defendants' policies placed the type of

27            affirmative burden prohibited by *Augustus*. … The Court need not address the full merits of Plaintiff's application of *Augustus* to the facts presented, the Court only

28            asks whether Plaintiff's theory will live or die on a class-wide basis**.** Because all … meal and rest break claims turn on a single issue-whether Defendants exert

"control" over class members pursuant to *Augustus* by requiring them to secure their loads and respond to Drivertech messages — the Court would find that all of these claims are subject to common proof. Defendants may challenge, and ultimately prevail on this crucial issue, but cannot do so at the certification stage. *Id.* at \*30-31.

Just like *Ayala*, Plaintiff's theories ask whether Hoovestol's policies, as outlined above, placed the type of affirmative burden prohibited by *Augustus*. Plaintiff's theories will live and die on a class-wide basis. Whether Hoovestol's policies constitute employer control is a predominating question that is not altered by any declarations that some drivers did not follow Hoovestol's policies during meal breaks and/or while on layovers. Plaintiff's claims are subject to common proof: Hoovestol's uniform policies. If Plaintiff prevails on his unpaid straight time wages claims at trial, the derivative claim of the Waiting Time Penalties Subclass will also be determinative through common predominating evidence that will not require any resort to individualized inquiries.[30]

## 2. Common Questions Predominate for the Meal and Rest Period Subclasses

Focusing on Plaintiff's legal theories of recovery for each of the meal and rest period subclasses proves that common issues predominate. All of the theories challenge the lawfulness of policies that are common to all class members. As the above common questions attest, liability for all class members will turn on how the factfinder answers the discrete and clear questions. All of the meal and rest period subclasses challenge the lawfulness of policies applicable to all class members. As the common questions outlined above show, each class challenges, under uniform policies applicable to all subclass members, that meal and rest periods were not provided in accordance with California law. Just as in the case *Ruiz v. XPO Last Mile, Inc.*, "determining liability turns most significantly on the trier of fact determining what Defendant's . . . rest break policy was, and whether it violated California law." *Ruiz v. XPO Last Mile, Inc.*, Case No. 05-cv-2125-JLS (KSC), 2016 U.S. Dist. LEXIS 152095 \*31 (S.D. Cal. Feb. 1, 2016).

The individualized experiences of the class members are wholly irrelevant, because the legal challenges for each class claim argue that, under the applicable uniform policies, Hoovestol did not provide compliant meal and rest periods. When the legal challenge is that meal and rest

---

[30] If the Court finds the issues certifiable for any of the aforementioned claims, the subclass of former employees' claims for § 203 penalties will be proven in the single-stroke. Predominance is satisfied because the determination whether Hoovestol willfully failed to pay the aforementioned wages is driven by the common predominating evidence as asserted above.

periods were not provided, "whether or not the employee was able to take the required break goes to damages." *Faulkinbury v. Boyd & Associates*, 216 Cal.App.4th 220, 235 (2013); *see also Abdullah*, 731 F.3d at 961-962 (liability arises by adopting a uniform policy that violates wage and hour laws); *Bradley*, 211 Cal.App.4th at 1150 (based on *Brinker*, lack of a meal period policy establishes liability and is a matter of common proof).

### ii.   A Class Action is Superior to Other Methods of Litigation

"Where class-wide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). In considering whether a class action is superior, the court must focus on whether the interests of "efficiency and economy" would be advanced by class treatment. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001), amended by 273 F.3d 1266 (9th Cir. 2001). The "superiority" prong requires a consideration of: (1) class members' interests in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already begun by or against class members, (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and (4) likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(a)-(d). Nothing in the record indicates that class members' have any individual interest in controlling the prosecution or defense of separate actions. Indeed, all class members' harm arises out of the same unlawful policies. There has not been any other litigation concerning this controversy initiated by or against class members.

### g.   **The Case is Manageable as a Class Action, as Damages Will Be Proven Through Defendant's Own Time Records**

Finally, the class is not unmanageable as common questions regarding Hoovestol's policies will establish liability as to all class members. *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013) ("The putative class and proposed sub-classes contain approximately 538 people, and courts routinely certify larger and more complex classes."). If liability is determined in Plaintiff's favor, determining class-wide damages will be based on simple calculations based on Defendant's own time and pay records. (*See* Declaration of Kevin Taylor ("Taylor Dec.") attached to the Turley Decl. at Exhibit F at ¶¶ 9-13). For the Unpaid Straight Time Wages Subclass, if the jury answers Plaintiff's common, class-wide questions in his favor, damages will come from

1  Hoovestol's time and wage records. That is, drivers will be compensated for all time at their

2  applicable hourly rate for the time they spent on meal periods. (*See* Taylor Dec. at ¶ 9).

3        Likewise, for meal and rest period subclasses, the liability questions focus on whether

4  under Hoovestol uniform policies – or lack thereof – it failed to provide legally compliant meal

5  and rest periods when drivers worked qualifying shifts. If the jury answers the common, class-

6  wide questions in Plaintiff's favor, the damages will be readily ascertainable from Hoovestol's

7  own time and pay records. Hoovestol's time records will show when a class member was scheduled

8  for and worked a qualifying shift. For each of those qualifying shifts, Hoovestol will owe the class

9  members an hours' worth of pay under California Labor Code § 226.7, with the applicable hourly

10  pay rates also coming from Hoovestol's time records. (*See* Taylor Dec. at ¶¶ 10-11).

11        Damages for the Wage Statement Subclass will also be calculated from Hoovestol's own

12  records. Hoovestol maintains employee records that include wage statements. Damages for this

13  claim can be calculated using these records. (*See* Taylor Dec. at ¶ 12).

14        Damages for the Waiting Time Penalties Subclass will also be calculated from Hoovestol's

15  own records. Hoovestol maintains employee data that includes information related to hiring,

16  termination, and pay. Damages for this claim can be calculated using these records pertaining to

17  former class member's separation from the company. (*See* Taylor Dec. at ¶ 13).

18  **V.   NOTICE TO THE CLASS SHOUD BE ORDERED**

19        Notice to the class should be ordered promptly after a class is certified and in the form

20  approved by the Court. *City of San Jose v. Superior Court*, 12 Cal.3d 447, 454. Under Federal

21  Rule of Civil Procedure 23(c)(2)(A), "the court may direct appropriate notice to the class." Fed.

22  Rule Civ. Proc. 23(c)(2)(A). Notice should be provided in the form as set forth in Exhibit G

23  attached to the Turley Declaration. The Notice proposed by Plaintiff complies with all the

24  requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and is the best notice practicable

25  under the circumstances. Plaintiff respectfully requests that the Court: (1) order Hoovestol to

26  provide the contact information for class members to a mutually agreeable class action

27  administrator no later than fourteen (14) days after the Court issues a ruling certifying a class or

28  subclass; and (2) order that the Notice be mailed by U.S. First Class mail no later than thirty (30)

1    days after the Court issues a ruling certifying a class or subclass. Plaintiff will bear the

2    administration costs associated with this mailing.

3    **VI.      CONCLUSION**

4           Based on the foregoing, Plaintiff respectfully requests that the Court grant certification of

5    the classes and subclass discussed herein.

6    Dated: February 2, 2018               **THE TURLEY & MARA LAW FIRM, APLC**

7                                           /s/ *Jill Vecchi*

8                                          William Turley, Esq.
                                           David Mara, Esq.
9                                          Jill Vecchi, Esq.
                                           Matthew Crawford, Esq.
10                                         Representing Plaintiff RICHARD TERRY

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28