UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| RICHARD TERRY, | Case No. 16-cv-05183-JST |
|---|---|
| Plaintiff, | |
| v. | **ORDER DENYING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| HOOVESTOL, INC., | Re: ECF No. 55 |
| Defendant. | |

Before the Court is Plaintiff's motion for preliminary approval of a class action settlement. ECF No. 55. For the reasons below, the Court denies the motion.

## I. BACKGROUND

### A. The Parties and Claims

Plaintiff Richard Terry is a former Hoovestol truck driver. ECF No. 1-1 ¶ 27. Hoovestol is a company which hauls bulk mail for the United States Postal Service ("USPS") and employs truck drivers in California. *Id.* ¶¶ 36–37. Terry brings this putative wage and hour class action for violations of California Labor Code Sections 226(b), 226.7, 510, 512, 515, 558, and 1194 as well as California Code of Regulations Title 8 Section 11090. *Id.* ¶ 24. He alleges causes of action for: failure to pay all straight time wages; failure to pay overtime; failure to provide meal periods; failure to authorize and permit rest periods; knowing and intentional failure to comply with itemized employee wage statement provisions; failure to pay all wages due at the time of termination of employment; and violation of Unfair Competition Law. ECF No. 55 at 8.

### B. Procedural History

Terry filed the initial complaint in this action in the Alameda County Superior Court on July 20, 2016. ECF No. 55 at 8. On September 8, 2016, Hoovestol removed the case to this Court

pursuant to the Class Action Fairness Act ("CAFA"). *Id.* On February 2, 2018, Terry filed a motion for class certification, proposing seven subclasses. *See* ECF No. 41. After Hoovestol's opposition and Terry's reply were filed, the Court ordered supplemental briefing regarding whether the subclasses satisfied the numerosity requirement of Rule 23. ECF No. 46. On March 30, 2018, Terry filed a supplemental brief and a motion to strike. ECF Nos. 47, 49. Hoovestol also provided supplemental briefing. *See* ECF Nos. 50, 51.

After the exchange of discovery, mediation, and continued negotiation following mediation, the parties reached a proposed class action settlement. ECF No. 55 at 10. On June 14, 2018, Terry filed the instant motion seeking preliminary approval of the proposed class action settlement including conditional certification of the settlement class. *Id*. at 1–2. Terry's motions for class certification and to strike were terminated as moot on June 18, 2018 in light of this motion. ECF No. 56. Pursuant to CAFA, Hoovestol sent notice of the proposed settlement to the United States Attorney General and the Attorney General of the State of California on June 22, 2016. ECF No. 57. No Attorney General has submitted a statement of interest or objection in response to these notices.

## II. PRELIMINARY APPROVAL

### A. Legal Standard

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *City of Seattle*, 955 F.2d at 1276 (citation omitted). The court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). Then, courts must hold a hearing pursuant to Rule 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable, and adequate."

Preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and

falls within the range of possible approval." *In re Tableware*, 484 F. Supp. 2d at 1079 (quotations omitted). The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class. *Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). To assess a settlement proposal, courts must balance a number of factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id*. at 1026 (citations omitted). The proposed settlement must be "taken as a whole, rather than the individual component parts" in the examination for overall fairness. *Id*. Courts do not have the ability to "delete, modify, or substitute certain provisions"; the settlement "must stand or fall in its entirety." *Id*.

### B. Terms of the Settlement

Under the terms of the agreement, Defendant agrees to pay no more than $100,000 as a gross settlement amount, without admitting liability. ECF No. 55-2 ("Settlement Agreement") ¶¶ III.A, III.L.1. This amount includes Plaintiff's attorneys' fees and costs, the cost of class notice and settlement administration, the class representative's enhancement award, and employer/employee payroll taxes on the portion of the settlement payments deemed wages. *Id*. ¶ I.V. Plaintiff's counsel will seek $25,000 in attorney's fees and no more than $20,000 in litigation costs. *Id*. ¶¶ I.D, I.M. The gross settlement amount includes $3,000 for settlement administration costs. *Id*. ¶ I.B. In addition, Terry will be paid an enhancement award of $2,500 in exchange for the general release of all his claims against Hoovestol. *Id*. ¶¶ I.L, III.K.[1] After these

---

[1] The Court notes two significant typographical errors in the motion for preliminary approval. First, Terry describes the enhancement award as "an amount not to exceed $2,500.00 (*Seven Thousand Five Hundred Dollars and No Cents*)." ECF No. 55 at 11 (emphasis added). The Court interprets this to mean "Two Thousand Five Hundred Dollars and No Cents" consistent with the language used in the settlement agreement. Settlement Agreement ¶ III.K. Second, Terry states, "the settlement amount of *$200,000* is fair and reasonable." ECF No. 55 at 11 (emphasis added).

1 deductions from the gross settlement amount, approximately $49,500 will remain to be distributed among the participating class members. ECF No. 55 at 19. Each participating class member will receive a proportion of the amount "equal to (i) the number of weeks he or she worked for Hoovestol in California . . . divided by (ii) the total number of weeks worked by all Participating Class Members." Settlement Agreement ¶ III.F.1.a. Sixty percent of each individual's share is intended to settle claims for unpaid wages and forty percent is intended to settle claims for interest and penalties. *Id*. ¶¶ III.F.2.a, 2.b. The portion for unpaid wages will be "reduced by applicable payroll tax withholdings and deductions." *Id*.

Class members that wish to object must mail a written objection to the court no later than forty-five days after the settlement administrator mails the class notices. *Id*. ¶ III.I.4. Class members may opt-out of the settlement by mailing a written request for exclusion to the settlement administrator no later than forty-five days after the settlement administrator mails the class notices. *Id.* ¶ III.I.5.

The Settlement Agreement further provides that when checks mailed to participating class members are not redeemed or deposited within ninety days, the settlement administrator will mail a reminder postcard. *Id.* ¶ III.I.11. Ninety days after notice is mailed and within 200 days after the checks were initially mailed, funds from any unredeemed checks will be paid to the State Treasury for the Trial Court Improvement and Modernization Fund and the Equal Access Fund of the Judicial Branch. *Id*.

In exchange for the settlement awards, participating class members will release Hoovestol from liability as to "all known and unknown state law claims that were alleged or that could have been alleged based on the facts of the complaints filed in the matter." *Id.* ¶ I.BB.

**C. Discussion**

**1. Non-Collusive Negotiations**

Because this settlement was reached prior to class certification, the Court must examine the settlement for evidence of collusion with a higher level of scrutiny. *In re Bluetooth Headset Prod.*

---

Again, the Court interprets this to say "$100,000" consistent with the terms of the settlement agreement. Settlement Agreement ¶ III.A.

*Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). The agreement was reached after the parties engaged in a mediation session, exchanged some discovery, fully briefed a motion for class certification, and continued arms-length negotiation. ECF No. 55 at 8-10. These facts support the conclusion that the settlement is non-collusive and likely to benefit the class members. *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (explaining that use of an experienced mediator "suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel"). Additionally, the settlement agreement does not contain a reversionary clause. All of the gross settlement award will be distributed to the class and funds from checks that remain unredeemed or uncollected will be distributed to the Trial Court Improvement and Modernization Fund and the Equal Access Fund of the Judicial Branch. Settlement Agreement ¶ III.I.11; *see In re Bluetooth Headset*, 654 F.3d at 947 (discussing reversionary clauses as a sign of collusion).

The settlement agreement does contain a clear sailing provision. Settlement Agreement ¶ III.G.2. While a clear sailing provision may be considered a sign of collusion under some circumstances, it "does not signal the possibility of collusion" where, as here, class counsel's fees and costs are awarded from the same gross settlement amount as the class. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 961 n.5 (9th Cir. 2009). "This scenario does not signal the possibility of collusion because, by agreeing to a sum certain, [Hoovestol was] acting consistently with [its] own interests in minimizing liability. " *Id*. The Court concludes that the negotiations and agreement were non-collusive.

### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

The parties disagree over whether this case is "factually and legally strong." Terry acknowledges that he will face "numerous obstacles, including obtaining and maintaining class certification status . . . especially when taking into consideration the individual releases Defendant has obtained." ECF No. 55 at 30. However, the Court agrees with the parties that it would be more expensive and time-consuming to litigate this case through trial and that resolution of this action through settlement is appropriate. Settlement Agreement ¶¶ II.I, II.J. This factor weighs in favor of preliminary approval.

### 3. The Amount Offered in Settlement

The Court must also consider whether the settlement amount falls within the range of possible approval. *Lusby v. Gamestop Inc.*, 297 F.R.D. 400, 415 (N.D. Cal. 2013). To evaluate adequacy, courts primarily compare the plaintiffs' expected recovery at trial to the value of the proposed settlement. *In re Tableware*, 484 F. Supp. 2d at 1080. In this case, Class Counsel estimates that if Plaintiffs were to prevail, Hoovestol's maximum potential exposure would total approximately $2,440,402. ECF No. 55-1 ¶¶ 26–29. While the settlement amount of $100,000 represents a small fraction of Hoovestol's maximum potential exposure, "a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Cordy v. USS-Posco Indus.*, No. 12-CV-00553-JST, 2013 WL 4028627, at *4 (N.D. Cal. Aug. 1, 2013) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)).

Terry claims that the settlement amount reflects the discounting of his exposure analysis in light of Hoovestol's defenses and the best interests of the class. ECF No. 55 at 30. In particular, Plaintiff notes Hoovestol's negotiations with most of the drivers in the class to secure individual releases of their claims. *Id*. at 29. Plaintiff also notes the risk that he will not be able to obtain and maintain class certification through trial with the remaining thirty-nine members of the settlement class. *Id*. at 29–30. Additionally, Plaintiff identifies the risk that a factfinder could agree with Hoovestol's defenses, reducing recovery on certain claims to zero, as well as the risk that Plaintiff will be unable to prove the total amount of harm at trial. *Id*. at 30. Given the magnitude of these risks, the Court finds the gross settlement amount is within the range of possible approval.

The Court also finds the settlement agreement with respect to attorney's fees, costs, and the enhancement award is within the range of possible approval. Plaintiff's counsel requests $25,000, or 25% of the gross settlement amount, which falls within the 25% "benchmark" set by the Ninth Circuit for class action attorney's fees awards. *See In re Bluetooth Headset*, 654 F.3d at 942. The Court also notes that Terry's $2,500 enhancement award is well within the $5,000 figure typical for enhancement awards in this Court. *See Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have

indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount."). This amount is also reasonable in light of Terry's execution of a broader release. ECF No. 55 at 12; *see Salamanca v. Sprint/United Mgmt. Co.*, No. 15-CV-05084-JSW, 2018 WL 1989568, at *4 (N.D. Cal. Mar. 9, 2018) (finding an additional $10,000 payment reasonable in light of the execution of a broader general release than the rest of the class and a no-hire agreement).

The Court need not, at this juncture, resolve the specific amount of attorney's fees, costs, or Terry's payment, since such matters will be finally determined at the fairness hearing. However, counsel should be mindful of addressing these issues and providing appropriate detail and documentation in connection with the motion for final approval and motion for attorney's fees, costs, and enhancement award.

### 4. The Extent of Discovery Completed and the Stage of Proceedings

The parties have conducted some discovery in this case. Plaintiff served two sets of special interrogatories and two sets of requests for production of documents on Hoovestol, and Hoovestol served two sets of requests for production of documents on Terry. ECF No. 55 at 9. In the process, Plaintiff's counsel reviewed "hundreds of pages of documents" and "interviewed numerous class members." *Id*. Plaintiff's counsel deposed Hoovestol's Senior Director of Safety, Lynda Kuhn, and Hoovestol deposed Terry and his class certification expert. *Id*. The Court agrees that this discovery process allowed the parties to gather "sufficient information to make an informed decision about the settlement." *In re Mego*, 213 F.3d at 459.

### 5. The Experience and Views of Counsel

Based on experience, class counsel believes the settlement agreement is "fair, adequate, and reasonable." Settlement Agreement ¶ II.I. This weighs in favor of its approval.[2]

---

[2] "The Court considers this factor, as it must, but gives it little weight. 'Although a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court should keep in mind that the lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement.'" *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2017 WL 4750628, at *7 n.4 (N.D. Cal. Oct. 20, 2017) (citing Principles of the Law of Aggregate Litigation § 3.05 comment a (2010)).

### 6. **Preferential Treatment**

For this factor, the Court looks at whether the settlement agreement provides preferential treatment to any class member. Under the settlement agreement, participating class members receive a proportion of the net settlement amount that is equal to the number of weeks he or she worked divided by the total weeks worked by all participating members. *Id.* ¶ III.F.1.a. That some class members will receive a larger payment than others based on the amount of time worked compared to other class members is appropriate in this case and does not constitute improper preferential treatment.

### 7. **Obvious Deficiencies**

The Court concludes that the instant motion must be denied based on the following deficiencies:

#### a. *Cy Pres* **Distribution of Unclaimed Funds**

The Settlement Agreement provides that funds from unredeemed checks will be paid to the State Treasury for the Trial Court Improvement and Modernization Fund and the Equal Access Fund of the Judicial Branch. *Id.* ¶ III.I.11. The parties have not met their burden to show "a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (citation omitted). The parties should either select a new recipient or provide additional support as to why these recipients are appropriate.

#### b. **Release of Class Members' Claims**

Under the Settlement Agreement, participating class members will release Hoovestol from liability as to "all known and unknown state law claims that were alleged or that could have been alleged based on the facts of the complaints filed in the matter." Settlement Agreement ¶ I.BB. Terry's release – which runs "from the beginning of time," and forever releases all claims by him, his spouse, and his heirs – is even broader. ECF No. 55 at 11. "Courts in this district routinely reject proposed class action settlement agreements that try to release all claims in a wage-and-hour case relating to compensation as overbroad and improper." *Kempen v. Matheson Tri-Gas, Inc.*, No. 15-CV-00660-HSG, 2016 WL 4073336, at *9 (N.D. Cal. Aug. 1, 2016) (citing cases). The Court finds that the release in the Settlement Agreement is overbroad and "goes beyond the scope

8

of the present litigation" because it releases all state law claims based on the facts of the complaint without regard to the breadth of Plaintiffs' allegations in the complaint. *See Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2014 WL 1477630, at *7 (N.D. Cal. Apr. 15, 2014); *see also McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at *3 (N.D. Cal. Dec. 19, 2012).

### 8. Notice Procedure

The Court must separately evaluate the proposed notice procedure. Under Federal Rule of Civil Procedure 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must state:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Here, the proposed notice form meets all of the above requirements. Settlement Agreement at 29-35. The parties agreed to the appointment of ILYM Group, Inc. as the settlement administrator that will handle the provisions of notice. ECF No. 55 at 18. ILYM will mail and email the notice form to all identified class members using data provided by Hoovestol. Settlement Agreement ¶¶ III.I.3.a, 3.b. ILYM will find a more current address if a notice is returned because of an incorrect address. *Id.* ¶ III.I.3.c. ILYM will also trace the mailing address of any notice returned as undeliverable and take note of any notices re-mailed to the original address if a new address cannot be found. *Id.*

However, Terry's proposed schedule sets the deadline to opt-out or object to the settlement at 45 days after the initial notice is mailed. *Id.* ¶¶ III.I.4, I.5. "The Court concludes that any period shorter than 60 days is too short a time to allow class members to properly respond." *Thomas v. Magnachip Semiconductor Inc.*, No. 14-CV-01160-JST, 2016 WL 1394278, at *8

(N.D. Cal. Apr. 7, 2016). Therefore, the Court does not preliminarily approve the notice procedure.

## CONCLUSION

Plaintiff's motion is DENIED. The parties may correct the deficiencies noted above and re-file their motion for preliminary approval of the class action settlement.[3]

**IT IS SO ORDERED.**

Dated: September 7, 2018



JON S. TIGAR
United States District Judge

---

[3] The Court also notes that the parties plan to pay funds from unredeemed checks to the *cy pres* beneficiary after 180 days rather than attempting a second distribution. *See* Settlement Agreement ¶ III.I.11. In the re-filed motion, the parties should explain why attempting a second distribution would be infeasible or inappropriate. Alternatively, the parties may include a second distribution in their agreement.

10