1  William Turley, Esq. (122408)
   David Mara, Esq. (230498)
2  Jill Vecchi, Esq. (299333)
   Matthew Crawford, Esq. (310230)
3  **THE TURLEY & MARA LAW FIRM, APLC**
   7428 Trade Street
4  San Diego, California 92121
   Telephone: (619) 234-2833
5  Facsimile: (619) 234-4048
6
7  Attorneys for Plaintiff RICHARD TERRY
   on behalf of himself and all others similarly
   situated and on behalf of the general public.
8
9                    **UNITED STATES DISTRICT COURT**
10                  **NORTHERN DISTRICT OF CALIFORNIA**
11
12  RICHARD TERRY, on behalf of himself and all        Case No. 3:16-cv-05183-JST
    others similarly situated, and on behalf of the
13  general public,
                                                        [*Assigned to the Honorable Jon S. Tigar*]
14              Plaintiff,
15  v.
16  HOOVESTOL, INC.; and DOES 1-100,                    **PLAINTIFF'S NOTICE OF RENEWED
                                                        MOTION AND RENEWED MOTION FOR
17              Defendants.                             PRELIMINARY APPROVAL OF CLASS
                                                        ACTION SETTLEMENT**
18
19                                                      **Date: November 1, 2018**
                                                        **Time: 2:00 p.m.**
20                                                      **Judge: Hon. Jon S. Tigar**
                                                        **Dept.: 9**
21
22
23                                                      Action Filed:      July 20, 2016
24
25
26
27
28

**TO:  ALL PARTIES HEREIN AND TO THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Plaintiff, Richard Terry (hereinafter "Plaintiff" or "Mr. Terry"), moves this Court for an order:  (1) Provisionally certifying the Class for settlement purposes only; (2) Preliminarily approving the class action settlement embodied in the Joint Stipulation and Settlement Agreement; (3) Approving the Notice to Stipulated Class/Collective Members ("Notice") and the plan for distribution of the Notice to Class Action Settlement; (4) Appointing ILYM Group, Inc. as the Settlement Administrator; and (5) Scheduling a Final Approval Hearing.

This motion is set for determination on November 1, 2018, at 2:00 p.m. in Courtroom No. 9 in the above entitled courthouse located at 450 Golden Gate Avenue, San Francisco, California 94102. This motion is based upon this notice, the accompanying Memorandum of Points & Authorities filed herewith, the accompanying Declaration of William Turley filed herewith, the Joint Stipulation and Settlement Agreement and all exhibits thereto, the filings on record in this case, and upon such further evidence, both documentary and oral, that may be presented at the hearing of this motion.

Dated: September 25, 2018                **THE TURLEY & MARA LAW FIRM, APLC**

                                         By:*/s/ Jill Vecchi*_____
                                             William Turley, Esq.
                                             David Mara, Esq.
                                             Jill Vecchi, Esq.
                                             Matthew Crawford, Esq.
                                             Attorneys for Plaintiff RICHARD TERRY

## **TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ........................................2

   a.  Investigation .................................................................................................3

   b.  Settlement Negotiations ...............................................................................4

III.  SUMMARY OF SETTLEMENT.......................................................................4

   a.  The Proposed Class......................................................................................4

   b.  Settlement Terms .........................................................................................5

     i.   **Class Representative General Release Payment** ...............................5

     ii.   Attorneys' Fees and Costs ....................................................................7

       1.   The Attorneys' Fee Request is Reasonable Under the "Common Fund/Percentage" Analysis...............................................................................................8

         a.   The Common Fund Doctrine ....................................................8

         b.   The Percentage Requested is Reasonable ................................9

         c.   The Fee Requested is Within the Range of Fees Approved in Comparable Cases 10

       2.   A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee ......11

         a.   Counsel's Hourly Rates are Reasonable ................................11

         b.   Counsel's Total Hours are Reasonable ..................................12

     iii.   Settlement Administration Costs........................................................12

     iv.   Settlement Payments to Participating Class Members........................13

     v.   Uncashed Checks ................................................................................14

     vi.   Distribution of Funds..........................................................................15

   c.  Release of Claims by Participating Class Members .................................16

IV.  THE CLASS SHOULD BE CONDITIONALLY CERTIFIED........................16

   a.  Rule 23(a) Requirements are Met for the Class ........................................17

iii

i.      Numerosity.................................................................................................17

ii.     Commonality ............................................................................................17

iii.    Typicality ...................................................................................................17

iv.     The Class Representative and His Counsel are Adequate .........................18

b. The Rule 23(b) Standards Are Satisfied ...........................................................19

i.      Common Issues Predominate.....................................................................19

ii.     The Class Action Device Is Superior ........................................................19

iii.    No Manageability Issues Preclude Certification .......................................20

c. Plaintiff's Counsel Should be Appointed as "Class Counsel" ...........................20

V.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ............................21

a. Federal Rule of Civil Procedure, Rule 23(e)....................................................21

b. The Settlement Resulted from Arm's-Length Negotiations..............................22

c. The Balancing of the Factors ..........................................................................22

d. Range of Exposure and Reasonable Discount ..................................................26

VI.  NATURE AND METHOD OF NOTICE ..............................................................26

VII. CONCLUSION ..................................................................................................27

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Advertising Specialty Nat'l Asso. v. Federal Trade Com.,*

   238 F.2d 108 (1st Cir. 1956) ............................................................................................18

*Albrecht v. Rite-Aid,*

   San Diego Superior Court Case No. 729298 ...................................................................11

*Amchem Prods, Inc. v. Windsor,*

   521 U.S. 591 (1997) ........................................................................................................21

*Armstrong v. Davis,*

   275 F.3d 849 (9th Cir. 2001) ..........................................................................................19

*Bell v. Farmers Ins. Exch.,*

   115 Cal. App. 4th 715, 726, 765 (2004) ...........................................................................8

*Birch v. Office Depot,*

   S.D. Cal. 2007, USDC, Case No. 06 CV 1690 ...............................................................11

*Brinker Restaurant Corp. v. Superior Court,*

   53 Cal.4th 1004 (2012) .......................................................................................21, 23, 28

*Ching v. Siemens Industry, Inc.,*

   2013 U.S. Dist. LEXIS 169279 (N.D. Cal. 2013) .........................................................19

*Chun-Hoon v. McKee Foods Corp.,*

   716 F.Supp.2d 848 (N.D. Cal. 2010) ..............................................................................13

*City and County of San Francisco v. Sweet,*

   12 Cal.4th 105 (1995) .......................................................................................................9

*Cook v. Niedert,*

   142 F.3d 1004, 1015 (7th Cir. 1998) ...............................................................................7

*Dilts v. Penske Logistics, LLC,*

   267 F.R.D. 625 (S.D. Cal. 2010) ...................................................................................19

*Dirienzo v. Dunbar Armored, Inc.,*

   USDC Southern District, Case No. CV-09-2745 DMS JMA .....................................11

*Domino's Pizza Overtime Cases,*

   Orange County Superior Court Case No. JCCP 4498 ..................................................11

*Doninger v. Pac. Nw. Bell, Inc.,* 564 F.2d 1304 (9th Cir. 1977...........................................18

*Dunn v. The Kroger Company, et al.,*

   Los Angeles Superior Court, Case No. BC 323252......................................................12

*Early v. Superior Court,*

   79 Cal.App.4th 1420 (2000) ...........................................................................................6

*Flannery v. California Highway Patrol,*

   61 Cal. App. 4th 629 (1998) ........................................................................................13

*Gallen v. Gambro Healthcare, Inc.,*

   Orange County Superior Court, Case No. 04 CC 00571 ..............................................12

*Gardner v. GC Services, LP.,*

   USDC Southern District, Case No. 10cv0997-IEG (CAB) .........................................12

*Gatreaux v. Pierce,*

   690 F.2d 616 (7th Cir. 1982) .......................................................................................24

*Grant v. Capital Mgmt. Servs., L.P.,*

   2013 WL 6499698 (S.D. Cal. 2013)............................................................................22

*Green, et al. v. Penske Logistics, L.L.C., et al.,*

    USDC Southern District, Case No. CV-09-0069 DMS (CAB) ....................................................11

*Hanlon v. Chrysler Corp.,*

    150 F. 3d 1011 (9th Cir. 1998) .................................................................................................passim

*In Re Consumer Privacy Cases,*

    175 Cal. App. 4th 545 (2009) ....................................................................................................11

*In re Heritage Bond Litigation,*

    2005 WL 1594403 (C.D. Cal. June 10, 2005) .........................................................................23

*In re Portal Software, Inc. Securities Litigation,*

    2007 U.S. Dist. LEXIS 88886 *1 (N.D. Cal. 2007) ................................................................13

*In re Surebeam Corp. Secs. Litig.,*

    2004 WL 5159061 (S.D. Cal. 2004) .........................................................................................20

*Joel A. v. Giuliani,*

    218 F.3d 132 (2d Cir. 2000)......................................................................................................23

*Jones v. Casual Male Retail Group, Inc.,*

    San Diego Superior Court, Case No. 37-2009-00089721........................................................12

*Ketchum v. Moses,*

    Cal.4th 1122 (2001) ..................................................................................................................12

*Koehl v. Verio, Inc.*

    142 Cal.App.4th 1313 (2006) .....................................................................................................7

*Konica Minolta Wage Cases,*

    Orange County Superior Court Case No. J.C.C.P. 4527 ..........................................................11

*Lazarin v. Pro Unlimited, Inc.*,

    2013 WL 3541217 (N.D. Cal. 2013) ....................................................................................22

*Lealao v. Beneficial California, Inc.*,

    82 Cal. App. 4th 19 (2000) ..................................................................................................9

*Leyva v. Medline Indus.*,

    716 F.3d 510 (9th Cir. 2013) .............................................................................................21

*Marlo v. UPS*, Case No. CV 03-04336 DDP (RZx),

    2009 U.S. Dist. LEXIS 41948 *22 (C.D. Cal. May 9, 2009) ...........................................26

*Mayville, et al. v. Kor Hotel Group, L.L.C., et al.*,

    USDC Central District, Case No.CV-04-8461 ABC (RCx) ............................................11

*Melong v. Micronesian Claims Com.*,

    643 F.2d 10, 15 (D.C. Cir. 1980) ........................................................................................3

*Nat'l Rural Telecommunication Cooperative v. Directv, Inc.*,

    221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................................24

*New York Gaslight Club, Inc. v. Carey*,

    447 U.S. 54 (1980) .............................................................................................................13

*PLCM Group, Inc. v. Drexler*,

    22 Cal.4th 1084 (2000 ................................................................................................12, 13

*Quinn v. State of California*,

    15 Cal.3d 162, 167 (1995) ...................................................................................................9

*Roberts v. Texaco*,

    979 F.Supp. 185 (S.D.N.Y. 1997) .......................................................................................7

*Rodriguez v. Hayes*,

viii

591 F.3d 1105 (9th Cir. 2010) ........................................................................................... 19

*Rodriguez v. West Publishing Corp.*,

563 F.3d 948 (9th Cir. 2009) ............................................................................................ 25

*Serrano v. Priest*,

20 Cal.3d 25 (1977) .................................................................................................... 9, 12

*Serrano v. Priest*,

32 Cal.3d 621 (1982) ...................................................................................................... 14

*Staton v. Boeing*,

327 F.3d 938 (9th Cir. 2003) ............................................................................................ 7

*Telecomm. Corp. v. DirectTV*,

 221 F.R.D. 523, 527 (C.D. Cal. 2004) ......................................................................... 29

*Thayer v. Wells Fargo Bank*,

92 Cal. App. 4th 819 (2001) ........................................................................................... 12

Thornton v. East Texas Motor Freight,

497 F.2d 416, 420 (6th Cir. 1974) ................................................................................... 7

*United Steel, Paper & Forestry, Rubber, Mfg. Energy v. Conoco Phillips Co.*,

593 F.3d 802 (9th Cir. 2010) .......................................................................................... 18

*Vanwagoner v. Siemens Industry, Inc.*,

 2014 U.S. Dist. LEXIS 67141 (N.D. Cal. 2014) ........................................................... 19

Vincent v. Hughes Air West, Inc.

(9th Cir. 1977) 557 F.2d 759, 769 .................................................................................... 9

*Watson v. Raytheon Company*,

USDC Southern District, Case No. CV-10-cv-00634 LAB RBB ................................. 11

Plaintiff's Renewed Motion for Preliminary Approval of Class Action Settlement          Case No. 3:16-cv-05183-JST

*Whiteway v. Fedex Kinkos Office & Print Services, Inc.,*

   2007 U.S. Dist. LEXIS 95398 (N.D. Cal. 2007) ...................................................................7

*Wilcox v Albertsons,*

   San Diego Superior Court Case No. GIC833922 ...................................................................11

**STATUTES**

Fed. R. Civ. P. 23(a) ...............................................................................................................19, 21

Fed. R. Civ. P. 23(a)(1)...................................................................................................................18

Fed. R. Civ. P. 23(a)(4)...................................................................................................................20

Fed. R. Civ. P. 23(b) .......................................................................................................................18

Fed. R. Civ. P. 23(b)(3)............................................................................................................21, 22

Fed. R. Civ. P. 23(c)(2)...................................................................................................................29

Fed. R. Civ. P. 23 (e) ......................................................................................................................23

Fed. R. Civ. P. 23 (g) ......................................................................................................................22

**OTHER AUTHORITIES**

*Manual for Complex Litigation*, Fourth, § 22.661 at 438 (2004) ..............................................23, 24

Plaintiff's Renewed Motion for Preliminary Approval of Class Action Settlement            Case No. 3:16-cv-05183-JST

1    **I. INTRODUCTION**

2       Plaintiff RICHARD TERRY (hereinafter referred to as "Plaintiff" or "Mr. Terry"), a

3 former driver for Defendant HOOVESTOL, INC. (hereinafter referred to as "Hoovestol" or

4 "Defendant"), alleges that Hoovestol failed to: (1) pay drivers for all time worked; (2) provide

5 drivers with lawful meal and rest breaks; (3) timely pay wages to drivers whose employment had

6 terminated; and (4) provide accurate itemized wage statements in violation of California law.

7 Through this motion, Plaintiff seeks preliminary approval of the Parties' Joint Stipulation and

8 Settlement Agreement (hereinafter referred to as "Agreement" or "Settlement Agreement").[1]

9       If approved by the Court, the settlement would create a **non-reversionary** Gross

10 Settlement Amount of $100,000 for approximately thirty-nine (39) drivers. The proposed

11 settlement class is comprised of all persons who are or have been employed by Hoovestol in the

12 State of California as hourly truck drivers at any time between July 20, 2012, to the date the Court

13 issues an order granting preliminary approval of the settlement and who did not execute an

14 individual release of the claims (referred to as the "Class"). The settlement is projected to pay each

15 class member an average of $1,269,[2] and each class member who worked for the entire class period

16 approximately $2,692.56.[3] These amounts will be less employee/employer taxes for the settlement

17 shares devoted to wages.

18       The proposed settlement was reached after considerable investigation into Hoovestol's pay

19 structures and policies, significant litigation – including the full briefing of Plaintiff's class

20 certification motion, an all-day mediation, and considerable settlement negotiations after

21 mediation. The settlement is reflective of the strengths and vulnerabilities of Plaintiff's case, the

22 risk of the Court not granting certification, and the risks of losing on the merits to Hoovestol's

23 affirmative defenses. When taking this into account, the proposed settlement is in the best interests

24 of the Class. It is therefore respectfully requested that the Court grant preliminary approval of the

25

26 [1] This Agreement is attached as Exhibit 1 to the Declaration of William Turley filed concurrently herewith.
[2] As will be discussed below, the Net Settlement Amount is $49,500. $49,500 divided by 39 Class Members =

27 $1,269.23.
[3] There are approximately 312 weeks between July 20, 2012 and July 19, 2018, the preliminary approval hearing date.
Therefore, if an individual worked this entire period, they would receive approximately $2,692.56 pursuant to the
28 Agreement.

1  settlement, approve of the Notice of Class Action Settlement,[4] appoint ILYM Group, Inc. as the

2  settlement administrator, and schedule a final approval hearing.

3  **II.  FACTUAL AND PROCEDURAL BACKGROUND**

4          This case involves wage and hour claims against Hoovestol. Hoovestol is a mail contract

5  carrier, meaning that it hauls bulk mail for the United States Postal Service. In doing so, Hoovestol

6  operates two (2) locations in California, one in Montebello and one in Los Angeles. To carry out

7  its business, Hoovestol employs drivers in California.

8          On July 20, 2016, Plaintiff filed a complaint in the Alameda County Superior Court, which

9  was designated with case number RG16823879. Plaintiff's complaint alleged causes of action for:

10  failure to pay all straight time wages; failure to pay overtime; failure to provide meal periods;

11  failure to authorize and permit rest periods; knowing and intentional failure to comply with

12  itemized employee wage statement provisions; failure to pay all wages due at the time of

13  termination of employment; and violation of Unfair Competition Law.

14          On September 8, 2016, Hoovestol filed a notice of removal to this Court pursuant to 28

15  U.S.C. §§ 1332, 1441. Hoovestol's Notice of Removal states that removal is proper under the Class

16  Action Fairness Act of 2005 (CAFA). Therefore, pursuant to 28 U.S.C. § 1712, Hoovestol is

17  required to give notice of the proposed settlement to the appropriate State official of each State in

18  which a class member resides and the appropriate Federal office within ten (10) days after the

19  proposed settlement is filed in court. 28 U.S.C. § 1712(b). If Defendant has not already given such

20  notice, this notice must be given no later than June 24, 2018. Pursuant to the Parties' Agreement,

21  Hoovestol will provide the Court with a declaration that this was completed within five (5)

22  business days of providing such notice.

23          On February 2, 2018, Plaintiff filed his motion for class certification and supporting

24  documents. Hoovestol opposed this motion on March 2, 2018. Plaintiff filed a reply in support of

25  his motion on March 16, 2018. Thereafter, the Court asked for supplemental briefing. Plaintiff

26  filed his supplemental opening brief on March 30, 2018. Defendant filed an opposition to this

27

28

[4] The Notice of Class Action Settlement is attached to the Settlement Agreement as Exhibit A.

2

1    supplemental brief on April 6, 2018 and Plaintiff filed a reply on April 13, 2018.

2              a.  **Investigation**

3          Discovery and litigation in the matter were extensive. After filing, both Parties conducted

4    written discovery and multiple depositions took place. In total, Plaintiff propounded two sets of

5    special interrogatories on Hoovestol and two sets of requests for production of documents.

6    Hoovestol propounded two sets of requests for production of documents on Plaintiff. Both Parties

7    responded to this discovery. Declaration of William Turley, Esq., in Support of Plaintiff's Motion

8    for Preliminary Approval ("Turley Decl.") ¶ 20.

9          Plaintiff's written discovery requests led to Hoovestol producing hundreds of pages of

10   documents including, but not limited to, Plaintiff's personnel file, paycheck stubs, time records,

11   employee handbook, driver logs, and wage information. Plaintiff also performed an investigation

12   into Hoovestol's policies and practices. Plaintiff interviewed numerous class members about their

13   experiences driving for Hoovestol. Further, Plaintiff obtained the contracts between Hoovestol and

14   the United States Postal Service. Turley Decl. ¶ 21.

15         Multiple depositions took place during the course of litigation. On October 4, 2017,

16   Plaintiff took the deposition of Hoovestol's Federal Rule of Civil Procedure 30(b)(6) witness, Ms.

17   Lynda Kuhn, who is Hoovestol's Senior Director of Safety. Hoovestol took the deposition of

18   Plaintiff on October 6, 2017 and the deposition of Plaintiff's class certification related expert on

19   January 18, 2018. Turley Decl. ¶ 22.

20         In evaluating the potential settlement, Plaintiff reviewed the individual release of claims

21   signed by approximately three hundred and thirty-eight (338) of the Hoovestol's drivers. As

22   Plaintiff did not sign an individual release of claims, he does not have standing to object to the

23   validity of these releases.[5] Therefore, this settlement only encompasses those drivers that did not

24   execute individual releases of claims. Turley Decl. ¶ 23.

25   ---
     [5] In addition, other districts have found that because a plaintiff did not sign a release he cannot represent, in a class
26   action, individuals who did sign releases. *See Melong v. Micronesian Claims Com.*, 643 F.2d 10, 15 (D.C. Cir. 1980)
     ("When the purported class representative has not executed a release and need not establish that the release is defective
27   in his individual case, serious questions are raised concerning the typicality of the class representative's claims and
     the adequacy of his representation of other class members."). It is uncertain whether the Court would agree with these
28   cases. As it is unclear whether Plaintiff is an adequate and typical representative for the individuals who signed
     releases, they are not included in this settlement.

b.  **Settlement Negotiations**

On October 12, 2017, the Parties engaged in a lengthy private mediation with respected wage and hour mediator, Mark Rudy. This mediation was unsuccessful. After mediation, the Parties continued negotiations. After considerable additional settlement discussions and the filing of Plaintiff's motion for class certification, the Parties agreed on the key terms of the settlement. The Parties met and conferred regarding all the terms of the settlement and finalized their agreement in a long-form agreement as reflected in the Parties' Settlement Agreement. The Parties seek preliminary approval of their Settlement Agreement in the instant motion. Turley Decl. ¶ 24, Exhibit 1.

**III. SUMMARY OF SETTLEMENT**

The principal terms of the Agreement are as follows:[6]

a.  **The Proposed Class**

The Class is comprised of:

> All persons who are or have been employed by Defendant in the State of California as hourly truck drivers at any time between July 20, 2012, to the date the Court issues an order granting preliminary approval of the settlement and who did not execute an individual release of the claims.

There are approximately thirty-nine (39) individuals who make up Class.

Plaintiff's complaint was filed on behalf of a class consisting of:

> All persons who are employed or have been employed by Defendants in the State of California as hourly, Non-Exempt truck workers, industrial truck workers, industrial truck drivers, industrial vehicle drivers, industrial workers, and/or other similar job designations and titles during the period of the relevant statute of limitations.

*See* Plaintiff's Complaint [Dkt. #1-1, Exhibit A-3] at ¶ 41.

The only difference in the proposed class as stated in Plaintiff's complaint and the Parties' Agreement is the number of class members included in the Class. During the course of litigation, Hoovestol obtained individual releases of claims from three hundred and thirty-eight (338) individuals who would have been included in the Class. Because these individuals released their

---

[6] The terms of the settlement are set forth in the Agreement attached as Exhibit 1 to the Declaration of William Turley, Esq., in Support of Plaintiff's Motion for Preliminary Approval.

1   claims against Hoovestol, they are not included in the Parties' settlement.

2              **b.  Settlement Terms**

3           Under the Agreement, Hoovestol shall pay $100,000 (referred to as the "Gross Settlement

4   Amount"). This Gross Settlement Amount includes payments made to Participating Class

5   Members, [7] settlement administration costs, awards of attorneys' fees and costs, the class

6   representative general release payment to Plaintiff, and employer/employee payroll taxes on the

7   portion of the settlement payments to Participating Class Members deemed as wages. The Gross

8   Settlement Amount is allocated as follows:

9              **i.  Class Representative General Release Payment**

10          Subject to Court approval, Plaintiff shall be paid a payment not to exceed $2,500 in

11   consideration for a general release of all his claims against Hoovestol relating to his employment

12   with Defendant. The payment shall be paid from the Gross Settlement Amount. If the amount

13   awarded is less than the amount requested, the difference shall become part of the Net Settlement

14   Amount and be available for distribution to Participating Class Members.

15          The $2,500 payment is consideration for a general release of Plaintiff's claims against

16   Hoovestol. The Settlement Agreement includes the following provision regarding this release:

17   
18   
19   
20   
21   
22   
23   
24   
25   
26   
27   

> **Plaintiff's Release of Claims and General Release.** As of the Effective Final
> Settlement Date, and in exchange for the Class Representative General Release
> Payment to the named Plaintiff in an amount not to exceed $2,500.00 (Two
> Thousand Five Hundred Dollars and No Cents), Plaintiff shall give the following
> general release of claims for himself and his respective spouse, heirs, successors
> and assigns, forever release the Released Parties from any and all charges,
> complaints, claims, liabilities, obligations, promises, agreements, controversies,
> damages, actions, causes of action, suits, rights, demands, costs, losses, debts,
> penalties and expenses of any nature whatsoever relating to his employment with
> Defendant, from the beginning of his employment with Defendant through the date
> of his signature on this Agreement, known or unknown, suspected or unsuspected,
> whether in tort, contract, equity, or otherwise, for violation of any federal, state or
> local statute, rule, ordinance or regulation, including but not limited to all claims
> arising out of, based upon, or relating to his employment with Defendant or the
> remuneration for, or termination of, such employment. Plaintiff's Release of
> Claims also includes a waiver of California Civil Code section 1542 as to the claims
> just described, which provides as follows:

28   

[7] All Class Members who do not submit a valid and timely request to exclude themselves from this Settlement.

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

This release excludes any release of any claims not permitted to be released by law. Exhibit 1 attached to the Turley Decl. ¶ III(K).

With regard to the general release for the named Plaintiff, as noted above, Plaintiff is being separately compensated for this release. In fact, the $2,500 payment to Plaintiff is titled the "Class Representative General Release Payment" in the Parties' Settlement Agreement. *See* Exhibit 1 attached to the Turley Decl. ¶ L. This payment is defined in the Settlement Agreement as "[t]he amount the Court awards to Plaintiff Richard Terry for his execution of a broader general release of claims against Defendant than Participating Class Members, which will not exceed Two Thousand Five Hundred Dollars ($2,500)." *Id.* The Settlement Agreement also provides that this payment "is being offered in consideration for the Plaintiff executing a general release against Defendant, a release that is broader than any Participating Class Member will provide in consideration for a settlement share." *Id.*

There are also additional factors that support Plaintiff receiving this additional $2,500 payment. For example, as representative for the absent class members, Plaintiff risked a potential judgment taken against him for attorneys' fees and costs if this matter had not been successfully concluded. Case law holds that a losing party is liable for the prevailing party's costs, *Early v. Superior Court*, 79 Cal.App.4th 1420, 1433 (2000), and in some wage and hour actions, such as this case, pursuant to *California Labor Code* § 218.5, for attorneys' fees as well. Though the fee agreement provides that Class Counsel would pay such costs, Plaintiff would nevertheless have had a cost bill entered against him leaving him ultimately liable for potentially hundreds of thousands of dollars in the unexpected possibility that Class Counsel did not meet their obligation to cover those costs. Unfortunately, there have been judgments entered against class representatives.[8] The risk of payment of Hoovestol's costs, alone, is a sufficient basis for an award

[8] *See*, e.g. *Koehl v. Verio, Inc.*, 142 Cal.App.4th 1313, 1328 (2006) (a wage and hour class action where Defendant

1    of the requested service award. Few individuals are willing to take this risk, and the Class

2    Representative championed a cause on behalf of others with potentially huge monetary risks.

3            Courts have regularly and routinely granted approval of settlements containing such

4    enhancements. *See*, e.g., *Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003). The typical

5    enhancement award in wage and hour cases ranges from $5,000 to $75,000, although some awards

6    may be higher. Very commonly there is more than one class representative who receive awards in

7    the above range.[9]

8            Additionally, the modern-day work force is mobile, with employees holding several jobs

9    over the span of their career. It is also true that prospective employers in this computer, high-tech

10   age "Google" and/or do extensive background checks and have access to court databases to see if

11   applicants have ever filed a lawsuit or have ever been sued. Here, Plaintiff cost his former employer

12   a substantial sum of money by his courage to step forward to vindicate not only his own rights but

13   also, those of the similarly situated individuals, all of whom will now receive payments due to the

14   initiation of this action. Such conduct will not be lost on a prospective employer who has to choose

15   between an applicant who has never sued an employer and one who has done so. The requested

16   award far from compensates Plaintiff for opportunities he may lose in the future because of the

17   exercise of a Constitutional right to Petition the Courts for redress of a grievance.

18                    **ii.   Attorneys' Fees and Costs**

19           Subject to Court approval, Plaintiff's Counsel shall request an award of attorneys' fees in

20   an amount of $25,000 (25% of the Gross Settlement Amount). This includes work remaining in

21   documenting the settlement, securing Court approval, ensuring the settlement is fairly

22   administered, and obtaining dismissal of the action. Also, subject to Court approval, Plaintiff's

23

24   prevailed at trial, the named Plaintiffs were held liable, jointly and severally for the Defendant's attorneys' fees);
     *Whiteway v. Fedex Kinkos Office & Print Services, Inc.,* No. 05-2320, 2007 U.S. Dist. LEXIS 95398 (N.D. Cal. Dec

25   17, 2007) (a wage and hour misclassification case lost on summary judgment, after the case was certified, the named
     Plaintiff was assessed costs in the sum of $56,788.).

26   [9] *See*, e.g., *Cook v. Niedert*, 142 F.3d 1004, 1015 (7th Cir. 1998); *Roberts v. Texaco*, 979 F. Supp. 185 (S.D.N.Y.
     1997) ("present or past employee whose present position or employment credentials or recommendation may be at

27   risk by reason of having prosecuted the suit, who therefore lends his or her name and efforts to the prosecution of
     litigation at some personal peril, a substantial enhancement award is justified"); *Thornton v. East Texas Motor Freight*,

28   497 F.2d 416, 420 (6th Cir. 1974) ("We also think there is something to be said for rewarding those drivers who
     protect and help to bring rights to a group of employees who have been the victims of discrimination.").

Counsel shall request a reimbursement from the Gross Settlement Amount for actual litigation costs in an amount not to exceed $20,000.[10] If the amount awarded is less than the amount requested, the difference shall become part of the Net Settlement Amount and be available for distribution to Participating Class Members.

Per the Northern District of California's Procedural Guidelines for Class Action Settlements, number six (6), "the parties are encouraged to include information about the awards they intend to request, including information about the relationship between the amount of the award and the amount of common fund and counsel's lodestar calculation." Therefore, Plaintiff addresses the attorney fee award he anticipates requesting at final approval and its relationship to the common fund and lodestar calculation.

### 1. The Attorneys' Fee Request is Reasonable Under the "Common Fund/Percentage" Analysis

Both California and federal courts have recognized that an appropriate method for awarding attorney's fees in class actions is to award a percentage of the "common fund" created as a result of the settlement. *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 726, 765 (2004).[11]

### a. The Common Fund Doctrine

The purpose of the common fund/percentage approach is to "spread litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone." Vincent v. Hughes Air West, Inc. (9th Cir. 1977) 557 F.2d 759, 769. In *Quinn v. State of California*, the Court stated: "[O]ne who expends attorneys' fees in winning a suit which creates a fund from which others derive benefits may require those passive beneficiaries to bear a fair share of the litigation costs." *Quinn v. State of California*, 15 Cal.3d 162, 167 (1995). Similarly, in *City and County of San Francisco v. Sweet*, the California Supreme Court recognized that the common fund doctrine has been applied "consistently in California when an action brought

---

[10] These will be tabulated and presented to the Court at final approval. Plaintiff will only seek the amount of actual costs incurred during the litigation of this case. Should the actual costs exceed $20,000, Plaintiff will only seek reimbursement of costs up to $20,000.

[11] In addition, section 216(b) provides that a court shall "in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Courts in hybrid class and collective actions may utilize standards set forth for class actions. *See Millan v. Cascade Water Servs.*, No. 12-cv-01821, 2016 U.S. LEXIS 72198 *1, *28-*37 (E.D. Cal. June 2, 2016) (Analyzing attorneys' fees in hybrid class and collective action under standards set forth class actions.).

by one party creates a fund in which other persons are entitled to share." *City and County of San Francisco v. Sweet*, 12 Cal.4th 105, 110 (1995).

The reasons for applying the common fund doctrine include:

> …fairness to the successful litigant, who might otherwise receive no benefit because his recovery might be consumed by the expenses; correlative prevention of an unfair advantage to the others who are entitled to share in the fund and who should bear their share of the burden of its recovery; encouragement of the attorney for the successful litigant, who will be more willing to undertake and diligently prosecute proper litigation for the protection or recovery of the fund if he is assured that he will be properly and directly compensated should his efforts be successful. *Id.*

The common fund approach continues to be a preferred method of awarding fees. Since *Serrano v. Priest*, 20 Cal.3d 25, 48 (1977) ("*Serrano III*"), there has been a "ground swell of support for mandating the percentage-of-the-fund approach in common fund cases." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 27 (2000). *Lealao* discusses at length the judicial perception of the lodestar method as unfair and arbitrary for fostering collusively low settlements for a high fee award and for placing the trial court in the unfavorable position of determining reasonable hours and billing rates. *Id.* at 29-30.

Class Counsel has undertaken representation at their own expense, with compensation contingent on providing a benefit to the class. Participating Class Members will benefit by the terms of the settlement. Because there is a defined and clearly traceable monetary benefit to the class, the Court can base an award of attorneys' fees on the class members' benefit, using a common fund approach. Class Counsel's request for 25% of the common fund is fair compensation for obtaining a favorable result for the Class Members and, in doing so, undertaking complex, risky, expensive, and time-consuming litigation purely on a contingent basis.

### b. The Percentage Requested is Reasonable

The fees here were wholly contingent, and the case presented far more risk that the usual contingent fee case. There was the prospect of the enormous cost inherent in class action litigation, as well as a long battle with Defendant who had retained experienced, reputable legal counsel. That prospect has previously become reality, in both trial courts and the Court of Appeals, and in other wage and hour class litigation. Class Counsel risked not only a great deal of time, but also a

9

1   great deal of expense, to ensure the successful litigation of this action on behalf of all Class

2   Members.

3         There is no general rule on what is a reasonable percentage of a common fund:

4         No general rule can be articulated on what is a reasonable percentage of a

5         common fund. Usually 50% of the fund is the upper limit on a reasonable fee
      award from a common fund in order to assure that the fees do not consume a

6         disproportionate part of the recovery obtained for the Class, although somewhat
      larger percentages are not unprecedented. Newberg on Class Actions, 3rd Ed.,

7         1992, §14.03.

8         Regarding percentage fee awards, Newberg states: "[A]chievement of a substantial

9   recovery with modest hours expended should not be penalized but should be rewarded for

10   considerations of time saved by superior services performed." *Id.* at § 14.01.

11         **c.   The Fee Requested is Within the Range of Fees
          Approved in Comparable Cases**

12         The requested fee of $50,000 is 25% of the GSA and is in line with the federal

13   "benchmark," which California has endorsed. *In Re Consumer Privacy Cases*, 175 Cal. App. 4th

14   545, 556 (2009). A review of class action settlements over the past ten (10) years shows that courts

15   have historically awarded fees in the range of 20% to 50%, depending on the circumstances of the

16   case.[12] California Superior and District Court judges have adopted the percentage method for

---

[12] For example:
    (1)    *Birch v. Office Depot*, S.D. Cal. 2007, USDC, Case No. 06 CV 1690 (Hon. Dana M. Sabraw--
awarding attorney's fees of 40% of $16,000,000 settlement in pre-certification meal/rest period class action);
    (2)    *Watson v. Raytheon Company*, USDC Southern District, Case No. CV-10-cv-00634 LAB RBB
(Hon. Larry B. Burns – awarding attorneys' fees of $666,666.67, 33-1/3% of a $2,000,000 settlement in a certified
misclassification class action);
    (3)    *Dirienzo v. Dunbar Armored, Inc*., USDC Southern District, Case No. CV-09-2745 DMS JMA,
(Hon. Dana M. Sabraw – awarding attorneys' fees of $500,000, 33-1/3% of $1,500,000 settlement in a pre-
certification expense reimbursement, rest and meal period class action);
    (4)    *Mayville, et al. v. Kor Hotel Group, L.L.C., et al.*, USDC Central District, Case No.CV-04-8461
ABC (RCx) (Hon. Audrey B. Collins -- awarding attorneys' fees of $480,000, 30% of $1,600,000 settlement in pre-
certification meal and rest period class action);
    (5)    *Albrecht v. Rite-Aid*, San Diego Superior Court Case No. 729298 (Hon. J. Richard Haden --
awarding attorney's fees of 33% of $25,000,000 settlement in certified overtime class action);
    (6)    *Domino's Pizza Overtime Cases,* Orange County Superior Court Case No. JCCP 4498 (Hon. Gail
A. Andler -- awarding attorneys' fees of $1,500,000, 30% of $5,000,000 settlement in pre-certification meal and rest
period class action);
    (7)    *Wilcox v Albertsons*, San Diego Superior Court Case No. GIC833922 (Hon. Linda B. Quinn --
awarding attorneys' fees of 33% of $22,500,000 settlement in certified rest and meal class action);
    (8)    *Konica Minolta Wage Cases*, Orange County Superior Court Case No. J.C.C.P. 4527 (Hon. David
C. Velasquez—awarding attorneys' fees of 33% of $6,000,000 settlement in pre-certification expense reimbursement
class action);

1   determining fee awards in the range of that requested by Class Counsel herein or even larger. As

2   the fee requested here is less than the fees customarily awarded in California under the common

3   fund doctrine, it is respectfully requested the Court grant this request at final approval. The

4   reasonableness of the fee is further evidenced when cross-checked against the Lodestar Method.

**2.  A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee**

6        Class Counsel's fee request is also reasonable when calculated using the lodestar method.

7   Under the lodestar method, a base fee amount is calculated from a compilation of time reasonably

8   spent on the case and the reasonable hourly compensation of the attorney. *Serrano III,* 20 Cal.3d

9   *at* 48. The court then enhances this lodestar figure by a "multiplier" to account for a range of

10  factors, such as the novelty and difficulty of the case, its contingent nature, and the degree of

11  success achieved. *Id*. at 49.[13] To date, Class Counsel worked two hundred and fifty-two (252)

12  hours on this case. Applying Class Counsel's hourly rates to the total hours worked results in a

13  lodestar fee of $148,000. As Class Counsels' lodestar fee is more than the fee requested, a

14  multiplier is not sought. In fact, the requested fee results in a so-called "negative multiplier" which

15  suggests the percentage of the fund amount is reasonable and fair.[14] Turley Decl. ¶ 25.

**a.  Counsel's Hourly Rates are Reasonable**

17        Class Counsel's hourly rates are between $450 and $875 and are in line with rates approved

18

19        (9)      *Green, et al. v. Penske Logistics, L.L.C., et al.,* USDC Southern District, Case No. CV-09-0069 DMS (CAB) (Hon. Dana M. Sabraw – awarding attorneys' fees of 33% of a $500,000 settlement in a pre-certification vacation policy class action);

20        (10)     *Gardner v. GC Services, LP*., USDC Southern District, Case No. 10cv0997-IEG (CAB) – (Chief Justice Irma E. Gonzalez – awarding attorneys' fees of 30% of a $975,000 settlement in a pre-certification failure to pay straight and overtime wages class action);

21        (11)     *Gallen v. Gambro Healthcare, Inc.*, Orange County Superior Court, Case No. 04 CC 00571 (Hon. Nancy Wieben Stock – approving award of attorneys' fees 30% of a$17,500,000 settlement in a pre-certification overtime wages class action);

22        (12)     *Dunn v. The Kroger Company, et al*., Los Angeles Superior Court, Case No. BC 323252 (Hon. Elihu M. Berle – approving attorneys' fees of 30% of a $19,500,000 in a pre-certification meal and rest break class action); and

23        (13)     *Jones v. Casual Male Retail Group, Inc.,* San Diego Superior Court, Case No. 37-2009-00089721 (Hon. Kevin A. Enright – approving attorneys' fees of 33% of a $299,500 in a pre-certification misclassification class action).

26  [13] *See also Ketchum v. Moses*, Cal.4th 1122, 1132-36 (2001); *PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084 (2000); *Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819, 834 (2001), ("[t]here is no … rule limiting the factors that may justify an exercise of judicial discretion to [adjust the] lodestar").

28  [14] *See Chun-Hoon v. McKee Foods Corp*., 716 F.Supp.2d 848, 854 (N.D. Cal. 2010); *In re Portal Software, Inc. Securities Litigation*, No. 03-5138, 2007 U.S. Dist. LEXIS 88886 *1, *16 (N.D. Cal. Nov. 26, 2007).

11

for wage and hour class action attorneys in this jurisdiction. A reasonable hourly rate is the prevailing rate charged by attorneys of similar skill and experience in the relevant community. *PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1095 (2000). When determining a reasonable hourly rate, courts may consider factors such as the attorney's skill and experience, the nature of the work performed, the relevant area of expertise, and the attorney's customary billing rates. *Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629, 632 (1998). Class Counsel's skill and experience support their hourly rates. Furthermore, other wage and hour attorneys working as class counsel before California courts charge comparable, if not higher, rates. *See* **Exhibit 2** to Turley Decl. (copy of Westlaw Court Express's Legal Billing Report, Volume 14, Number 3, California Region for December 2012 and 2012 National Law Journal survey of hourly billing rates for Partners and Associates); **Exhibit 3** to the Turley Decl. (2014 Declaration of Richard Pearl in *Hohnbaum et al. v. Brinker Restaurant Corp et al*, SDSC Case No. GIC834348).

**b. Counsel's Total Hours are Reasonable**

In determining a lodestar, reasonable hours include, in addition to time spent during litigation, the time spent before the action is filed, including time spent interviewing the clients, investigating the facts and the law, and preparing the initial pleadings. *See New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 62 (1980). Further, the fee award should include fees incurred to establish and defend the attorneys' fee claim. *Serrano v. Priest*, 32 Cal.3d 621, 639 (1982) ("*Serrano IV*").

To date, Class Counsel has worked a total of two hundred and fifty-two (252) hours on this case. Turley Decl. ¶ 25. The work performed by Class Counsel in order to achieve a settlement that will provide valuable consideration to the Class will be detailed in Plaintiff's final approval motion.

**iii. Settlement Administration Costs**

The Parties have agreed to the appointment of ILYM Group, Inc. (referred to herein as "ILYM") as the settlement administrator. ILYM is an experienced class administration company, and has acted as claims administrator in numerous wage and hour cases. *See* Declaration of Sean Hartranft re: Qualifications of ILYM Group, Inc. as Settlement Administrator. ILYM has provided

1  an estimate that its expenses will not exceed $3,000 to administer this settlement, which falls

2  within the range of estimates counsel has received in the past for settlements of similar size and

3  circumstances. *Id*.

4       These costs are reasonable as notices will need to be both mailed and emailed to Class

5  Members. ILYM will also maintain a website which has information about the settlement and links

6  to the settlement documents. ILYM will need to keep track of any Class Members who choose to

7  exclude themselves from the settlement. Should preliminary and final approval be granted by the

8  Court, ILYM will need to work with Hoovestol to make the payment of the Gross Settlement

9  Amount. Once this payment is received, ILYM will then make the payments as provided for in the

10  Settlement Agreement.

11       The Parties have agreed that this sum will be paid out of the Gross Settlement Amount. If

12  ILYM's actual expense or the amount awarded is less than the amount estimated, the difference

13  shall become part of the Net Settlement Amount and be available for distribution to Participating

14  Class Members.

15                    **iv.   Settlement Payments to Participating Class Members**

16       Participating Class Members are class members who do not opt out of the settlement. The

17  money available for payout to these individuals comes out of the Net Settlement Amount, which

18  is what remains of the Gross Settlement Amount after subtracting the Court approved attorney fees

19  and litigation costs, representative general release payment, and administration costs. The Net

20  Settlement Amount is estimated to be $49,500.[15] **The entire Net Settlement Amount will be**

21  **distributed to Participating Class Members.**

22       Each Participating Class Member will receive a proportionate share of the Net Settlement

23  Amount that is equal to (i) the number of weeks he or she worked for Hoovestol in California

24  based on the Class Data provided by Hoovestol, divided by (ii) the total number of weeks worked

25  by all Participating Class Members based on the same Class Data, which is then multiplied by the

26  Net Settlement Amount. One day worked in a given week will be credited as a week for purposes

27

28

---

[15] $100,000 - $2,500 (Representative General Release Payment) - $25,000 (Attorney Fee Award) - $20,000 (Cost Award) - $3,000 (Administration Costs) = $49,500

1  of this calculation. Therefore, the value of each Participating Class Member's Individual

2  Settlement Share ties directly to the amount of weeks that he or she worked. Sixty percent (60%)

3  of each Individual Settlement Share is intended to settle claims for unpaid wages and forty percent

4  (40%) of each Individual Settlement Share is intended to settle claims for interest and penalties.

5                          **v.   <u>Uncashed Checks</u>**

6         Pursuant to the Agreement, Participating Class Members must cash or deposit their

7  Individual Settlement Payment checks within one hundred and eighty (180) days after the checks

8  are mailed to them. Any checks issued to Settlement Class Members shall remain valid and

9  negotiable for one hundred and eighty (180) days from the date of their issuance.

10        If any checks are not redeemed or deposited within ninety (90) days after mailing, the

11 Settlement Administrator will send a reminder postcard indicating that unless the check is

12 redeemed or deposited in the next ninety (90) days, it will expire and become non-negotiable, and

13 offer to replace the check if it was lost or misplaced. This will allow Settlement Class Members to

14 obtain a new settlement check if they lost or misplaced the original check and will help ensure

15 Settlement Class Members receive the funds they are entitled to under the settlement. If any checks

16 remain uncashed or not deposited by the expiration of the 90-day period after the Settlement

17 Administrator mails the reminder notice, the checks shall be deemed void and of no further force

18 and effect. The Parties feel that this reminder postcard is appropriate instead of a second

19 distribution as Class Members may try to cash both checks they receive – from the first and second

20 distributions – thinking that they were entitled to both. The reminder postcard prompts Class

21 Members to cash their checks and allows them to obtain a new check if the original check issued

22 was lost or misplaced.

23        The funds corresponding to voided checks will be distributed to a *cy pres* recipient. The *cy*

24 *pres* recipient shall be The United Way, a non-profit organization that supports projects that benefit

25 employees and applicants throughout the State of California, including, for example, the Bay Area

26 Matchbridge Program, that provides training, support, and guidance for job-seekers entering the

27 workforce in the Bay Area. The United Way meets the mandates of federal common law governing

28

1   *cy pres* because it is an organization that supports (1) the objectives of the underlying statutes; and

2   (2) the interests of the silent class members; and it is not too far removed from the plaintiff class.

3   The United Way of California is an umbrella organization, supporting multiple local United Ways

4   throughout the state that all serve the public by working towards financial stability of the citizens

5   they support.  Many of these local United Ways have specific programs aimed at promoting steady,

6   gainful employment of Californians, something that meets the objectives of a lawsuit brought with

7   the aim of enforcing employee rights, and supports silent class members through the variety of

8   programs offered.  For example, the United Way Bay Area, the local program covering the location

9   in which Named Plaintiff worked, has programs such as "SparkPoint," which operates counseling

10  centers throughout the Bay Area that offer job coaching and training, career development, and

11  business development, providing Northern Californians with the skills needed to find and maintain

12  a lifelong career. The United Way Bay Area also offers programs like "Mayors Youth Jobs+",

13  which helps young adults find employment through internships, apprenticeships, trainings and

14  other opportunities to allow future members of the workforce to obtain employment and post-

15  secondary opportunities. Beyond just programs like these that support job seekers and employees

16  in the Bay Area, the United Way also advocates at the policy level for an increase to the State

17  minimum wage, something implicated explicitly in this lawsuit, and is in the interest of the plaintiff

18  class.

19                          **vi.   <u>Distribution of Funds</u>**

20          Subject to the Court finally approving the settlement, and provided that there are no

21  objections or appeals to the Court's Final Approval Order and Judgment, the Gross Settlement

22  Amount shall be paid by Hoovestol three (3) business days after the Effective Final Settlement

23  Date.[16] Seven (7) days after the Effective Final Settlement Date, the Settlement Administrator shall

24  disburse (1) the Net Settlement Amount to be paid to Participating Class Members; (2) Attorney

25  Fee Award and Cost Award to Class Counsel for attorneys' fees and costs, as approved by the

26

27  ───────────────────────
    [16] The Effective Final Settlement Date is the date when the final approval of the settlement can no longer be appealed,
    or, if there are no objectors and no plaintiffs in intervention at the time the court grants final approval of the settlement,
    the date the court enters judgment granting final approval of the settlement.

1  Court; (3) Class Representative General Release Payment paid to the Representative, as approved

2  by the Court; (4) Administration Costs, as approved by the Court; and (5) Hoovestol's portion of

3  payroll taxes as the Settlement Class Members' current or former employer.

4      **c. Release of Claims by Participating Class Members**

5    In exchange for Hoovestol's promise to make the payments provided for in the Agreement,

6  Participating Class Members will release all known and unknown state law claims that both: (1)

7  were alleged or that could have been alleged based on the facts plead in the complaints filed in the

8  matter; and (ii) concern, arise out of, relate to, or are based upon Defendant's failure to pay all

9  wages, including straight time and overtime wages; failure to provide meal and rest periods;

10  knowing and intentional failure to comply with itemized employee wage statement provisions;

11  failure to pay all wages timely, including wages due at the time of termination; and violations of

12  California's Unfair Competition Law. The release will be as to the released parties, which shall

13  include Defendant and its respective parent companies, subsidiaries, affiliates, shareholders,

14  members, agents (including, without limitation, any investment bankers, accountants, insurers,

15  reinsurers, attorneys and any past, present or future officers, directors and employees)

16  predecessors, successors, and assigns.. *See* Exhibit 1 attached to the Turley Decl. ¶ I(BB). These

17  claims were alleged in Plaintiff's complaint and are tied to the allegations contained therein.

18  **IV. THE CLASS SHOULD BE CONDITIONALLY CERTIFIED**

19    A class action may be certified under if all four prerequisites under Rule 23(a) are satisfied

20  and at least one subsection under Rule 23(b) is met. *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304

21  (9th Cir. 1977). The requirements of Rule 23(a) are referred to as: (1) numerosity, (2)

22  commonality, (3) typicality, and (4) adequacy. *United Steel, Paper & Forestry, Rubber, Mfg.*

23  *Energy v. Conoco Phillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010). As will be discussed below,

24  these requirements are met here. In addition, the Parties agree to certification of the California

25  Class under Rule 23(b)(3) which has the added requirement of "predominance." *Id.* Hoovestol

26  does not oppose certification for the purpose of settlement only. As such, the Parties seek

27  provisional certification of the Class.

### a.   Rule 23(a) Requirements are Met for the Class

#### i.   Numerosity

Rule 23(a)(1) is typically referred to as "numerosity" in that it requires a class that is "so numerous that joinder of all members is impracticable." The term "impracticable" does not mean "impossible," and only refers to "the difficulty or inconvenience of joining all members of the class." *Advertising Specialty Nat'l Asso. v. Federal Trade Com.*, 238 F.2d 108, 119 (1st Cir. 1956). Here, there are approximately thirty-nine (39) Class Members and it would not be practical to join so many parties to the lawsuit. Therefore, the numerosity requirement is satisfied.

#### ii.   Commonality

Rule 23 (a) requires that "there are questions of law or fact common to the class." However, "all questions of fact and law need not be common to satisfy the rule…[and] [t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class. *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1019 (9th Cir. 1998). The Ninth Circuit has held that commonality exists "where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). Here, common questions exist, such as whether Hoovestol's uniform policies deprived the Class of compliant meal and rest periods. Courts in the Ninth Circuit have found this sufficient to show commonality.[17]

#### iii.   Typicality

Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." This requirement is "permissive" and requires only that the representative's claims are reasonably related to those of the absent class members. *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). Plaintiff's claims and those of the putative class members are based on the same alleged course of conduct, i.e., the claim that Hoovestol does not provide compliant meal and rest periods. Plaintiff and the Class are also alleged to have suffered

---

[17] *See Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 633 (S.D. Cal. 2010); *Ching v. Siemens Industry, Inc.*, 2013 U.S. Dist. LEXIS 169279, *4 (N.D. Cal. 2013); *Vanwagoner v. Siemens Industry, Inc.*, 2014 U.S. Dist. LEXIS 67141, *11 (N.D. Cal. 2014).

similar injury, i.e., the non-payment of premiums for allegedly unprovided or non-duty-free meal and rest periods and wages for time employees were on unpaid meal periods but still subject to Hoovestol's compensable control.

### iv.   The Class Representative and His Counsel are Adequate

The proposed Class Representative and his counsel have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The adequacy requirement has two prongs, the first being "that the representative party's attorney be qualified, experienced, and generally able to conduct the litigation." *In re Surebeam Corp. Secs. Litig.*, 2004 WL 5159061, *5 (S.D. Cal. 2004). In this case, Plaintiff's Counsel, The Turley & Mara Law Firm, APLC, meet this standard and have been appointed class counsel in numerous class actions. *See* Turley Decl. ¶¶ 2-18.

The second prong of the adequacy test is "that the suit not be collusive and plaintiff's interests not be antagonistic to those of the remainder of the class." *In re Surebeam Corp. Secs. Litig.*, 2004 WL 5159061, *1-2 (S.D. Cal. 2004). Here, there is no evidence of antagonism between the Class Representative's interests and those of the Class. The Class Representative has litigated this case in good faith and the interests of the Class Representative are aligned with those of the California Class as they all share a common interest in challenging the legality of the alleged policies and procedures on which the claims are based. There is also no evidence of any collusion between the Parties. Plaintiff's counsel negotiated with Hoovestol to pay $100,000 to settle and counsel was only able to negotiate this sum after extensive exchange and analysis of information and data. These reasons compel that Plaintiff should be appointed as Class Representative. Hoovestol does not oppose the appointment of Plaintiff as Class Representative for settlement purposes. At the Final Approval Hearing, Class Counsel will request final approval of a Representative General Release Payment to compensate the Class Representative for agreeing to a general release of his claims, for his efforts in prosecuting this matter, and for the risks and stigma he now faces for doing so.

\\\

Plaintiff's Renewed Motion for Preliminary Approval of Class Action Settlement          Case No. 3:16-cv-05183-JST

1       **b.  The Rule 23(b) Standards Are Satisfied**

2            **i.  Common Issues Predominate**

3            In addition to the Rule 23(a) requirements, a court must find that common issues of law or

4       fact "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

5       With regard to the requirements of subsection (b), Rule 23(b)(3) allows class certification where

6       common questions of law and fact predominate over individual questions and class treatment is

7       superior to individual litigation. The predominance inquiry "tests whether proposed classes are

8       sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*,

9       521 U.S. 591 (1997). To determine whether common questions predominate, a court is to consider

10      "the relationship between the common and individual issues." The proposed Class in this case is

11      sufficiently cohesive to warrant adjudication by representation. Furthermore, because the

12      "predominance" factor concerns liability, any variation in damages is insufficient to defeat class

13      certification. *Leyva v. Medline Indus.*, 716 F.3d 510, 514 (9th Cir. 2013). Plaintiff contends all

14      claims in this litigation are based on allegedly common, class-wide policies and procedures, and

15      that liability could be determined on a class-wide basis. *Brinker Restaurant Corp. v. Superior*

16      *Court*, 53 Cal.4th 1004, 1033 (2012). As noted above, the major issues of whether Hoovestol

17      provided timely and duty-free meal and rest periods to Plaintiff and the Class stem from what

18      Plaintiff claims are uniform policies.

19           **ii.  The Class Action Device Is Superior**

20           The class action device is "superior to other available methods for the fair and efficient

21      adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Certification of the Class will allow

22      class members' claims to be fairly, adequately, and efficiently resolved to a degree that no other

23      mechanism would provide. Alternative methods of resolution would be individual claims for

24      relatively small amount of damages. *Hanlon*, 150 F. 3d at 1019-20. These claims "would prove

25      uneconomic for potential plaintiffs' because 'litigation costs would dwarf potential recovery.'" *Id.*

26      at 1023.

27      \\\

### iii.   No Manageability Issues Preclude Certification

Finally, no issues of manageability preclude certification. A court faced with a request for a settlement-only class need not inquire whether the case would present intractable problems of trial management, even though other requirements under Rule 23 must still be satisfied. *See, e.g., Lazarin v. Pro Unlimited, Inc.*, 2013 WL 3541217, *5 (N.D. Cal. 2013). Nevertheless, as discussed herein, the proposed plan of distribution and settlement process are efficient and manageable.

### c.   Plaintiff's Counsel Should be Appointed as "Class Counsel"

Rule 23 (g) requires that courts consider the following four factors when appointing settlement class counsel: (1) whether counsel has investigated the class claims; (2) whether counsel is experienced in handling class actions and complex litigation; (3) whether counsel is knowledgeable regarding the applicable law; and (4) whether counsel will commit adequate resources to representing the class. *See Grant v. Capital Mgmt. Servs., L.P.*, 2013 WL 6499698, *2-3 (S.D. Cal. 2013). It is clear from the record presented herein that Plaintiff's Counsel should be appointed Class Counsel. Plaintiff's Counsel is highly experienced and knowledgeable regarding complex wage and hour class actions like this one. Turley Decl. ¶¶ 2-18. Indeed, Plaintiff's counsel The Turley & Mara Law Firm, APLC, was class counsel in *Hohnbaum et al. v. Brinker Restaurant Corp et al.*, which is the subject case in the landmark decision of *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004 (2012). *Id.* at ¶ 13. Plaintiff's counsel The Turley & Mara Law Firm, APLC, have prosecuted numerous cases on behalf of employees for California Labor Code violations and thus are experienced and qualified to evaluate the class claims and to evaluate settlement versus trial on a fully informed basis, and to evaluate the viability of the defenses. In sum, The Turley & Mara Law Firm, APLC, are fully committed to representing the class in this case, have the skill and expertise to do it properly, and will continue to do so whether or not the settlement is approved. Accordingly, appointment of William Turley, David Mara, Jill Vecchi, and Matthew Crawford of The Turley & Mara Law Firm, APLC, as Class Counsel is appropriate.

\\\

## V.   THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### a.   Federal Rule of Civil Procedure, Rule 23(e)

Rule 23(e) provides that any compromise of a class action must receive court approval. The court has broad discretion to grant approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon*, 150 F.3d at 1026. In deciding whether a settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *In re Heritage Bond Litigation*, 2005 WL 1594403 (C.D. Cal. 2005). Court approval involves a two-step process in which a court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted. *Manual of Complex Litigation*, Fourth Ed., § 21,632 (2004). At the preliminary approval stage, the Court need only "determine whether the proposed settlement is within the range of possible approval." *Gatreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). A class action settlement should be approved if "it is fundamentally fair, adequate and reasonable." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

Although at preliminary approval, the Court need not engage in the rigorous analysis required for final approval (*see Manual for Complex Litigation*, Fourth, § 22.661 at 438 (2004)), the ultimate fairness determination will include balancing several factors, including:

> the strength of plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the Class Members to the proposed settlement. *Officers for Justice*, *supra*, 688 F.2d 615, 625.

Not all of the above factors apply to every class action settlement, and one factor alone may prove determinative in finding sufficient grounds for court approval. *Nat'l Rural Telecommunications Cooperative v. Directv, Inc.*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004). District courts have wide discretion in assessing the weight and applicability of each factor. *Id.*

### b. **The Settlement Resulted from Arm's-Length Negotiations**

The Ninth Circuit has shown longstanding support of settlements reached through arms' length negotiation by capable opponents. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth circuit expressly opined that courts should defer to the "private consensual decision of the [settling] Parties." *Id.* at 965, citing *Hanlon*, 150 F.3d at 1027. The proposed settlement here is the product of arm's-length negotiations that spanned two mediations and weeks of follow-up communication facilitated by two of the most respected mediators in wage and hour class actions.

### c. **The Balancing of the Factors**

The factors noted above are commonly considered at preliminary approval. The factors here, in their respective levels of applicability, favor approval of the settlement. Plaintiff submits and Defendant disputes that this case was factually and legally strong. This matter was settled after substantial discovery, which included written discovery that resulted in thousands of pages of documents, and a deposition. Thus, at the point the settlement was initially agreed to, no one was in a better position than Counsel for Plaintiff to understand the strengths and potential limitations of Plaintiff's case and thus evaluate the reasonableness of the amount offered in settlement.

Plaintiff contends that Hoovestol's failure to provide compliant meal and rest periods and to pay all wages owed are the predominant claims in the lawsuit.[18] The claims for the failure to pay all wages due at termination and failure to provide accurate itemized wage statements derive from and are dependent on the wage claims.

Under California law, employers must provide non-exempt employees, like the California driver class involved here, with duty-free thirty (30) minute meal periods before the end of the fifth and tenth hours of work and ten (10) minute rest periods every four (4) hours or major fraction thereof. Plaintiff's theories of liability for both of these claims are that the meal and rest periods

---

[18] At certification, Plaintiff attempted to certify a class based upon Hoovestol's failure to pay employees for the time they spent in sleeper berths but, according to Plaintiff, were under Hoovestol's compensable control. In light of the number of individual releases Hoovestol obtained, and the Court's inquiries at certification into the numerosity of Plaintiff's classes – particularly this one – Plaintiff believes that the chances of this class being certified are slim. Therefore, Plaintiff does not evaluate this class for purposes of the maximum damage exposure Plaintiff and the Class could obtain if they prevailed at trial.

22

1   Hoovestol provided were not duty-free, because, Plaintiff asserts that Hoovestol has uniform

2   policies which require drivers to be responsible for the truck, the trailer, and the load at all times.

3   Moreover, Plaintiff contends that Hoovestol's meal period policy is facially unlawful because it

4   does not provide a second meal period until after the time the law requires it to have been provided.

5   That is, Plaintiff asserts that under the express language of Hoovestol's meal period policy, drivers

6   are not entitled to the second meal period until after ten (10) hours work. Further, Plaintiff

7   asserts that because Hoovestol does not provide duty-free meal periods, Plaintiff and the Class

8   must be paid for the time they spent on unpaid meal periods.

9          If Plaintiff's theory of liability as to meal and rest periods is correct, Hoovestol would be

10   liable to the Class for a California Labor Code § 226.7 premium for every meal period eligible

11   shift[19] and an additional § 226.7 premium for every rest period eligible shift. Based on data

12   received, Plaintiff calculated the total number of shifts worked by Class Members as 28,650 shifts.

13   The average hourly rate for drivers during the class period is $25.04 per hour.[20] Thus, Hoovestol's

14   *maximum* potential exposure for the meal and rest period claims is $1,434,792.[21] Turley Decl. ¶

15   26.

16          If Plaintiff prevails on his claims that meal periods were not duty-free, he and the Class

17   Members would also entitled to wages for the time spent on unpaid thirty (30) minute meal periods.

18

19   [19] As Class Members can only get one Labor Code § 226.7 premium per shift for unlawful meal periods, Plaintiff counts each shift worked during the class period as a shift qualifying for a premium. *See Marlo v. UPS*, Case No. CV

20   03-04336 DDP (RZx), 2009 U.S. Dist. LEXIS 41948 *22 (C.D. Cal. May 9, 2009) (Plaintiff can only recover one meal period premium and one rest period premium per shift regardless of the number of meal period violations and

21   rest period violations: "Marlo may recover up to two additional hours of pay on a single work day for meal period and rest break violations: one if any meal period violations occur in a work day and one if any rest break violations occur

22   in a work day. However, if more than one rest period violation occurs in a single work day but no meal period violations occur, Marlo may only recover one additional hour of pay for all of the rest period violations combined;

23   likewise, if more than one meal period violation occurs in a single work day but no rest period violations occur on that day, Marlo may only recover one additional hour of pay for all of the meal period violations combined."). Therefore,

24   although Plaintiff has two meal period theories – that meal periods were not duty-free and that Hoovestol's second meal period policy was facially unlawful – damages as each shift over five (5)

25   hours would qualify for a premium. Hoovestol represented that "[p]utative class members generally work *at least* 8 hours in a day with a 30-minute meal break[,]" as such, each shift worked triggers a Labor Code § 226.7 premium.

26   Notice of Defendant, Hoovestol, Inc., of Removal of Civil Action to United States District Court [Dkt. No. 1] Fn. 2.
     [20] *See* Declaration of Lynda Kuhn in Support of Hoovestol's Notice of Removal of Civil Action to United States District Court (Dkt. No. 1-2) at ¶ 6.

27   [21] 28,650 shifts x $25.04 per hour = $717,396 in meal period exposure
     28,650 shifts x $25.04 per hour = $717,396 in rest period exposure
     $717,396 + $717,396 = $1,434,792 in meal and rest period exposure

28

1   Hoovestol's **maximum** potential exposure for this claim is $358,698 [28,650 shifts x $12.52/hour

2   x .5 hours of wages = $358,698]. Turley Decl. ¶ 27.

3        If Plaintiff were to prevail on these claims, Plaintiff argues that he would also be entitled

4   to damages for waiting time penalties and inaccurate wage statements. Plaintiff contends that

5   Hoovestol owes waiting time penalties under California Labor Code § 203 to the former

6   employees. These penalties are equal to thirty (30) days' worth of wages. Hoovestol's **maximum**

7   exposure would be approximately $570,912 [76 former employees x $7,512 (30 days' worth of

8   wages)[22] = $570,912]. Turley Decl. ¶ 28.

9        The statute of limitations for Plaintiff's inaccurate wage statement cause of action is only

10  one (1) year. As such, Plaintiff calculates Hoovestol's **maximum** exposure under this cause of

11  action as $76,000 [19 employees employed within the statute of limitations x $4,000 (maximum

12  damages per employee under California Labor Code § 226) = $76,000]. Turley Decl. ¶ 29.

13       Hoovestol argues that it provides drivers with timely, duty-free meal and rest periods.

14  Hoovestol contends that it has a legally compliant meal and rest break policy, is supported by

15  testimony, documents, declarations, and common sense. Hoovestol asserts that Plaintiff's

16  argument regarding the non-duty-free meal and rest period claim cannot be resolved on a class-

17  wide basis, because, by its nature, it requires an understanding of how each class member

18  interpreted the policy that they are responsible for the truck, trailer, and the load. That is, the non-

19  duty-free claim, according to Defendant's, by itself and without more, does establish that drivers

20  are under the control of the company during meal and rest periods. To resolve that claim,

21  Defendant argues, would require an understanding of how the policy was interpreted. To that end,

22  Defendant relies on declarations from drivers to show that the interpretations varied, which,

23  according to it, rendered the claims for non-duty-free meal and rest periods unable to be resolved

24  on a class-wide basis in Plaintiff's favor.   that Plaintiff's interpretation of its policies is inaccurate

25  and drivers did not share this same interpretation. Hoovestol argues that these declarations show

26  that drivers did not believe they were required to remain with their trucks at all times and only had

27

28
---
[22] 10 hours per day x 30 days x $25.04 per hour = $7,512

1  to lock the cab and padlock the trailer before leaving it on a break or a lunch.

2       Hoovestol also argues that it received no complaints from any drivers for not being able to

3  take duty-free meal and rest periods away from their vehicles. All class members were regularly

4  provided with a first and second meal period within compliant time periods and authorized and

5  permitted to take their rest breaks. If meal and/or rest periods are not shown on the time records,

6  it is because drivers chose to forego them, not that these breaks were not provided. Hoovestol

7  argues that drivers, by the nature of their work which is conducted away from Hoovestol facilities,

8  are given broad discretion as to when to take breaks. Hoovestol provided numerous declarations

9  which support its arguments when it filed its opposition to Plaintiff's class certification motion.

10 Hoovestol further argues that under *Brinker*, it is not required to police employees to ensure they

11 take breaks. In order for Plaintiff to prove whether or not drivers chose to forego breaks or were

12 not provided with them, Hoovestol asserts that the factfinder would have to ask each driver why

13 they did not take a break.

14      When this case began, it involved approximately 338 drivers. Since approximately Novem-

15 ber of 2017, Defendant negotiated individually with drivers and was able to settle with the vast

16 majority of them. The remaining – which comprise the individuals in this settlement class – number

17 39. Although Plaintiff believes this amount is numerous for purposes of class certification, with

18 the specter of continued individual settlement efforts on Defendant's part, whether the class of

19 remaining drivers would remain numerous throughout the post-certification proceedings is

20 distinctly possible.

21      In order to prevail on the merits of Plaintiff's claims, Plaintiff will have to overcome

22 numerous obstacles, including obtaining and maintaining class certification status under the

23 rigorous standard set forth in Rule 23. While Plaintiff believes he would be successful in obtaining

24 class certification, there is inevitably a risk in whether or not this would happen, especially when

25 taking into consideration the individual releases Defendant has obtained. If granted, after class

26 certification was obtained, Plaintiff would have to withstand and prevail on motions for summary

27 judgment that Defendant will undoubtedly file. Further, if Plaintiff were to win on the merits of

28

Plaintiff's Renewed Motion for Preliminary Approval of Class Action Settlement          Case No. 3:16-cv-05183-JST

1   his claims, it is likely that he would not receive the entirety of the damages he is seeking. Taking

2   this risk into consideration, the proposed settlement amount of $100,000 is reasonable and

3   adequate.

4               **d.   Range of Exposure and Reasonable Discount**

5          In light of the defenses discussed above, in considering the best interests of the class,

6   Plaintiff had to discount his exposure analysis. In discounting his exposure analysis, Plaintiff

7   considered the fact that Hoovestol obtain individual releases from most of the drivers who worked

8   during the statutory period and that the Court may not certify the class claims. In addition, Plaintiff

9   had to consider the realistic potential of recovering under the each of his theories. For example,

10  Plaintiff considered that the Court or factfinder could agree with Hoovestol's defenses as to his

11  claims. For example, the Court or factfinder could have agreed with Hoovestol that drivers can

12  leave their vehicle if they secure the truck and load by locking the truck and padlocking the trailer

13  before leaving the vehicle unattended. If this happens, then Plaintiff's damages for his meal break,

14  rest break, and unpaid wages claims – which are predicated on Hoovestol not provided drivers

15  with duty-free breaks – would be reduced to zero. Plaintiff had to consider the reasonable

16  likelihood that he would be unable to prove the total amount of harm at trial, assuming Plaintiff

17  achieved class certification on all causes of action.

18         Courts in the Ninth Circuit have observed that "a proposed settlement may be acceptable

19  even though it amounts to only a fraction of the potential recovery." *Telecomm. Corp. v. DirectV*,

20  221 F.R.D. 523, 527 (C.D. Cal. 2004). The settlement here is fair, adequate, and reasonable when

21  considering that it provides drivers with a definite recovery considering the risks of further

22  litigation. In light of Hoovestol's defenses, the settlement amount of $100,000 is fair and

23  reasonable.

24  **VI.   NATURE AND METHOD OF NOTICE**

25         Rule 23 (c)(2) requires that the notice inform prospective class members of (i) the nature

26  of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv)

27  that a class member may enter an appearance through counsel if the member so desires; (v) that

28

1  the court will exclude from the class any member who requests exclusion; (vi) the time and manner

2  for requesting exclusion; and (vii) the binding effect of a class judgment on class members under

3  Rule 23(c)(3) generally requires the same concepts. "Notice is satisfactory if it generally describes

4  the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate

5  and to come forward and be heard." Newberg, 2 *Newberg on Class Actions* §8.32 at 8-103.

6        The proposed notice here, which is attached to the Agreement as Exhibit A, meets all of

7  these requirements. Thus, it is respectfully requested the Court order the Notice adequately notifies

8  of the proposed settlement. The Notice will be sent to Class Members by both U.S. Mail and email.

9  The outside of the envelope the Notices are mailed in will read: "IMPORTANT DOCUMENTS

10  REGARDING A CLASS ACTION SETTLEMENT ARE ENCLOSED." This increases the

11  likelihood that Class Members will receive the notice and open it. As part of the settlement

12  administration process, ILYM will maintain a website that has links to the notice, motions for

13  approval         and         for         attorneys'         fees,         and         the         Court's         orders.

14        Settlement Class Members shall have sixty (60) days from the initial mailing of the Notices

15  to respond to the Notice, should they choose to do so.

16  **VII.   CONCLUSION**

17        Based on the foregoing, Plaintiff respectfully requests that the Court grant preliminary

18  approval of the proposed settlement, conditionally certify the Class, enter the proposed Preliminary

19  Approval Order submitted herewith, and set a Final Approval Hearing.

20
21  Dated: September 25, 2018          **THE TURLEY & MARA LAW FIRM, APLC**

        */s/ Jill Vecchi*
22                                    William Turley, Esq.
                                      David Mara, Esq.
23                                    Jill Vecchi, Esq.
                                      Matthew Crawford, Esq.
24                                    Representing Plaintiff RICHARD TERRY

25
26
27
28