UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD TERRY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>HOOVESTOL, INC.,<br><br>　　　　Defendant. | Case No. 16-cv-05183-JST<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION**<br><br>Re: ECF No. 62 |

Before the Court is Plaintiff's renewed motion for preliminary approval of a class action settlement and provisional certification of the class. ECF No. 62. For the reasons below, the Court will grant the motion in full.

I. **BACKGROUND**

　　A. **The Parties and Claims**

Plaintiff Richard Terry is a former truck driver for Defendant Hoovestol, Inc. ECF No. 1-1 ¶ 27. Hoovestol hauls bulk mail for the United States Postal Service ("USPS") and employs truck drivers in California. *Id.* ¶¶ 36-37. Terry brings this putative wage and hour class action for violations of California Labor Code Sections 226(b), 226.7, 510, 512, 515, 558, and 1194 as well as California Code of Regulations Title 8 Section 11090. *Id.* ¶ 24. He alleges causes of action for: failure to pay all straight time wages; failure to pay overtime; failure to provide meal periods; failure to authorize and permit rest periods; knowing and intentional failure to comply with itemized employee wage statement provisions; failure to pay all wages due at the time of termination of employment; and violation of Unfair Competition Law. ECF No. 62 at 12.

　　B. **Procedural History**

Terry filed the initial complaint in this action in the Alameda County Superior Court on

1 July 20, 2016. ECF No. 62 at 12. On September 8, 2016, Hoovestol removed the case to this
2 Court pursuant to the Class Action Fairness Act ("CAFA"). *Id*. On February 2, 2018, Terry filed
3 a motion for class certification, proposing seven subclasses. *See* ECF No. 41. After Hoovestol's
4 opposition and Terry's reply were filed, the Court ordered supplemental briefing regarding
5 whether the subclasses satisfied the numerosity requirement of Rule 23. ECF No. 46. On March
6 30, 2018, Terry filed a supplemental brief and a motion to strike. ECF Nos. 47, 49. Hoovestol
7 also provided supplemental briefing. *See* ECF Nos. 50, 51.

After the exchange of discovery, mediation, and continued negotiation following mediation, the parties reached a proposed class action settlement. ECF No. 62 at 14. On June 14, 2018, Terry moved for preliminary approval of the proposed class action settlement including conditional certification of the settlement class. ECF No. 55. Terry's motions for class certification and to strike were terminated as moot on June 18, 2018 in light of this motion. ECF No. 56. The Court denied Terry's motion for preliminary approval and identified four obvious deficiencies in the proposed class action settlement: lack of a driving nexus between the plaintiff class and proposed *cy pres* beneficiaries; an overbroad release provision; a too-short opt-out period; and lack of any provision for a second distribution of unredeemed checks. ECF No. 59.

Terry now renews his motion for preliminary settlement approval and provisional class certification. ECF No. 62. Pursuant to CAFA, Hoovestol sent notice of the proposed settlement to the United States Attorney General and the Attorney General of the State of California on October 5, 2018. ECF No. 63. No Attorney General has submitted a statement of interest or objection in response to these notices.

## II. CLASS CERTIFICATION

### A. Legal Standard

Class certification under Rule 23 of the Federal Rules of Civil Procedure is a two-step process. First, a plaintiff must demonstrate that the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy. "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." *Wang v. Chinese Daily News, Inc.*, 709 F.3d 829, 833 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v.*

*Dukes*, 131 S. Ct. 2541, 2551 (2011)).

Second, a plaintiff must establish that the action meets one of the bases for certification in Rule 23(b). Here, because he relies on Rule 23(b)(3), Plaintiff must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiff bears the burden of demonstrating by a preponderance of the evidence that all four requirements of Rule 23(a) and at least one of the three requirements under Rule 23(b) are met. *See Wal-Mart*, 131 S. Ct. at 2551.

### B. Proposed Class

Terry requests that the Court provisionally certify the class for settlement purposes, a request Hoovestol does not oppose. ECF No. 62 at 26. The Settlement Agreement defines the class as follows:

> All persons who are or have been employed by Defendant in the State of California as hourly truck drivers at any time between July 20, 2012, to the date the Court issues an order granting preliminary approval of the settlement and who did not execute an individual release of the claims.

Settlement Agreement ¶ I.E. Terry explains that, because he did not sign an individual release, it is unclear whether he would be considered an adequate and typical representative of those who did; thus, those employees are excluded from the class. ECF No. 62 at 13 n.5.

### C. Analysis

For the reasons set forth below, the Court grants the request to provisionally certify the settlement class.

#### 1. Rule 23(a)(1): Numerosity

To be properly certified a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, Plaintiff's proposed class includes approximately 39 class members. ECF No. 62 at 35. While the case involved approximately 338 drivers at its inception, individual settlement efforts by Hoovestol have whittled that number down to the 39 proposed class members remaining. *Id.*

There is no fixed numerical threshold class members must exceed to satisfy the numerosity

requirement. *Rannis* v. *Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010). "A class or subclass with more than 40 members raises a presumption of impracticability of joinder" on numbers alone. *West v. Cal. Servs. Bureau, Inc.,* 323 F.R.D. 295, 303 (N.D. Cal. 2017) (quotation and internal alterations omitted). Meanwhile, a class with fewer "than 21 does not." *Ries v. Ariz. Beverages USA LLC,* 287 F.R.D. 523, 536 (N.D. Cal. 2012). Because Plaintiff's proposed class contains 39 members, the Court finds that it is sufficiently numerous to render joinder impracticable.

### 2. Rule 23(a)(2): Commonality

A Rule 23 class is certifiable only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). For the purposes of Rule 23(a)(2), "even a single common question" is sufficient. *Wal-Mart*, 131 S. Ct. at 2556 (quotation and internal alterations omitted). The common contention, however, "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551.

As Terry explains, all members of the proposed class share common questions – for instance, whether Hoovestol's policies deprived them of compliant meal and rest periods. ECF No. 62 at 27. This, along with the other shared legal questions as to Hoovestol's liability in this case, satisfies the commonality requirement.

### 3. Rule 23(a)(3): Typicality

In certifying a class, courts must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

Plaintiff Richard Terry is a former Hoovestol truck driver. ECF No. 1-1 ¶ 27. His claims and those of the potential class members rely on the same policies of Hoovestol – for instance, the

4

1  claim that Hoovestol does not provide compliant meal and rest periods. ECF No. 62 at 27. This
2  satisfies the typicality requirement.

### 4. Rule 23(a)(4): Adequacy

"The adequacy of representation requirement . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).

No party has suggested, and the Court has not found, any evidence in the record suggesting that Terry has any conflict of interest with the other class members. Terry shares common claims with the proposed class, seeks the same relief they do, and bases his claims on the same underlying facts and common injury. ECF No. 62 at 28. Further, Terry's lead counsel has submitted a declaration highlighting his experience litigating wage and hour class actions in the transportation industry under California law. *See* ECF No. 62-1 ¶ 14. The Court concludes that Terry and his counsel will adequately represent the proposed class.

### 5. Rule 23(b)(3): Predominance and Superiority

To certify a Rule 23 damages class, the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

Again, the dominant legal issue here is whether Hoovestol provided timely and duty-free meal and rest periods to Terry and the rest of the proposed class. Terry alleges that his claims are based on uniform, class-wide policies. The Court finds that the various questions surrounding those policies predominate over any questions that could affect only individual class members. A

class action is also a superior method for fairly and efficiently adjudicating those questions. Resolving the proposed class members' disputes in a single class action will be far more efficient than requiring them each to proceed individually. The Court concludes that the proposed class satisfies the requirements of Rule 23(b)(3).

Accordingly, the Court finds that provisional certification of the proposed class is appropriate for the purposes of settlement.

## III. PRELIMINARY APPROVAL

### A. Legal Standard

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *City of Seattle*, 955 F.2d at 1276 (citation omitted). The court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). Then, courts must hold a hearing pursuant to Rule 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable, and adequate."

Preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware*, 484 F. Supp. 2d at 1079 (quotations omitted). The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). To assess a settlement proposal, courts must balance a number of factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout

> the trial; the amount offered in settlement; the extent of discovery completed and
> the stage of the proceedings; the experience and views of counsel; the presence of
> a governmental participant; and the reaction of the class members to the proposed
> settlement.

*Id*. at 1026 (citations omitted). The proposed settlement must be "taken as a whole, rather than the individual component parts" in the examination for overall fairness. *Id*. Courts do not have the ability to "delete, modify, or substitute certain provisions"; the settlement "must stand or fall in its entirety." *Id*.

### B. Terms of the Settlement

Under the terms of the agreement, Defendant agrees to pay no more than $100,000 as a gross settlement amount, without admitting liability. ECF No. 62-2 ("Settlement Agreement") ¶¶ III.A, III.L.1. This amount includes Plaintiff's attorneys' fees and costs, the cost of class notice and settlement administration, the class representative's enhancement award, and employer/employee payroll taxes on the portion of the settlement payments deemed wages. *Id*. ¶ I.V. Plaintiff's counsel will seek $25,000 in attorneys' fees and no more than $20,000 in litigation costs. *Id*. ¶¶ I.D, I.M. The gross settlement amount includes $3,000 for settlement administration costs. *Id*. ¶ I.B. In addition, Terry will be paid an enhancement award of $2,500 in exchange for the general release of all his claims against Hoovestol. *Id*. ¶¶ I.L, III.K. After these deductions from the gross settlement amount, approximately $49,500 will remain to be distributed among the participating class members. ECF No. 62 at 23. Each participating class member will receive a proportion of the amount "equal to (i) the number of weeks he or she worked for [Hoovestol] in California . . . divided by (ii) the total number of weeks worked by all Participating Class Members." Settlement Agreement ¶ III.F.1.a. Sixty percent of each individual's share is intended to settle claims for unpaid wages and forty percent is intended to settle claims for interest and penalties. *Id*. ¶¶ III.F.2.a, 2.b. The portion for unpaid wages will be "reduced by applicable payroll tax withholdings and deductions." *Id*.

Class members who wish to object must mail a written objection to the court no later than sixty days after the settlement administrator mails the class notices. *Id*. ¶ III.I.4. Class members may opt-out of the settlement by mailing a written request for exclusion to the settlement

administrator no later than sixty days after the settlement administrator mails the class notices. *Id.*
¶ III.I.5. The Settlement Agreement further provides that when checks mailed to participating class members are not redeemed or deposited within ninety days, the settlement administrator will mail a reminder postcard. *Id.* ¶ III.I.11. Ninety days after the reminder notice is mailed, funds from any unredeemed checks will be paid to the United Way of California. *Id.*

In exchange for the settlement awards, participating class members will release Hoovestol from liability as to "all known and unknown state law claims that both: (1) were alleged or that could have been alleged based on the facts plead in the complaints filed in the matter; and ([2]) concern, arise out of, relate to, or are based upon Defendant's failure to pay all wages, including straight time and overtime wages; failure to provide meal and rest periods; knowing and intentional failure to comply with itemized employee wage statement provisions; failure to pay all wages timely, including wages due at the time of termination; and violations of California's Unfair Competition Law." *Id.* ¶ I.BB.

### C. Analysis

The Court's order on Terry's earlier motion preliminarily approved of the proposed settlement in many respects. The Court concluded: that the negotiations and agreement were non-collusive and likely to benefit the class; that resolution through settlement was appropriate in light of the risks inherent in further litigation; that the gross settlement amount, attorneys' fees, costs, and enhancement award were all within the range of possible approval; that the parties conducted sufficient discovery to make an informed decision about the settlement; that class counsel's views of the settlement agreement weighed in favor of approval; that the settlement agreement did not provide improper preferential treatment to any class member; and that the proposed notice procedure met the requirements of Federal Rule of Civil Procedure 23(c)(2)(B). ECF No. 59. The provisions upon which the Court based these conclusions remain unchanged, as do the Court's corresponding conclusions. The Court now addresses only those portions of the proposed settlement agreement that the parties have modified to remedy the deficiencies previously identified by the Court. *See* ECF No. 59 at 8-10. The Court concludes those defects have been corrected and accordingly, grants preliminary approval of the proposed settlement.

8

### 1. Cy Pres Distribution of Unclaimed Funds

The prior agreement provided that funds from unredeemed checks would be paid to the State Treasury for the Trial Court Improvement and Modernization Fund and the Equal Access Fund of the Judicial Branch. ECF No. 55-2 ¶ III.I.11. The Settlement Agreement now names the United Way of California as the *cy pres* recipient of these unclaimed funds. Settlement Agreement ¶ III.I.11. As the Agreement explains, the United Way provides direct service "programs aimed at promoting steady, gainful employment of Californians," as well as advocating for the interests of employees at a policy level. *Id*. Because this is a class action brought by employees against their employer, the Court concludes that the parties have met their burden to show "a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (citation omitted). An award to the United Way of California is "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members." *Id.* (citation omitted). Accordingly, the *cy pres* distribution plan described in the revised Settlement Agreement poses no barrier to preliminary approval.

### 2. Release of Class Members' Claims

Under the former Settlement Agreement, participating class members would release Hoovestol from liability as to "all known and unknown state law claims that were alleged or that could have been alleged based on the facts of the complaints filed in the matter." ECF No. 55-2 ¶ I.BB. Terry's release – which ran "from the beginning of time" – was even broader. ECF No. 55 at 11. The Court rejected the proposed release in the former Settlement Agreement as overbroad and "beyond the scope of the present litigation" because it released all state law claims based on the facts of the complaint without regard to the breadth of Plaintiffs' allegations in the complaint. *See Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2014 WL 1477630, at \*7 (N.D. Cal. Apr. 15, 2014); *see also McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at \*3 (N.D. Cal. Dec. 19, 2012). In the release now proposed by the parties, participating class members will release Hoovestol from liability as to "all known and unknown state law claims that both: (1) were alleged or that could have been alleged based on the facts plead in the complaints filed in the matter; and ([2]) concern, arise out of, relate to, or are based

9

upon Defendant's failure to pay all wages, including straight time and overtime wages; failure to provide meal and rest periods; knowing and intentional failure to comply with itemized employee wage statement provisions; failure to pay all wages timely, including wages due at the time of termination; and violations of California's Unfair Competition Law." Settlement Agreement ¶ I.BB. Because this release is limited to the factual claims raised in the complaint, the Court approves of the revised release provision. The Court observes with approval that Terry's release has also been narrowed, and now runs only "from the beginning of his employment with Defendant." ECF No. 62 at 15.

### 3. Notice Procedure

The prior agreement set the deadline to opt-out or object to the settlement at 45 days after mailing of the initial notice. ECF No. 55-2 ¶¶ III.I.4, I.5. As the Court noted, "any period shorter than 60 days is too short a time to allow class members to properly respond." *Thomas v. Magnachip Semiconductor Inc.*, No. 14-CV-01160-JST, 2016 WL 1394278, at *8 (N.D. Cal. Apr. 7, 2016). The revised Settlement Agreement now sets the opt-out and objection deadlines at 60 days after the initial notice is mailed. Settlement Agreement ¶¶ III.I.4, I.5. With this deficiency addressed, the Court preliminarily approves the parties' proposed notice procedure.

### 4. Second Distribution

Finally, the Court noted in its earlier order that the parties planned to pay funds from unredeemed checks to the *cy pres* beneficiary after 180 days rather than attempting a second distribution. *See* ECF No. 55-2 ¶ III.I.11. The Court instructed the parties to either include a second distribution in their agreement or explain why attempting a second distribution would be infeasible or inappropriate. ECF No. 59 at 10 n.3. In the renewed motion for settlement approval, the parties explain that they feel a reminder postcard at the 90-day mark is an appropriate substitute for a second distribution because otherwise, class members "may try to cash both checks they receive – from the first and second distributions – thinking that they were entitled to both." ECF No. 62 at 24. Instead, the reminder postcard will prompt them to either cash their check or obtain a new check if their original check was lost or misplaced. *Id.* The Court accepts the parties' explanation, and thus will preliminarily approve the settlement although it does not

10

1 provide for a second distribution.

## CONCLUSION

Because Terry's renewed motion for preliminary approval and provisional certification corrects the deficiencies addressed in the Court's earlier order, the Court GRANTS the motion. The proposed class is hereby provisionally certified for the purposes of settlement. The Court grants preliminary approval of the settlement and approves of the proposed notice procedure and form. The Court will hold a final approval hearing on Thursday, May 9, 2019 at 2:00 p.m., as requested by the parties.[1]

**IT IS SO ORDERED.**

Dated: December 7, 2018



JON S. TIGAR
United States District Judge

---

[1] The parties must also add 49 days to each of the other deadlines leading up to the final approval hearing, *see* ECF No. 62-6, including in the form of notice, ECF No. 62-2.