David Mara, Esq. (230498)
Jill Vecchi, Esq. (299333)
Matthew Crawford, Esq. (310230)
**MARA LAW FIRM, PC**
2650 Camino Del Rio North, Suite 205
San Diego, California 92108
Telephone: (619) 234-2833
Facsimile: (619) 234-4048

Attorneys for Plaintiff RICHARD TERRY
on behalf of himself and all others similarly
situated and on behalf of the general public.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD TERRY, on behalf of himself and all others similarly situated, and on behalf of the general public,<br><br>Plaintiff,<br><br>v.<br><br>HOOVESTOL, INC.; and DOES 1-100,<br><br>Defendants. | Case No. 3:16-cv-05183-JST<br><br>[*Assigned to the Honorable Jon S. Tigar*]<br><br>**PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Date: May 9, 2019**<br>**Time: 2:00 p.m.**<br>**Judge: Hon. Jon S. Tigar**<br>**Dept.: 9**<br><br>Action Filed:   July 20, 2016 |

**TO: ALL PARTIES HEREIN AND TO THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on May 9, 2019, at 2:00 p.m. or as soon thereafter as the matter can be heard in Courtroom No. 9 of the above entitled courthouse located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff Richard Terry (hereinafter "Plaintiff") will move this Court for an Order Granting Plaintiff's Motion for Final Approval of Class Action Settlement. Defendant Hoovestol, Inc. (hereinafter "Defendant" or "Hoovestol") does not oppose this Motion.

This motion is based upon this notice, the accompanying Memorandum of Points and Authorities filed herewith; the Court's Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement; the filings on record in this case; and upon such further evidence, both documentary and oral, that may be presented at the hearing of this motion.

Dated: April 4, 2019                    **MARA LAW FIRM, PC**

By: /s/ *Jill Vecchi*
    David Mara, Esq.
    Jill Vecchi, Esq.
    Matthew Crawford, Esq.
    Attorneys for Plaintiff RICHARD TERRY

ii

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION    Case No. 3:16-cv-05183-JST
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. SUMMARY OF SETTLEMENT ................................................................................... 2

III. THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO ..................... 3

   A. Dissemination of Class Notices ................................................................................ 3

   B. No Objections and Four Requests for Exclusion Have Been Received ................... 4

IV. DISCUSSION .................................................................................................................. 4

   A. The Settlement Meets the Standards Governing Final Approval ............................ 4

      i.   Settlement was Reached Through Arm's-Length Negotiations ..................... 5

      ii.  *In re Bluetooth Headset Products Liability Litigation*,

          654 F.3d 935 (9th Cir. 2001), Factors Are Not Present Here ......................... 6

      iii.  The Settlement is Fair ..................................................................................... 6

   B. Sufficient Discovery and Investigation Has Occurred ............................................ 10

   C. Class Counsel are Experienced ................................................................................ 11

   D. The Class Members' Response to the Settlement is Further Evidence that the Settlement is Fair and Reasonable ......................................................................... 11

   E. The Court Should Approve of the Settlement Administration Fee ....................... 11

V. CONCLUSION .............................................................................................................. 12

iii

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION        Case No. 3:16-cv-05183-JST
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**CASES**

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610, 622 (N.D. Cal. 1979) ...................................................................................6

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268, 1276 (9th Cir. 1992) ........................................................................................5

*Eisen v. Porsche Cars North America, Inc.*,
   2014 WL 439006 at *3 (C.D. Cal. Jan. 30, 2014) ...................................................................11

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011, 1026 (9th Cir. 1998) .............................................................................4, 5, 6, 8

*Heritage Bond Litigation*,
   2005 WL 1594403 ....................................................................................................................5

*In re Bluetooth Headset Products Liability Litigation* ("*Bluetooth*"),
   654 F.3d 935, 946 (9th Cir. 2011) ........................................................................................6, 7

*In re MRV Communs., Inc. Derivative Litig.*,
   2013 WL 2897874, *2 (C.D. Cal. June 6, 2013) ....................................................................10

*Joel A. v. Giuliani*,
   218 F.3d 132, 138 (2d Cir. 2000) .............................................................................................4

*Kirkorian v. Borelli*, 695 F. Supp.
   446, 451 (N.D. Cal. 1988) ........................................................................................................6

*Lane v. Facebook, Inc.*,
   2010 WL 9013059, *5 (N.D. Cal. March 17, 2010) ...............................................................10

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234, 1242 (9th Cir. 1998) ........................................................................................8

*Mandujano v. Basic Vegetable Products, Inc.*,
   541 F. 2d 832, 837 (9th Cir. 1976) .........................................................................................13

iv

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION                    Case No. 3:16-cv-05183-JST
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Marshall v. Holiday Magic, Inc.*,
    550 F.2d 1173 (9th Cir. 1977) ......................................................................................... 7
*Melong v. Micronesian Claims Com.*, 6
    43 F.2d 10, 15 (D.C. Cir. 1980) ..................................................................................... 12
*Morey v. Louis Vuitton N. Am., Inc.*,
    2014 WL 109194, *5 (S.D. Cal. Jan. 9, 2014) ............................................................... 10
*Officers for Justice v. Civil Service Comm. of City and County of San Francisco*,
    688 F. 2d 615, 625 (9th Cir. 1982) .................................................................................. 8
*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................................................... 5
*Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*,
    2013 U.S. Dist. LEXIS 123298, *253-54 (C.D. Cal. July 24, 2013) ............................. 11
*Van Ba Ma v. Covidien Holding, Inc.*,
    2014 U.S. Dist. LEXIS 76359, *6-7 (C.D. Cal. 2014) .................................................... 7

**STATUTES**

Federal Rule of Civil Procedure 23 ....................................................................................... 4

v

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION                Case No. 3:16-cv-05183-JST
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## I. INTRODUCTION

This motion seeks final approval of a $100,000 proposed class action settlement achieved on behalf of eighty (80) class members.[1] Plaintiff RICHARD TERRY (hereinafter "Plaintiff") filed this wage and hour class action against Defendant HOOVESTOL, INC. (hereinafter "Defendant" or "Hoovestol") alleging that Defendant failed to: (1) pay drivers for all time worked; (2) provide drivers with lawful meal and rest breaks; (3) timely pay wages to drivers whose employment had terminated; and (4) provide accurate itemized wage statements in violation of California law. Through this motion, Plaintiff seeks final approval of the Parties' Joint Stipulation and Settlement Agreement (hereinafter referred to as "Agreement" or "Settlement Agreement").[2] The proposed settlement class is comprised of all persons who are or have been employed by Hoovestol in the State of California as hourly truck drivers at any time between July 20, 2012 to December 7, 2018 (the date the Court granted preliminary approval of the settlement) and who did not execute an individual release of the claims (referred to as the "Class").

In response to the Notice of Class Action Settlement, no objections and four (4) requests for exclusion[3] were received by the Settlement Administrator from Class Members. One hundred percent (100%) of the settlement funds will be paid out to Participating Class Members[4] as there is no reversion to Defendant and 95% of all Class Members are participating in the settlement. The proposed settlement is projected to pay Participating Class Members an average estimated payment of $651.32, with the highest settlement share estimated at $2,626.76, less

---

[1] Since Defendant gathered the data this case, an additional approximately forty (40) non-exempt hourly paid drivers began working for Defendant before the end of the Class Period on December 7, 2018. This increase was due to a higher than normal driver turnover and Defendant acquiring new contracts in California. *See* Declaration of Wayne Hoovestol. It should be noted that these additional Class Members will not have extensive work weeks since they only worked for Defendant for approximately one year of the Class Period.

[2] This Agreement is attached as Exhibit 1 to the Declaration of David Mara, Esq. filed concurrently herewith.

[3] Representing 5% of the Class Members. These Class Members will not release any claims against Defendant and will not receive any funds pursuant to the settlement.

[4] Participating Class Members are Class Members who do not submit a valid and timely request to exclude themselves from this Settlement.

1

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION                Case No. 3:16-cv-05183-JST
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

employee/employer taxes for the settlement share that is devoted to wages.[5]

On December 7, 2018, the Court granted preliminary approval of the settlement, subject to and contingent upon this Court's final approval. As part of its preliminary approval order, the Court conditionally certified, for settlement purposes only, the following Class: "All persons who are or have been employed by Defendant in the State of California as hourly truck drivers at any time between July 20, 2012, to the date the Court issues an order granting preliminary approval of the settlement and who did not execute an individual release of claims." Dkt. # 65. It is requested this Court grant final approval of this settlement. After analyzing the strengths and vulnerabilities of the Class' claims along-side Defendant's potential liability exposure, this proposed non-reversionary settlement of $100,000 is fair, reasonable, and adequate.

To date: (1) Class Members were mailed and emailed a Notice of Class Action Settlement ("Class Notice") on December 26, 2018; (2) four Class Notices have been returned as completely undeliverable by U.S. Mail;[6] (3) no objections to the settlement were received by the Settlement Administrator; and (4) four Class Members submitted requests for exclusion from the settlement. The response of the Class Members supports the Court's finding that the Settlement is fair, reasonable, and adequate. For the reasons that follow, it is respectfully requested the Court grant this motion and find the settlement to be fair, reasonable, and adequate.

**II. SUMMARY OF SETTLEMENT**

As described in the motion for Preliminary Approval and stated in the Settlement Agreement, Defendant shall pay $100,000 (referred to as the "Gross Settlement Amount" or "GSA") which includes: (1) settlement administration costs of $3,000;[7] (2) a Class Representative General Release Payment not to exceed $2,500 to the named Plaintiff; (3) attorneys' fees not to exceed $25,000 (25% of the GSA); and (4) costs of $19,293.68. All of these payments are subject to the Court's approval.

---

[5] Declaration of Jennifer Olivares of ILYM Group, Inc., in Support of Motion for Final Approval of Class Action Settlement ("Olivares Decl.") ¶ 15.
[6] These four undeliverable Class Notices represent 5% of the Class Members.
[7] Olivares Decl. ¶ 16.

2

1  After the above amounts are subtracted from the GSA, the remaining portion of the GSA – referred to as the Net Settlement Amount ("NSA") – shall be available for distribution to Participating Class Members. After subtracting the above amounts, the NSA available for individual settlement payments is approximately $50,206.32.

Each Participating Class Member will receive a proportionate share of the NSA that is equal to (i) the number of weeks he or she worked for Defendant in California, divided by (ii) the total number of weeks worked by all Participating Class Members based on the Class data, which is then multiplied by the NSA. One day worked in a given week will be credited as a week for purposes of this calculation. Therefore, the value of each Participating Class Member's Individual Settlement Share ties directly to the amount of weeks that he or she worked.

As the will be discussed, the settlement has been a success, with no objections to the settlement submitted by Class Members and only four requests for exclusion submitted. The Class response and settlement shares to class members further demonstrate the settlement being fair, reasonable and adequate.

### III. THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO

#### A. Dissemination of Class Notices

Preliminary Approval was granted on December 7, 2018. At that time ILYM Group, Inc. was appointed by the Court as the Settlement Administrator. ILYM Group, Inc. has complied with the Court's orders concerning dissemination of the Class Notice by first-class regular U.S. Mail and email. After receiving the Class Data from Hoovestol, names and addresses contained in the Class List were processed against the National Change of Address ("NCOA") database, maintained by the United States Postal Service ("USPS"), for purposes of updating and confirming the mailing addresses of the Settlement Class Members before mailing of the Class Notices. Olivares Decl. ¶ 6. The Class Notices were mailed and e-mailed to Class Members on December 26, 2018. Olivares Decl. ¶ 7. ILYM Group, Inc. re-mailed two (2) Class Notices because ILYM Group, Inc. found an updated address through skip tracing. Olivares Decl. ¶ 9.

3

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION              Case No. 3:16-cv-05183-JST
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  Four (4) Class Notices were ultimately deemed undeliverable by U.S. Mail.[8] Olivares Decl. ¶ 10.
2  In addition, throughout the notice process ILYM Group, Inc. has operated a toll-free telephone
3  number for Class Members to call with inquiries concerning the settlement. IYLM Group, Inc.
4  has also maintained a website with the settlement documents available for Class Members to
5  access.

### B. No Objections and Four Requests for Exclusion Have Been Received

7  The deadline to submit an objection to the settlement or a request for exclusion from the
8  settlement was February 25, 2019. No objections have been filed with the Court or submitted to
9  ILYM Group, Inc. and four (4) requests for exclusion from the settlement were received by ILYM
10 Group, Inc. Olivares Decl. ¶¶ 11, 12. These four (4) requests for exclusion represent 5% of the
11 Class Members. All Class Members who did not submit a request for exclusion will receive a
12 settlement payment. Therefore, 76 Participating Class Members will receive a Settlement
13 Payment. Olivares Decl. ¶ 14.

### IV. DISCUSSION

### A. The Settlement Meets the Standards Governing Final Approval

16 Matters that have been filed as class actions require court approval before a settlement can
17 be consummated. *See* Fed. R. Civ. Proc. ("FRCP") 23(e). FRCP 23(e) provides that any
18 compromise of a class action must receive Court approval. The Court has broad discretion to
19 grant approval and should do so where the proposed settlement is "fair, adequate, reasonable, and
20 not a product of collusion." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel
21 A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). In determining whether a settlement should be
22 approved, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly
23 where complex class action litigation is concerned." *In re Heritage Bond Litigation*, 2005 U.S.
24 Dist. LEXIS 13555, *9 (C.D. Cal. June 10, 2005) (*citing Class Plaintiffs v. Seattle*, 955 F.2d
25 1268, 1276 (9th Cir. 1992)).

---

[8] These Notices were only undeliverable by U.S. Mail. As Notices were also provided to Class Members by e-mail, there is no evidence that the electronic copies were undeliverable. These four (4) undeliverable Class Notices represent 5% of the Class Members.

4

Approval of a class action settlement involves a two-step process. In determining whether to grant final approval of the settlement, a court examines the terms for overall fairness and, in so doing, balances the following factors: the strength of the plaintiff's case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed; the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; the reaction of the class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026.

Here, the proposed settlement was reached only after undertaking a robust factual and legal investigation into Defendant's pay structures and wage and hour policies and full briefing on Plaintiff's motion for class certification. These efforts culminated in the Parties reaching an agreement to settle. The settlement amount takes into consideration the risks with regard to the certifying Plaintiff's claims, as well as difficulties associated with prevailing on the merits. In light of these risks, the settlement amount is well within the ballpark of reasonableness.

### i. Settlement was Reached Through Arm's-Length Negotiations

The Ninth Circuit has shown longstanding support of settlements reached through arm's length negotiation by capable opponents. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth Circuit expressly opined that courts should defer to the "private consensual decision of the [settling] parties." *Id.* at 965, citing *Hanlon*, 150 F.3d at 1027. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *H&R Block Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005); se*e also Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) (opinion of experienced counsel is entitled to considerable weight); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of reasonableness).

On October 12, 2017, the Parties engaged in a lengthy private mediation with respected wage and hour mediator, Mark Rudy. This mediation was unsuccessful. After mediation, the

5

Parties continued negotiations. After considerable additional settlement discussions and the filing of Plaintiff's motion for class certification, the Parties agreed on the key terms of the settlement. Though cordial and professional, the settlement negotiations were, at all times, adversarial and non-collusive in nature. Mara Decl. ¶ 2.

### ii. *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2001), Factors Are Not Present Here

In *Bluetooth,* the Ninth Circuit articulated additional factors that need to be considered, especially where a settlement has been reached prior to formal class certification. *In re Bluetooth Headset Products Liability Litigation* ("*Bluetooth*"), 654 F.3d 935, 946 (9th Cir. 2011). As such, settlement agreements reached prior to class certification must withstand a higher level of scrutiny for signs of collusion or other conflicts of interest than ordinarily required under Rule 23(e). The three signs *Bluetooth* instructs trial courts to look for are:

1. When class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply rewarded;
2. When the parties negotiate a 'clear sailing' arrangement providing for the payment of attorney's fees separate and apart from class funds without objection by defendant;
3. When the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. *Id* at 947.

This settlement passes the *Bluetooth* test. The NSA is approximately two times larger than the fees requested by Class Counsel, which is the accepted federal benchmark of 25% of the GSA.[9] Additionally, although the settlement agreement states that Defendant will not object to attorney fees up to 25% of the GSA, any amount requested by Class Counsel and not awarded by the Court shall become part of the NSA and be available for distribution to Participating Class Members. Accordingly, unlike the settlement agreement in *Bluetooth,* the instant settlement cannot be said to arouse suspicion of collusion.

### iii. The Settlement is Fair

When evaluating the settlement terms for purposes of ruling on whether to finally approve

---

[9] Class Counsel is requesting $25,000 (25% of the GSA). The NSA is approximately $50,206.32.

6

1  it, the Court is to review the strength of a plaintiff's case, including "the probable outcome of a
2  trial on the merits of liability and damages as to the claims, issues, or defenses of the class and
3  individual class members." *Van Ba Ma v. Covidien Holding, Inc.*, 2014 U.S. Dist. LEXIS 76359,
4  *6-7 (C.D. Cal. 2014) (*citing Marshall v. Holiday Magic*, *Inc.*, 550 F.2d 1173 (9th Cir. 1977)). In
5  ruling on final approval, the "fairness hearing is not to be turned into a trial or a rehearsal for trial
6  on the merits." *Id.* (*quoting Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of
7  San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

8  There is no standard or benchmark for determining whether a settlement is fair.
9  "Ultimately the district court's determination is nothing more than 'an amalgam of delicate
10 balancing, gross approximations and rough justice.'" *Officers for Justice v. Civil Service Comm.
11 of City and County of San Francisco*, 688 F. 2d 615, 625 (9th Cir. 1982). A court should weigh
12 the benefits that the settlement will realize for the class against the uncertainty of litigation and
13 the possibility that the class members would obtain no relief in the absence of a settlement. *See
14 Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("...it is the very uncertainty
15 of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual
16 settlements."); *see also Hanlon*, 150 F.3d at 1026 (When considering the fairness of a proposed
17 class settlement, courts consider the strength of a plaintiff's case against the risk, expense,
18 complexity and likely duration of further litigation.).

19 The liability questions in this case touched on California's wage and hour laws, which
20 touched on the ever-changing legal landscape. For instance, Plaintiff contends that Hoovestol's
21 failure to provide compliant meal and rest periods were two of the predominant claims in this
22 lawsuit. Plaintiff's theories of liability for both of these claims are that the meal and rest periods
23 Hoovestol provided were not duty-free, because, Plaintiff asserts that Hoovestol has uniform
24 policies which require drivers to be responsible for the truck, the trailer, and the load at all times.
25 Moreover, Plaintiff contends that Hoovestol's meal period policy is facially unlawful because it
26 does not provide a second meal period until after the time the law requires it to have been provided.
27 That is, Plaintiff asserts that under the express language of Hoovestol's meal period policy, drivers
28

7

1  are not entitled to the second meal period until after ten (10) hours of work. Further, Plaintiff
2  asserts that because Hoovestol does not provide duty-free meal periods, Plaintiff and the Class
3  must be paid for the time they spent on unpaid meal periods. Plaintiff's claims for the failure to
4  pay all wages due at termination and failure to provide accurate itemized wage statements derive
5  from and are dependent on the wage claims.

6      Hoovestol argues that it provides drivers with timely, duty-free meal and rest periods.
7  Hoovestol contends that it has a legally compliant meal and rest break policy, is supported by
8  testimony, documents, declarations, and common sense. Hoovestol asserts that Plaintiff's
9  argument regarding the non-duty-free meal and rest period claim cannot be resolved on a class-
10 wide basis, because, by its nature, it requires an understanding of how each class member
11 interpreted the policy that they are responsible for the truck, trailer, and the load. That is, the non-
12 duty-free claim, according to Defendant, by itself and without more does not establish that drivers
13 are under the control of the company during meal and rest periods. To resolve that claim,
14 Defendant argues, would require an understanding of how the policy was interpreted. To that end,
15 Defendant relies on declarations from drivers to show that the interpretations varied, which,
16 according to it, rendered the claims for non-duty-free meal and rest periods unable to be resolved
17 on a class-wide basis in Plaintiff's favor, and that Plaintiff's interpretation of its policies is
18 inaccurate and drivers did not share this same interpretation. Hoovestol argues that declarations
19 from drivers show that drivers did not believe they were required to remain with their trucks at all
20 times and only had to lock the cab and padlock the trailer before leaving it on a break or a lunch.

21     Hoovestol also argues that it received no complaints from any drivers for not being able to
22 take duty-free meal and rest periods away from their vehicles. All class members were regularly
23 provided with a first and second meal period within compliant time periods and authorized and
24 permitted to take their rest breaks. If meal and/or rest periods are not shown on the time records,
25 it is because drivers chose to forego them, not that these breaks were not provided. Hoovestol
26 argues that drivers, by the nature of their work which is conducted away from Hoovestol facilities,
27 are given broad discretion as to when to take breaks. Hoovestol provided numerous declarations
28

8

1  which support its arguments when it filed its opposition to Plaintiff's class certification motion.
2  Hoovestol further argues that under *Brinker*, it is not required to police employees to ensure they
3  take breaks. In order for Plaintiff to prove whether or not drivers chose to forego breaks or were
4  not provided with them, Hoovestol asserts that the factfinder would have to ask each driver why
5  they did not take a break.

6  When this case began, it involved approximately 338 drivers. Since approximately
7  November of 2017, Hoovestol negotiated individually with drivers and was able to settle with the
8  vast majority of them. If the case were to continue in litigation, Defendant would continue its
9  individual settlement efforts.

10  This settlement represents a well-crafted compromise of the divergent positions of the
11  Parties that provides substantial benefits for the Class. Each side evaluated the strengths and
12  weaknesses of their case and independently concluded that this settlement represents a responsible
13  means of addressing Plaintiff's claims and Defendant's defenses.

14  Another factor considered by some courts in approving a settlement is the complexity,
15  expense and likely duration of the litigation. *Morey v. Louis Vuitton N. Am., Inc*., 2014 WL
16  109194, *5 (S.D. Cal. Jan. 9, 2014); *In re MRV Communs., Inc. Derivative Litig*., 2013 WL
17  2897874, *2 (C.D. Cal. June 6, 2013). In applying this factor, a court should weigh the benefits of
18  the settlement against the expense and delay involved in achieving an equivalent or even more
19  favorable result at trial. *Lane v. Facebook, Inc*., 2010 WL 9013059, *5 (N.D. Cal. March 17,
20  2010).  Here, litigating the case through to trial would have been expensive, required numerous
21  hours of work, involved substantial risk, and would not have been fully resolved for years.  In
22  contrast, the proposed settlement provides significant and certain compensation that is available
23  now as opposed to potentially and hypothetically sometime in the distant future.

24  Finally, employment cases (including wage and hour cases) can be expensive and time-
25  consuming to prosecute. The alternative to a class settlement – i.e., individual litigation – would
26  tax private and judicial resources over a period of years.  As such, the settlement in this case is
27  consistent with the "overriding public interest in settling and quieting litigation" that is
28

9

"particularly true in class action suits" and thus, provides another reason to approve the settlement. *Eisen v. Porsche Cars North America, Inc.,* 2014 WL 439006 at *3 (C.D. Cal. Jan. 30, 2014); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.,* 2013 U.S. Dist. LEXIS 123298, *253-54 (C.D. Cal. July 24, 2013); 4 Newberg § 11.41 at 87-89.

### B. Sufficient Discovery and Investigation Has Occurred

Discovery and litigation in the matter were extensive. After filing, both Parties conducted written discovery and multiple depositions took place. In total, Plaintiff propounded two sets of special interrogatories on Hoovestol and two sets of requests for production of documents. Hoovestol propounded two sets of requests for production of documents on Plaintiff. Both Parties responded to this discovery. Mara Decl. ¶ 3.

Plaintiff's written discovery requests led to Hoovestol producing hundreds of pages of documents including, but not limited to, Plaintiff's personnel file, paycheck stubs, time records, employee handbook, driver logs, and wage information. Plaintiff also performed an investigation into Hoovestol's policies and practices. Plaintiff interviewed numerous class members about their experiences driving for Hoovestol. Further, Plaintiff obtained the contracts between Hoovestol and the United States Postal Service. Mara Decl. ¶ 4.

Multiple depositions took place during the course of litigation. On October 4, 2017, Plaintiff took the deposition of Hoovestol's Federal Rule of Civil Procedure 30(b)(6) witness, Ms. Lynda Kuhn, who is Hoovestol's Senior Director of Safety. Hoovestol took the deposition of Plaintiff on October 6, 2017 and the deposition of Plaintiff's class certification related expert on January 18, 2018. Mara Decl. ¶ 5.

In evaluating the potential settlement, Plaintiff reviewed the individual release of claims signed by approximately three hundred and thirty-eight (338) of the Hoovestol's drivers. As Plaintiff did not sign an individual release of claims, he does not have standing to object to the validity of these releases.[10] Therefore, this settlement only encompasses those drivers that did not

---

[10] In addition, other districts have found that because a plaintiff did not sign a release he cannot represent, in a class action, individuals who did sign releases. *See Melong v. Micronesian Claims Com.*, 643 F.2d 10, 15 (D.C. Cir. 1980) ("When the purported class representative has not executed

10

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION   Case No. 3:16-cv-05183-JST
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  execute individual releases of claims.

### C. Class Counsel are Experienced

Class Counsel's experience in complex class action matters is extensive. Indeed, class counsel from the Mara Law Firm, PC (formerly The Turley & Mara Law Firm, APLC) were class counsel in *Hohnbaum et al. v. Brinker Restaurant Corp et al.,* which is the subject case in the landmark decision of *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004. Mara Decl. ¶ 6. Class Counsel has prosecuted numerous cases on behalf of employees for California Labor Code violations and thus are experienced and qualified to evaluate the class claims and to evaluate settlement versus trial on a fully informed basis, and to evaluate the viability of the defenses. Mara Decl. ¶ 7. This experience instructed Class Counsel on the risks and uncertainties of further litigation and guided their determination to endorse the proposed settlement. Mara Decl. ¶ 8.

### D. The Class Members' Response to the Settlement is Further Evidence that the Settlement is Fair and Reasonable

The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered in determining a settlement's fairness. *Mandujano v. Basic Vegetable Products, Inc.*, 541 F. 2d 832, 837 (9th Cir. 1976). Here, not a single Class Member has objected to the settlement and four Class Member requested to be excluded from the settlement. Olivares Decl. ¶¶ 12, 11. The lack of objections and low number of requests for exclusion evidences the Class Members' endorsement of this non-reversionary settlement.

### E. The Court Should Approve of the Settlement Administration Fee

The Parties agreed to hire ILYM Group, Inc. to be the Settlement Administrator, a choice the Court approved in conjunction with granting preliminary approval. ILYM Group, Inc. was responsible for mailing the Class Notice to Class Members, obtaining better addresses for

---

a release and need not establish that the release is defective in his individual case, serious questions are raised concerning the typicality of the class representative's claims and the adequacy of his representation of other class members."). It is uncertain whether the Court would agree with these cases. As it is unclear whether Plaintiff is an adequate and typical representative for the individuals who signed releases, they are not included in this settlement.

11

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION                    Case No. 3:16-cv-05183-JST
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

undeliverable Class Notices, responding to Class Member inquiries, providing weekly status reports to all counsel, receiving all communications from the Class Members, and providing a declaration documenting its duties and responsibilities to ensure the Class Members were given notice of the Settlement. Olivares Decl. ¶ 16. Following the grant of final approval, ILYM Group, Inc. will continue to calculate the payments to Participating Class Members, calculate the withholding taxes, and transmit to the appropriate government agencies, send the individual Settlement Shares to Participating Class Members, distribute other payments ordered by the Court, follow up with un-cashed checks, and perform such other duties as described in the settlement agreement. Olivares Decl. ¶ 3. ILYM Group, Inc.'s fee of $3,000 for services rendered and to be rendered is fair and reasonable and should be granted. Olivares Decl. ¶ 16.

## V. CONCLUSION

In light of the foregoing, Plaintiff requests the Court find the settlement fair, reasonable, and adequate and grant this Final Approval Motion. Plaintiff further requests that the Court enter final judgment.

Dated: April 4, 2019                                **MARA LAW FIRM, PC**

                                                                                    */s/ Jill Vecchi*
                                                                                    David Mara, Esq.
                                                                                     Jill Vecchi, Esq.
                                                                                     Matthew Crawford, Esq.
                                                                                     Representing Plaintiff RICHARD TERRY

12

PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION           Case No. 3:16-cv-05183-JST
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT