UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD TERRY,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>HOOVESTOL, INC.,<br><br>　　　　　Defendant. | Case No. 16-cv-05183-JST<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEY'S FEES**<br><br>Re: ECF No. 66, 68 |

Before the Court are Plaintiff Richard Terry's unopposed motions for final settlement approval, ECF No. 68, and for attorney's fees, ECF No. 66. The Court previously granted a motion for preliminary approval of the settlement. ECF No. 65. No class member has objected to the settlement, and only four class members have requested exclusion from the settlement class. ECF No. 68 at 6. The Court held a final fairness hearing on May 9, 2019, and will now grant both motions.

**I.　BACKGROUND**

　　**A.　Factual Background**

Plaintiff Richard Terry is a former truck driver for Defendant Hoovestol, Inc. ECF No. 1-1 ¶ 27. Hoovestol hauls bulk mail for the United States Postal Service ("USPS") and employs truck drivers in California. *Id.* ¶¶ 36-37. Terry brings this putative wage and hour class action on behalf of himself and other hourly truck drivers employed by Hoovestol in California for violations of California Labor Code Sections 226(b), 226.7, 510, 512, 515, 558, and 1194 as well as California Code of Regulations Title 8 Section 11090. *Id.* ¶ 24. He alleges causes of action for: failure to pay all straight time wages; failure to pay overtime; failure to provide meal periods; failure to authorize and permit rest periods; knowing and intentional failure to comply with itemized

employee wage statement provisions; failure to pay all wages due at the time of termination of employment; and violation of the Unfair Competition Law. *Id.* ¶¶ 84-158.

### B. Procedural History

Terry filed the initial complaint in this action in Alameda County Superior Court on July 20, 2016. ECF No. 1-1 at 6. On September 8, 2016, Hoovestol removed the case to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"). ECF No. 1.

After the exchange of discovery, mediation, and continued negotiation following mediation, the parties reached a proposed class action settlement. ECF No. 55 at 9-10. On June 14, 2018, Terry moved for preliminary approval of the proposed settlement including conditional certification of the settlement class. *Id.* at 31. The Court denied Terry's motion for preliminary approval and identified four obvious deficiencies in the proposed class action settlement: lack of a driving nexus between the plaintiff class and proposed *cy pres* beneficiaries; an overbroad release provision; a too-short opt-out period; and lack of any provision for a second distribution of unredeemed checks. ECF No. 59.

Terry then renewed his motion for preliminary settlement approval and provisional class certification. ECF No. 62. On December 7, 2018, the Court granted the motion, finding that the deficiencies noted in the Court's earlier order had been corrected. ECF No. 65. The Court preliminarily approved the settlement, conditionally certified the class for settlement purposes, approved of the proposed notice procedure and form, and set the matter for a final approval hearing on May 9, 2019. *Id.* at 11.

On February 12, 2019, Terry moved for a service award, attorney's fees, and costs. ECF No. 66. On April 4, 2019, Terry moved for final approval of the settlement. ECF No. 68. The Court now considers both motions.

### C. The Proposed Settlement

The Settlement Agreement defines the class as:

> All persons who are or have been employed by Defendant in the State of California as hourly truck drivers at any time between July 20, 2012, to the date the Court issues an order granting preliminary approval of the settlement and who did not execute an individual release of the claims.

2

ECF No. 68-2 ("Settlement Agreement") ¶ I.E.

Under the terms of the agreement, Defendant agrees to pay no more than $100,000 as the gross settlement amount, without admitting liability. *Id.* ¶¶ III.A, III.L.1. In addition to the net settlement amount to be paid to participating class members, this amount includes Plaintiff's attorney's fees and costs, the cost of class notice and settlement administration, the class representative's service award, and payroll taxes on the portion of the settlement payments deemed wages. *Id.* ¶ I.V.

Plaintiff's counsel agrees to seek $25,000 in attorneys' fees and no more than $20,000 in litigation costs. *Id.* ¶¶ I.D, I.M; *see also* ECF No. 66 at 17 (requesting $19,293.68 in costs). The gross settlement amount also includes $3,000 for settlement administration costs. Settlement Agreement ¶ I.B. Further, Terry will be paid an enhancement award of $2,500 in exchange for the general release of all his claims against Hoovestol. *Id.* ¶¶ I.L, III.K. After these deductions from the gross settlement amount, approximately $50,206.32 will remain to be distributed among the participating class members. ECF No. 66 at 9 n.2. Dividing this amount across the seventy-six participating class members yields an average recovery of approximately $660.61 apiece. Each participating class member will receive a proportion of the amount "equal to (i) the number of weeks he or she worked for [Hoovestol] in California . . . divided by (ii) the total number of weeks worked by all Participating Class Members." Settlement Agreement ¶ III.F.1.a. Sixty percent of each individual's share is intended to settle claims for unpaid wages and forty percent is intended to settle claims for interest and penalties. *Id.* ¶¶ III.F.2.a, 2.b. The portion for unpaid wages will be "reduced by applicable payroll tax withholdings and deductions." *Id.*

In exchange for the settlement awards, class members will release Hoovestol from:

> all known and unknown state law claims that both: (1) were alleged or that could have been alleged based on the facts plead in the complaints filed in the matter; and ([2]) concern, arise out of, relate to, or are based upon Defendant's failure to pay all wages, including straight time and overtime wages; failure to provide meal and rest periods; knowing and intentional failure to comply with itemized employee wage statement provisions; failure to pay all wages timely, including wages due at the time of termination; and violations of California's Unfair Competition Law.

3

*Id.* ¶ I.BB. The Settlement Agreement further provides that when checks mailed to participating class members are not redeemed or deposited within ninety days, the settlement administrator will mail a reminder postcard. *Id.* ¶ III.I.11. Ninety days after the reminder notice is mailed, funds from any unredeemed checks will be paid to the United Way of California. *Id*.

## II. FINAL APPROVAL OF SETTLEMENT

### A. Legal Standard

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id*. at 1026. In order to assess a settlement proposal, a District Court must balance a number of factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Settlements that occur before formal class certification also "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, the court also must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

### B. Analysis

#### 1. Adequacy of Notice

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982).

4

The Court approved the parties' proposed notice procedures when it granted preliminary approval. ECF No. 65 at 8, 10. Pursuant to those procedures, counsel for Hoovestol provided ILYM Group, Inc., the settlement administrator, with a file listing contact information, including mailing and email addresses, for each of the seventy-nine potential class members it identified. ECF No. 68-3 ¶ 5. After cross-checking the mailing addresses with the National Change of Address database maintained by USPS, ILYM mailed and emailed the notice to all seventy-nine individuals on December 26, 2018. *Id.* ¶ 7.

Despite skip tracing efforts and remailings by ILYM, four of the mailed notices were returned as undeliverable. *Id.* ¶¶ 7-10. In addition, ILYM received four requests for exclusion from the class in advance of the February 25, 2019 deadline to request exclusion. *Id.* ¶ 11. ILYM did not receive any objections to the settlement, *id.* ¶ 12., and neither did the Court.

On March 19, 2019, ILYM received a call from an individual who believed he should have been included in the class. *Id.* ¶ 13. After confirming with Hoovestol's counsel that this person was erroneously excluded from the notice list, the individual was added, yielding a total potential class of eighty. *Id.* After accounting for the four exclusions, the total number of participating class members is seventy-six, representing ninety-five percent of the potential class. *Id.* ¶ 14.

Although the Court expresses some concern as to how an individual was erroneously excluded from the notice list, the Court concludes that overall, the notice procedures followed here were adequate. Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Under these circumstances, the Court finds the parties have provided adequate notice to the class.

### 2. Fairness, Adequacy, and Reasonableness

#### a. Strength of Plaintiff's Case and Risks of Litigation

The first factor, the strength of Plaintiff's case, favors settlement. Hoovestol has raised numerous factual and legal defenses that could prevent class certification or recovery in this case. *See* ECF No. 68 at 13-14. In response to Terry's assertions of wage-and-hour violations, Hoovestol insists that "it has a legally compliant meal and rest break policy" and emphasizes that

5

"it received no complaints from any drivers for not being able to take duty-free meal and rest periods away from their vehicles." *Id.* at 13. Substantial evidence introduced in connection with an earlier, contested motion for class certification supported Defendant's assertion that its trailer safety policy did not interfere with drivers' ability to take meal and rest breaks and did not compel them to work overtime. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010) (approving class settlement where plaintiffs would "likely face difficulty in establishing" their claims). Difficulties and risks in litigating weigh in favor of approving a class settlement. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). Terry maintains that "[e]ach side evaluated the strengths and weaknesses of their case and independently concluded that this settlement represents a responsible means of addressing Plaintiff's claims and Defendant's defenses." *Id.* at 14. The Court agrees with the parties that, taking into account the uncertainty and costs of further litigation, resolution of this action through settlement is appropriate. *See* Settlement Agreement ¶¶ II.I, II.J. This factor weighs in favor of final approval.

### b. Settlement Amount

"In assessing the consideration obtained by the class members in a class action settlement, 'it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (quoting *Officers for Justice*, 688 F.2d at 628). "In this regard, it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)).

After deducting attorney's fees, litigation expenses, and Terry's service award from the gross settlement amount, approximately $50,206.32 will remain to be distributed among the participating class members. ECF No. 66 at 9 n.2. This will yield an average estimated payment of $660.61 for each of the seventy-six class members, with the highest individual share estimated at $2,626.76. *See* ECF No. 68 at 6.[1] While this represents only a fraction of class members'

---

[1] Terry reports an estimated average class member recovery of $651.32. ECF No. 68 at 6. However, this number fails to account for the fact that the costs claimed by counsel ($19,293.68)

6

potential recovery should this matter proceed to trial, given the risks inherent in further litigation, the Court concludes that the recovery for the class weighs in favor of approval.

### c. Extent of Discovery

"In the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *In re Mego*, 213 F.3d at 459 (citations omitted). However, the extent of discovery completed supports approval of a proposed settlement, especially when litigation has "proceeded to a point at which both plaintiffs and defendants ha[ve] a clear view of the strengths and weaknesses of their cases." *McKee Foods*, 716 F. Supp. 2d at 851-52.

Here, the Court is persuaded that the parties conducted sufficient discovery to make an informed decision about the adequacy of the settlement. At the time of settlement, the parties had spent almost two years engaged in litigation, including special interrogatories, requests for production of documents, and multiple depositions, as well as an attempt at private mediation. ECF No. 68-1 ¶¶ 2-5; *see In re Omnivision*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007) (finding the parties were sufficiently informed about the case prior to settling because they engaged in discovery, took depositions, briefed motions, and participated in mediation). This factor therefore weighs in favor of approval.

### d. Counsel's Experience

Here, Class Counsel have extensive experience litigating complex class action and employment cases under California law. ECF No. 68-1 ¶¶ 6-8. That they endorse the proposed settlement weighs in favor of approval.[2]

### e. Presence of Governmental Participant

Pursuant to CAFA, Hoovestol sent notice of the proposed settlement to the United States Attorney General and the Attorney General of the State of California on October 5, 2018. ECF

---

were lower than the $20,000 figure used in generating that estimate. *See* ECF No. 68-3 ¶ 15.

[2] The Court considers this factor, as it must, but gives it little weight. "Although a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court should keep in mind that the lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement." *Principles of the Law of Aggregate Litigation* § 3.05 cmt. a (2010).

7

No. 63. No Attorney General has submitted a statement of interest or objection in response to these notices. Because there is no governmental participant in this case, the Court need not consider this factor.

### f. Absence of Collusion

As explained in its prior Order, the Court finds that the settlement here was achieved through arms-length negotiation and was not collusive. ECF No. 59 at 4-5.

### g. Reaction of the Class

Finally, class members' positive reaction to a settlement weighs in favor of settlement approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision*, 559 F. Supp. 2d at 1043 (citation omitted).

Here, the reaction of the class was highly favorable. No class member has filed an objection to the settlement, and only four class members – representing five percent of the eighty-person potential settlement class – have chosen to opt out. ECF No. 68-3 ¶¶ 11-12. The Court therefore concludes this factor weighs in favor of approval. *See, e.g.*, *McKee Foods*, 716 F. Supp. 2d at 852 (finding that a 4.86 percent opt out rate strongly supported approval).

After balancing all the relevant factors, the Court finds that final settlement approval is supported here. Accordingly, the Court hereby finds that the settlement is fair, adequate, and reasonable, and grants Terry's motion for final approval.

### III. ATTORNEYS' FEES

#### A. Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorney's fees. *Id*. at 942. "Because the benefit to the class is easily quantified in common-fund

settlements," the Ninth Circuit permits district courts "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Id*. The Ninth Circuit has maintained a well-established "benchmark for an attorneys' fee award in a successful class action [at] twenty-five percent of the entire common fund." *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997). Courts in the Ninth Circuit generally start with the 25 percent benchmark and adjust upward or downward depending on:

> the extent to which class counsel "achieved exceptional results for the class," whether the case was risky for class counsel, whether counsel's performance "generated benefits beyond the cash . . . fund," the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-50 (9th Cir. 2002)).[3] In addition, courts often cross-check the amount of fees against the lodestar. "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941. Regardless whether the court uses the lodestar or percentage approach, the main inquiry is whether the fee award is "reasonable in relation to what the plaintiffs recovered." *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).

**B.  Analysis**

Class Counsel move the Court for $25,000 in attorney's fees, representing 25 percent of the $100,000 gross settlement fund. ECF No. 66 at 9-10. Class Counsel argue that this award is reasonable because they achieved a favorable result for the class, assumed a significant risk of no

---

[3] In determining whether class counsel achieved "exceptional results," the Court bears in mind that, under the percentage of the common fund approach, "to some extent, counsel's success provides its own reward: the larger the total recovery, the larger counsel's fee award will be, all else being equal." *Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2018 WL 4030558, at *3 n.2 (N.D. Cal. Aug. 23, 2018).

9

recovery, and took the case on a contingent basis. *Id*. at 12. Moreover, they point out that the 25 percent requested is exactly in line with the Ninth Circuit's benchmark. *Id.* at 13. The Court agrees that $25,000, or 25 percent of $100,000, is a reasonable and appropriate fee award here.

Counsel's lodestar more than confirms the reasonableness of the requested award. Class Counsel spent 252 hours pursuing this action over the course of two years and claim a total lodestar of $148,000. *Id*. at 14. For the purposes of the lodestar cross-check, the Court finds that the billing rates and hours billed are reasonable. *See* ECF No. 66-2 at 2. An award of $25,000 represents less than 17 percent of Class Counsel's claimed lodestar of $148,000. The requested award would in no way "yield windfall profits for class counsel in light of the hours spent on the case." *In re Bluetooth*, 654 F.3d at 942.

The Court awards 25 percent of the gross settlement fund, or $25,000, in attorney's fees.

## IV. COSTS

### A. Legal Standard

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted). To support an expense award, plaintiffs should file an itemized list of their expenses by category and the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable. *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011), *supplemented*, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

### B. Analysis

Here, Class Counsel state that they have incurred $19,293.68 in costs, including mediation, court fees, and travel, and they provide a list of those expenses. ECF Nos. 66-1 ¶ 31; 66-2 at 3. The Court finds the $19,293.68 cost request reasonable and grants Class Counsel's request in full.

## V. SERVICE AWARD

### A. Legal Standard

"[Incentive] awards are discretionary and are intended to compensate class representatives for work done on behalf of the class." *Rodriguez*, 563 F.3d at 958 (internal citation omitted). The

10

Court should consider:

> (1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; (3) the duration of the litigation and the amount of time and effort the plaintiff expended in purs[uing] it; and (4) the risks to the plaintiff in commencing the litigation, including reasonable fears of workplace retaliation, personal difficulties, and financial risks.

*Wren*, 2011 WL 1230826, at *32 (citations omitted). Indeed, "courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013). Many courts in this Circuit have held that a $5,000 service award is "presumptively reasonable." *See, e.g.*, *In re Toys-R-Us Del., Inc. FACTA Litig.*, 925 F.R.D. 438, 470-72 (C.D. Cal. 2014); *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198-EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that as a general matter, $5,000 is a reasonable amount.").

### B. Analysis

Plaintiff Terry requests a $2,500 incentive award. ECF No. 66 at 17. Class Counsel state that Terry "had meetings and conversations with his attorneys about his experience working for Defendant and the policies and practices that covered his and other drivers' employment with Defendant; Plaintiff looked for and provided documents from his employment with Defendant to his attorneys; Plaintiff aided in preparing discovery propounded on Defendant; worked with his attorneys[] in responding to discovery propounded on him by Defendant; traveled to California from his out-of-state residence to prepare for and sit for his deposition on October 6, 2017; provided his attorneys with contact information for other drivers who worked for Defendant; [and] remained available by phone during mediation and settlement negotiations." *Id.* at 18. Terry has also submitted a declaration describing the risks he perceived in commencing the litigation and the time and effort he has expended pursuing it. ECF No. 66-7. The Court agrees that the $2,500 service award is appropriate and grants the request.

## CONCLUSION

For the foregoing reasons, the Court hereby orders as follows:

11

1. The Court grants final approval of the proposed settlement agreement.

2. The Court makes final its certification of the class for the purposes of this settlement only.

3. The Court grants Class Counsel $25,000.00 in attorney's fees.

4. The Court grants Class Counsel $19,293.68 in costs.

5. The Court grants Plaintiff Richard Terry a service award of $2,500.00.

6. The Court directs the Settlement Administrator to disburse the above sums out of the Gross Settlement Amount within seven (7) business days of the date of this order.

7. The four class members who requested to opt out of the settlement are excluded from the class.

8. The Court retains continuing jurisdiction over this settlement solely for the purposes of enforcing this agreement, monitoring settlement administration, and addressing such post-judgment matters as may be appropriate under Court rules and applicable law.

**IT IS SO ORDERED.**

Dated: May 9, 2019

_____
JON S. TIGAR
United States District Judge